Schuyler G. Carroll
Jeffrey D. Vanacore
Perkins Coie LLP
30 Rockefeller Plaza, 25th Floor
New York, NY 10112
Phone: 212.262.6900
Fax: 212.977.1649

and

David M. Neff (admitted *pro hac vice*)
PERKINS COIE LLP
131 S. Dearborn, Street, Suite 1700
Chicago, IL 60603-5559
Phone: 312.324.8400
Fax: 312.324.9400

*Attorneys for C-III Asset Management LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 10-13800 |
| Innkeepers USA Trust, *et al.*, | Jointly Administered |
| Debtors. | |

### NOTICE OF HEARING ON C-III ASSET MANAGEMENT LLC'S MOTION TO TERMINATE THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)

**PLEASE TAKE NOTICE** that the hearing to consider C-III Asset Management LLC's ("C-III") Motion to Terminate the Automatic Stay (the "Motion") is scheduled for **Thursday, April 28, 2011** at **10:00 a.m.,** prevailing Eastern Time, before the Honorable Shelley Chapman, United States Bankruptcy Judge, in Courtroom 610, One Bowling Green, New York, New York. C-III waives its right, pursuant to Rule 4001-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), for a return date which is not more than 30 days after the date on which the Motion is filed.

**PLEASE TAKE FURTHER NOTICE** that the deadline to file and serve responses or objections to the Motion is **Thursday, April 14, 2011** at **4:00 p.m.** prevailing Eastern Time.

**PLEASE TAKE FURTHER NOTICE** that all responses or objections to the Motion listed in this Notice must (a) be made in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Rules and the Order Establishing Certain Notice, Case Management and Administrative Procedures, filed July 20, 2010 the ("Case Management Order") [Docket No. 56]; (c) state with particularity the legal and factual basis for the objection; (d) be filed with the Court; and (e) be served in accordance with and upon the parties set forth in the Case Management Order.

**PLEASE TAKE FURTHER NOTICE** that the failure to file a timely objection may result in entry of an order granting the Motion as requested by C-III.

Dated: March 24, 2011

Respectfully Submitted,

*/s/ David M. Neff*

Schuyler G. Carroll
Jeffrey D. Vanacore
PERKINS COIE LLP
30 Rockefeller Plaza, 25th Floor
New York, NY 10112
Phone: 212.262.6900
Fax: 212.977.1649
scarroll@perkinscoie.com
jvanacore@perkinscoie.com

David M. Neff (admitted *pro hac vice*)
PERKINS COIE LLP
131 S. Dearborn, Street, Suite 1700
Chicago, IL 60603-5559
Phone: 312.324.8400
Fax: 312.324.9400
dneff@perkinscoie.com

*Attorneys for C-III Asset Management LLC*

Schuyler G. Carroll
Jeffrey D. Vanacore
Perkins Coie LLP
30 Rockefeller Plaza, 25th Floor
New York, NY 10112
Phone: 212.262.6900
Fax: 212.977.1649

and

David M. Neff (admitted *pro hac vice*)
PERKINS COIE LLP
131 S. Dearborn, Street, Suite 1700
Chicago, IL 60603-5559
Phone: 312.324.8400
Fax: 312.324.9400

*Attorneys for C-III Asset Management LLC*

Hearing Date: April 28, 2011 at 10:00 a.m.
Objection Deadline: April 14, 2011 at 4:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 10-13800 |
| Innkeepers USA Trust, *et al*., | Jointly Administered |
| Debtors. | |

## C-III ASSET MANAGEMENT LLC'S MOTION TO TERMINATE THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)

Wells Fargo Bank, N.A., not individually but solely in its capacity as trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2007-C1 (the "Trust"), by and through C-III Asset Management LLC ("C-III"), its special servicer, by their undersigned counsel, pursuant to Section 362(d) of 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), moves to terminate the automatic stay with respect to the Trust's collateral, the Hilton Ontario. In support of the

Motion, the Trust submits the Declaration of Steve Oltmann in Support of C-III Asset Management LLC's Motion to Terminate the Automatic Stay Pursuant to 11 U.S.C. § 362(d) (the "Oltmann Declaration"), attached hereto as <u>Exhibit A</u>, and respectfully represents as follows:

## INTRODUCTION

Through this motion, C-III seeks to terminate the automatic stay with respect to its collateral, the Hilton Ontario, because the Debtors have no equity in the collateral and it is not necessary for an effective reorganization. The total secured indebtedness against the Hilton Ontario exceeds $44 million while its current market value, according to the Debtors, is approximately $8 million. Furthermore, the Debtors have carved the Hilton Ontario out of their recent "enterprise" sale efforts. Accordingly, the Court should terminate the automatic stay with respect to the Hilton Ontario pursuant to section 362(d)(2) of the Bankruptcy Code and allow the Trust to pursue its state law remedies.

## JURISDICTION

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b) and the standing order of reference of the district court. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G). Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

2. The legal and procedural predicates upon which relief is requested are Section 362(d) of the Bankruptcy Code and Bankruptcy Rule 4001(a)(1), respectively.

## BACKGROUND FACTS

**A. The Loan**

3. On or about October 4, 2006, Capmark Bank ("Original Lender") made a loan to KPA HI Ontario, LLC ("Borrower" or "Ontario Debtor") in the principal amount of $35,000,000

(the "Loan"). The Loan is evidenced by that certain Deed of Trust Note dated October 4, 2006 made by Borrower in favor of Original Lender in the principal amount of $35,000,000 (the "Note"). *See* Oltmann Decl. at ¶ 2.

4. The Loan is secured by, among other things, that certain Deed of Trust, Leasehold Deed of Trust, Assignment of Leases and Profits, Security Agreement and Fixture Filing (the "Deed of Trust") executed on or about October 4, 2006 by Borrower, as borrower, and KPA Ontario Lessee LLC ("Original Operating Lessee"), as accommodation grantor, in favor of Chicago Title Insurance Company, as trustee for the benefit of Original Lender, as beneficiary, which was recorded in the Official Records of San Bernardino County, California (the "Official Records") on October 6, 2006 as Document No. 2006-0684203. The Deed of Trust encumbers, among other things, the real property owned by Borrower known as the Hilton Ontario and having a common address of 700 N. Haven Ave., Ontario, California, 91764, as more particularly described in the Deed of Trust (the "Hilton Ontario"). *See* Oltmann Decl. at ¶ 3.

5. The Loan is also secured by that certain Assignment of Assignment of Leases, Rents and Profits (the "Assignment of Rents" and together with the Note, Deed of Trust and all other documents that evidence, secure or relate to the Loan, the "Loan Documents")), executed on or about October 4, 2006 by Borrower, as assignor, to Original Lender, as assignee, which was recorded in the Official Records on October 6, 2006 as Document No. 2006-0684205. The Assignment of Rents, among other things, absolutely assigns all of Borrower's rights to the Property's leases and rents (the "Rents"). *See* Oltmann Decl. at ¶ 4.

6. The Original Lender transferred all of its right, title and interest in the Loan Documents to the Trust pursuant to the following instruments:

    a.    that certain Assignment of Deed of Trust, Leasehold Deed of Trust, Assignment of Leases and Profits, Security Agreement and Fixture Filing

and Assignment of Assignment of Leases, Rents and Profits dated April 13, 2007, and recorded in the Official Records on April 30, 2007 as Document No. 2007-0260838;

b. that certain Assignment of Deed of Trust, Leasehold Deed of Trust, Assignment of Leases and Profits, Security Agreement and Fixture Filing and Assignment of Assignment of Leases, Rents and Profits dated August 14, 2007, and recorded in the Official Records on August 24, 2007 as Document No. 2007-0492936;

c. that certain Assignment of Deed of Trust, Leasehold Deed of Trust, Assignment of Leases and Profits, Security Agreement and Fixture Filing and Assignment of Assignment of Leases, Rents and Profits dated August 16, 2007, and recorded in the Official Records on August 27, 2007 as Document No. 2007-0495484; and

d. that certain Assignment of Deed of Trust, Leasehold Deed of Trust, Assignment of Leases and Profits, Security Agreement and Fixture Filing and Assignment of Assignment of Leases, Rents and Profits dated August 16, 2007, and recorded in the Official Records on February 26, 2008 as Document No. 2008-0084293.

*See* Oltmann Decl. at ¶ 5.

7. Consequently, the Trust is the holder and owner of the Note, the beneficiary of the Deed of Trust and Assignment of Rents, and owner of all of the other Loan Documents. *See* Oltmann Decl. at ¶ 6.

8. Pursuant to that certain Loan Assumption, Affirmation and Modification Agreement dated as of June 29, 2007, Grand Prix Ontario Lessee LLC ("Operating Lessee") assumed all of Original Operating Lessee's obligations under the Loan Documents. *See* Oltmann Decl. at ¶ 7.

**B. The Borrower's Defaults and Appointment of a Receiver**

9. Commencing in October 2009, Borrower defaulted under the terms of the Loan Documents by, among other things, failing to make timely monthly payments when due and failing to send net operating income to the Trust. *See* Oltmann Decl. at ¶ 8.

10. On January 5, 2010, the Trust, through its counsel, wrote a letter to Borrower providing formal notice of Borrower's defaults and accelerating all obligations under the Loan Documents. *See* Oltmann Decl. at ¶ 9.

11. On January 27, 2010, the Trust filed a complaint in the Superior Court of the State of California, County of San Bernardino (the "State Court"), Case No. CIVRS1000785, seeking, among other relief, the appointment of a receiver for the Hilton Ontario. Pursuant to an order entered April 16, 2010 (the "Receiver Order"), the State Court appointed Jeffrey Kolessar of GFManagement as the receiver (the "Receiver") for the Hilton Ontario. *See* Oltmann Decl. at ¶ 10.

12. Pursuant to the Receiver Order, the State Court authorized the Receiver, among other things, to operate, lease, manage and control the Hilton Ontario. With the agreement of Ontario Debtor, the Receiver has remained in control of the Hilton Ontario since the Petition Date (defined below). *See* Oltmann Decl. at ¶ 11.

**C.    The Bankruptcy Case**

13. On July 19, 2010 (the "Petition Date"), Innkeepers USA Trust and certain of its affiliates (collectively, the "Debtors"), including the Ontario Debtor and Operating Lessee, filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code with this Court.

14. The Debtors own and operate approximately 72 hotels (the "Hotels") across twenty states, one of which is the Hilton Ontario. *See* Amended Declaration of Dennis Craven, Chief Financial Officer of Innkeepers USA Trust, in Support of First Day Pleadings (the "Craven Declaration") [Docket No. 33] at ¶ 6.

15. Of the 72 Hotels, 45 are part of the financing facility described by the Debtors as the "Fixed Rate Pool" and 20 are part of the financing facility described as the "Floating Rate

Pool." *See* Craven Decl. at ¶¶ 26-27. The remaining seven Hotels, including the Hilton Ontario, are subject to separate financing arrangements with individual lenders. *See* Craven Decl. at ¶¶ 29-37.

16. On October 28, 2010, the Trust filed its proof of claim against the Ontario Debtor asserting a secured claim in the amount of $44,738,754.33 (the "Proof of Claim") [Claim No. 1025, Ontario Debtor]. There has been no objection filed to the Proof of Claim.

17. On January 14, 2011, the Debtors filed a Motion for Entry of an Order (I) Authorizing the Debtors to Enter Into the Commitment Letter with Five Mile Capital II Pooling REIT LLC, Lehman ALI Inc., and Midland Loan Services, (II) Approving the New Party/Midland Commitment Between the Debtors and Midland Loan Services, (III) Approving Bidding Procedures, (IV) Approving Bid Protections, (V) Authorizing an Expense Reimbursement to "Bidder D," and (VI) Modifying Cash Collateral Order to Increase Expense Reserve (the "Bid Procedures Motion"), through which the Debtors sought, among other things, authority to enter into a so-called commitment letter for the sale of the Hotels on an "enterprise" basis.

18. On February 25, 2011, C-III, on behalf of the Trust, filed its limited objection to the Bid Procedures Motion (the "Limited Objection"), arguing, among other things, that the Hilton Ontario should not be included in the enterprise-level sale of Hotels contemplated by the Bid Procedures Motion.

19. Likewise on February 25, 2011, the Ad Hoc Committee of Preferred Shareholders, which is comprised of six entities holding approximately 30.5% of Innkeepers USA Trust's 8.0% Series C Cumulative Preferred Shares (the "Ad Hoc Committee"), filed its objection to the Bid Procedures Motion (the "Ad Hoc Committee Objection").

20. On March 7, 2011, the Debtors filed their omnibus reply in support of the Bid Procedures Motion (the "Debtors' Reply"), in which they agreed to remove seven of the Hotels, including the Hilton Ontario, from the sale contemplated by the Bid Procedures Motion.

21. On March 11, 2011, the Court entered an order approving the Bid Procedures Motion, which excluded the Hilton Ontario.

22. C-III now seeks to terminate the automatic stay with respect to the Hilton Ontario pursuant to section 362(d) of the Bankruptcy Code so that it may pursue its state court remedies.

## LEGAL ARGUMENT

23. C-III is entitled to the termination of the automatic stay under section 362(d)(2) of the Bankruptcy Code because the Ontario Debtor has no equity in the Hilton Ontario and the Hilton Ontario is not necessary for an effective reorganization.

24. Section 362(d)(2) of the Bankruptcy Code provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or condition such stay—
>
> > (2) with respect to a stay of an act against property under subsection (a) of this section if—
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

25. Section 362(g) provides that the party opposing relief from the automatic stay carries the burden of proof on all issues except "the debtor's equity in the property." *See* 11 U.S.C. § 362(g). Accordingly, once the movant establishes that the debtor lacks any equity in

the property, the debtor bears the burden of proving that it is necessary for an effective reorganization. *See United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988) ("Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral is 'necessary to an effective reorganization.'"). As this Court has recognized:

> The party opposing relief has the burden of proof to show that it is entitled to continuation of the stay. . . The rationale for the burden of proof rule is that the automatic stay is intended only to shift the initiative to the creditor to bring the issue before the Bankruptcy Court, and not to create any new right in the debtor to stay proceedings.

*In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 756 (Bankr. S.D.N.Y. 1997).

26. In this case, the Ontario Debtor has no equity in the Hilton Ontario. Equity under section 362(d)(2)(A) is defined as "the difference between the property value and the total amount of liens against it." *See, e.g., In re YL West 87th Holdings I LLC*, 423 B.R. 421, 428 (Bankr. S.D.N.Y. 2010). The Trust has a lien on the Hilton Ontario in excess of $44 million, as evidenced by its Proof of Claim. *See In re Elmira Litho, Inc.*, 174 B.R. 892, 901 (Bankr. S.D.N.Y. 1994) (recognizing that a duly executed and timely filed proof of claim constitutes *prima facie* evidence of the validity and amount of the lien). It is undisputed that the current market value of the Hilton Ontario is substantially less, as evidenced by the proposed treatment of the Trust's claim in the Debtors' Bid Procedures Motion. *See* Bid Procedures Mot. at ¶ 51.[1] The discrepancy of more than $36 million between the Trust's secured claim and the amount attributed to the Hilton Ontario in the Bid Procedures Motion demonstrates that the Ontario

---

[1] In support of the Bid Procedures Motion, the Debtors have strenuously argued that the proposed treatment of the various secured claims, including the Trust's claim, is the result of an extensive marketing campaign and reflects the current market value of the various Hotels. *See, e.g.,* Debtors' Reply at ¶¶ 8, 9, 21-29. C-III believes that the Hilton Ontario is currently worth more than the $8 million value ascribed to it in the Bid Procedures Motion, but substantially less than the more than $44 million that the Trust is owed.

Debtor lacks any equity in the collateral. Thus, C-III has satisfied its burden under section 362(d)(2)(A).

27. With respect to section 362(d)(2)(B), the Ontario Debtor is unable to demonstrate that the Hilton Ontario is necessary for an effective reorganization. As the United States Supreme Court explained in *Timbers*:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

484 U.S. at 375-76.

28. In this case, the Debtors have effectively conceded that the Hilton Ontario is not necessary to an effective reorganization. The initial commitment letter, upon which the Bid Procedures Motion was predicated, contemplated the potential carve out of the Hilton Ontario from the proposed sale. *See* Debtors' Reply at ¶ 17 (explaining that the commitment letter carved out the Hilton Ontario from the list of potential Termination Events). In response to the Limited Objection, the Debtors agreed to carve out the Hilton Ontario from the Bid Procedures Motion and have offered to relinquish the hotel back to C-III. *See id.* at ¶¶ 2, 17. The Debtors have not proposed any alternative plan of reorganization with respect to the Hilton Ontario, only that they will continue to market the hotel.[2] *See id.* at ¶ 2. Such treatment falls far short of the exacting requirements for a "reasonable possibility of a successful reorganization within a

---

[2] On December 20, 2010 and again on January 13, 2011, the Ad Hoc Committee presented the Debtors with offers to purchase five of the seven Hotels carved out from the Bid Procedures Motion (together, the "Ad Hoc Committee Offer"). *See* Ad Hoc Committee Obj. at ¶¶ 20-21. Notably, the Ad Hoc Committee Offer did not include the Hilton Ontario, which further demonstrates how the Hilton Ontario is not necessary to an effective reorganization in combination with other properties of the Debtors.

reasonable time" set forth in *Timbers*. Consequently, the Ontario Debtor cannot meet its burden under section 362(d)(2)(B).

29. Furthermore, the Debtors cannot sell the Hilton Ontario over the objection of C-III, whose right to credit bid the full amount of its claim is expressly reserved by the final cash collateral order entered on September 2, 2010 (the "Cash Collateral Order") [Docket No. 402]. *See* Cash Collateral Order at ¶ 6(h). Nor can the Ontario Debtor confirm an internal reorganization plan over C-III's objection because, *inter alia*, no such plan would be feasible if C-III makes the Section 1111(b) election as a result of the great discrepancy between what C-III is owed and the fair market value of the Hilton Ontario

30. Because the Ontario Debtor has no equity in the Hilton Ontario and the Hilton Ontario is not necessary for an effective reorganization, the Court should terminate the automatic stay with respect to the Hilton Ontario so that the Trust may proceed with its state court remedies.

## LOCAL RULE 9013-1(a) CERTIFICATION

31. This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated as well as the legal authorities that support the requested relief. Accordingly, C-III submits that the Motion satisfies Local Bankruptcy Rule 9013-1(a).

WHEREFORE, C-III respectfully requests that the Court enter an order (a) terminating the automatic stay with respect to the Hilton Ontario pursuant to section 362(d) of the Bankruptcy Code, and (b) granting such other and further relief as is just and proper.

Dated: March 24, 2011  Respectfully Submitted,

*/s/ David M. Neff*

Schuyler G. Carroll
Jeffrey D. Vanacore
PERKINS COIE LLP
30 Rockefeller Plaza, 25th Floor
New York, NY 10112
Phone: 212.262.6900
Fax: 212.977.1649
scarroll@perkinscoie.com
jvanacore@perkinscoie.com

David M. Neff (admitted *pro hac vice*)
PERKINS COIE LLP
131 S. Dearborn, Street, Suite 1700
Chicago, IL 60603-5559
Phone: 312.324.8400
Fax: 312.324.9400
dneff@perkinscoie.com

*Attorneys for C-III Asset Management LLC*