James H.M. Sprayregen, P.C.
Paul M. Basta
Stephen E. Hessler
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

and

Anup Sathy, P.C.
Todd M. Schwartz (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654-3406
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INNKEEPERS USA TRUST, *et al.*,[1] | ) | Case No. 10-13800 (SCC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**NOTICE OF DEBTORS' MOTION FOR AUTHORITY TO PAY
CONVERSION FEES UNDER MARRIOTT CONSENT AND AGREEMENT**

　　　　**PLEASE TAKE NOTICE** that a hearing (the "**Hearing**")[2] for the relief requested in the

above-referenced motion (the "**Motion**") will be held before the Honorable Shelley C. Chapman,

---

[1]　　The list of Debtors in these Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number can be found by visiting the Debtors' restructuring website at www.omnimgt.com/innkeepers or by contacting Omni Management Group, LLC at Innkeepers USA Trust c/o Omni Management Group, LLC, 16161 Ventura Boulevard, Suite C, PMB 606, Encino, California 91436.  The location of the Debtors' corporate headquarters and the service address for their affiliates is:  c/o Innkeepers USA, 340 Royal Poinciana Way, Suite 306, Palm Beach, Florida 33480.

United States Bankruptcy Judge, in Courtroom No. 610 of the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, on **May 24, 2011 at 11:00 a.m. prevailing Eastern Time** or such other time as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any objections to the Motion: (a) must be in writing; (b) shall conform to the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), all General Orders of the Court, the Local Rules for the United States Bankruptcy Court for the Southern District of New York, and the *Notice, Case Management, and Administrative Procedures* [Docket No. 68] (the "**Case Management Procedures**") approved by the Court; (c) shall be filed with the Bankruptcy Court electronically by registered users of the Bankruptcy Court's case filing system (the User's Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court); and (d) shall be served so as to be actually received no later than **May 19, 2011 at 4:00 p.m. prevailing Eastern Time** by the entities on the Master Service List (as such term is defined in the Case Management Procedures), which is available at www.omnimgt.com/innkeepers, the website maintained by Omni Management Group, LLC, the Debtors' notice and claims agent. Only those objections that are timely filed, served, and received will be considered.

---

2 All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion.

New York, New York                    /s/ *Brian S. Lennon*
Dated:  April 28, 2011                 James H.M. Sprayregen, P.C.
                                       Paul M. Basta
                                       Stephen E. Hessler
                                       Brian S. Lennon
                                       KIRKLAND & ELLIS LLP
                                       601 Lexington Avenue
                                       New York, New York 10022-4611
                                       Telephone:  (212) 446-4800
                                       Facsimile:   (212) 446-4900

                                       and

                                       Anup Sathy, P.C.
                                       Todd M. Schwartz (admitted *pro hac vice*)
                                       KIRKLAND & ELLIS LLP
                                       300 North LaSalle
                                       Chicago, Illinois 60654-3406
                                       Telephone:  (312) 862-2000
                                       Facsimile:   (312) 862-2200

                                       Counsel to the Debtors
                                       and Debtors in Possession

James H.M. Sprayregen, P.C.
Paul M. Basta
Stephen E. Hessler
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900

and

Anup Sathy, P.C.
Todd M. Schwartz (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654-3406
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INNKEEPERS USA TRUST, *et al.*,[1] | ) | Case No. 10-13800 (SCC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**DEBTORS' MOTION FOR AUTHORITY TO PAY FEES DUE**
**UNDER MARRIOTT CONSENT AND AGREEMENT**

Innkeepers USA Trust and certain of its affiliates, as debtors and debtors in possession

(collectively,  the "**Debtors**"),  file  this  motion  (this "**Motion**")  for  the  entry  of  an  order,

---

[1]   The list of Debtors in these Chapter 11 Cases along with the last four digits of each Debtor's federal tax
identification  number  can  be  found  by  visiting  the  Debtors'  restructuring  website  at
www.omnimgt.com/innkeepers or by contacting Omni Management Group, LLC at Innkeepers USA Trust c/o
Omni Management Group, LLC, 16161 Ventura Boulevard, Suite C, PMB 606, Encino, California 91436.  The
location of the Debtors' corporate headquarters and the service address for their affiliates is:  c/o Innkeepers
USA, 340 Royal Poinciana Way, Suite 306, Palm Beach, Florida 33480.

K&E 18828512

substantially in the form attached hereto as **Exhibit A** (the "**Order**"), authorizing, but not directing, the Debtors to honor certain obligations under the Consent and Agreement entered into by and among Marriott International, Inc. ("**Marriott**") and certain of the Debtors on June 29, 2007 (the "**Consent and Agreement**"). In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      The United States Bankruptcy Court for the Southern District of New York (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## Relief Requested

4.      By this Motion, the Debtors seek the entry of an order (a) authorizing, but not directing, the Debtors to pay the Conversion Fees and (b) granting such other relief as is just and proper.

## Background

5.      On July 19, 2010 (the "**Petition Date**"), each of the Debtors filed a petition with the Court under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 28, 2010, the United States Trustee for the Southern District of New

York (the "**U.S. Trustee**") appointed an official committee of unsecured creditors (the "**Creditors Committee**").

6.      Additional information regarding the Debtors' business, capital structure, and the circumstances leading to the Chapter 11 Cases is contained in the *Amended Declaration of Dennis Craven, Chief Financial Officer of Innkeepers USA Trust, in Support of First-Day Pleadings* [Docket No. 33, as supplemented by Docket No. 516].

## The Consent and Agreement

7.      Pursuant to the Consent and Agreement, which the Debtors and Marriott executed in connection with the 2007 acquisition of the Debtors by Apollo Investment Corporation ("**Apollo**") (through certain of its subsidiaries) (the "**Acquisition**"), the Debtors were obligated to pay certain Conversion Fees (as defined below) to Marriott in October 2010 and January 2011. Although the fees were budgeted to be paid in the Debtors' 13-week forecasts and were not objected to, the Debtors never paid the fees with the understanding that such fees would be paid upon assumption of the Consent and Agreement at the time certain franchise agreements and other related agreements (including the Consent and Agreement) are assumed in accordance with the *Agreement for Adequate Assurance of Completion of Certain PIPs and Assumption of Agreements* (the "**Marriott Adequate Assurance Agreement**") [Docket No. 540]. To avoid the assertion by Marriott that the Marriott Adequate Assurance Agreement and the Consent and Agreement are in default, and to maintain a positive relationship Marriott—the Debtors' largest franchisor—the Debtors now seek to pay in full all past due Conversion Fees under the Consent and Agreement.

8.      The Acquisition, which precipitated the parties' entrance into the Consent and Agreement, resulted in a direct or indirect change of ownership or control with respect to each of the entities (both property owners and franchisees) that were party to certain franchise

- 3 -

agreements and owner agreements pursuant to which Marriott granted the Debtors the right and license to operate certain of the Debtors' hotels. Each of the Marriott franchise agreements has change of ownership or control provisions pursuant to which Marriott's consent to certain changes of ownership or control is required.

9.      To ensure a smooth transition post-Acquisition and to avoid any interruption in the Debtors' use of Marriott's brand and other related services, certain of the Debtors and Marriott entered into the Consent and Agreement. This agreement not only secured Marriott's consent to the change in ownership or control in exchange, it created certain mutual rights and obligations between the parties. Among other things, the Consent and Agreement (i) required the Debtors to sign new franchise agreements, thereby committing them to complete property improvement plans for the Marriott hotels ("**PIPs**"); (ii) entitles the Debtors to receive royalty credits if they meet certain milestones each year; and (iii) requires the payment of the Conversion Fees to Marriott to maintain certain hotels as a franchise. The Consent and Agreement has been identified on the Debtors' schedules as an executory contract, and the Debtors intend to assume the Consent and Agreement, which is part and parcel with the Debtors' other Marriott franchise agreements, as part of the plan confirmation and consummation process.

10.      Pursuant to section 6(b) of the Consent and Agreement, the Debtors agreed to pay Marriott certain fees (the "**Conversion Fees**") when a "Conversion Hotel" (as defined in the Consent and Agreement) converts from a Marriott-managed hotel to a franchised hotel. There are seventeen such Conversion Hotels. All of these hotels serve as collateral for the Fixed Rate Mortgage Loan, and all currently operate as a Marriott franchise. The Conversion Fees are payable on an annual basis through 2013; seventy-five percent is due fifteen days after the end of the third calendar quarter of each year and twenty-five percent is due fifteen days after the end of

- 4 -

the fourth calendar quarter of each year.[2]  In total, the annual unpaid Conversion Fees for 2010 amounts to approximately $850,000.

11.     Although the Debtors have accounted for a substantial portion of the Conversion Fees in their 13-week cash flow forecast, the Debtors have not yet made this payment to Marriott, originally opting instead to fulfill this obligation in connection with the Debtors' assumption of the Consent and Agreement through the plan confirmation and consummation process.  The Consent and Agreement is one of the "related agreements" to be assumed by the Debtors as described in the Marriott Adequate Assurance Agreement.  The Debtors always intended to assume this agreement on or prior to the consummation of the Debtors' plan of reorganization in accordance with the Marriott Adequate Assurance Agreement.  The Debtors now seek authority to pay Marriott the outstanding Conversion Fees prior to assumption to satisfy, in part, the Debtors' obligation to assume the "related agreements" under the Marriott Adequate Assurance Agreement, to maintain the Debtors' relationship with their largest franchisor, to avoid any subsequent assertions by a party in interest that a portion of the disclosed $850,000 is a prepetition payment, and to avoid any assertions by Marriott that the Debtors' are in default under the terms of the Marriott Adequate Assurance Agreement, which permits the Debtors to assume valuable franchise agreements essential to their reorganization efforts.

---

[2]     The Consent and Agreement obligates the "Grand Prix Entities" (which is defined to include certain of the Debtors) to pay the Conversion Fees.  Schedule 6(b) states that the "Apollo Entities" (not defined) are obligated to pay the Conversion Fees, but this term is meant to reference the Grand Prix Entities instead.

**Basis for Relief**

I.   **The Debtors should be permitted to pay the outstanding Conversion Fees due under the Consent and Agreement because there is a sound business justification for doing so as required by section 363(b) of the Bankruptcy Code.**

12.   Although the current outstanding Conversion Fees came due postpetition, out of an abundance of caution, the Debtors seek authority to pay the Conversion Fees to the extent any portion of the fee represents a prepetition obligation.   Courts have authorized payment of prepetition obligations under section 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so.   *See*, *e.g.*, *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (finding that a sound business justification existed to justify payment of certain claims); *see also Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 397 (S.D.N.Y. 1983) (relying on section 363 to allow contractor to pay prepetition claims); *In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks").

13.   In addition, the Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code.   Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."   Under section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of a debtor's businesses.   *See In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).   Specifically, the Court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").   *See Ionosphere Clubs*, 98 B.R. at 176 (Bankr. S.D.N.Y. 1989).   A bankruptcy court's use of its equitable powers to "authorize the

- 6 -

payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Id.* at 175-176 (citing *Miltenberger v. Logansport, C. & S.W. Ry. Co.*, 106 U.S. 286 (1882)).

14.     The "doctrine of necessity" or the "necessity of payment" rule has long been recognized as precedent within the Second Circuit. *See In re Ionosphere Clubs*, 98 B.R. at 175-176. Today, the rationale for the necessity of payment rule—the rehabilitation of a debtor's reorganization cases—is "the paramount policy and goal of Chapter 11." *Id.*; *see also In re Just For Feet*, 242 B.R. 821, 826 (Bankr. D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition worker's compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 2 Collier on Bankruptcy, 105.02[4][a] (16th ed. rev. 2009) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately)..

15.     This flexible approach is particularly critical where a prepetition creditor—here, Marriott—provides vital goods or services to a debtor—here, consent to the franchises—that may be at risk if the debtor did not satisfy its prepetition obligations. In *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court stated that "a bankruptcy court may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest

likelihood of survival of the debtors and payment of creditors in full or at least proportionately.'" *Id.* The court explained that "a *per se* rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the [Bankruptcy] Code." *Id.* at 932.

16. The Debtors have determined, in the exercise of their sound business judgment, that the authority to honor obligations under the Consent and Agreement, including the Conversion Fees, is essential to ensure that the value of the Debtors' business as a going concern is preserved through the pendency of the Chapter 11 Cases. As this Court is aware, the Debtors' franchise agreements are valuable, necessary, and accretive to the long-term value of the Debtors' estates. The Debtors seek to affiliate their hotels with premier franchise companies and brands that offer robust marketing support and services and that have demonstrated their ability to command revenue premiums over other brands. The loss of these franchise agreements would have a damaging effect on the Debtors' operations and on the underlying value of the Debtors' Marriott-branded hotels, and ultimately the Debtors' enterprise, due to the loss of associated name recognition, marketing support, brand loyalty, and centralized reservation system.

17. Because the Consent and Agreement governs Marriott's consent with respect to the change of ownership or control for each of the Debtor's Marriott-related franchise agreements, the Debtors and Marriott consider the Consent and Agreement to be part and parcel of those franchise agreements. Ensuring that the Consent and Agreement remains in place through the pendency of the Chapter 11 Cases and thereafter is, therefore, absolutely essential to maintaining value at the Marriott-branded hotels. Marriott's ability to exercise any remedies with respect to the Debtors' failure to pay any obligations under the Consent and Agreement, and, therefore, exercise remedies under the Marriott Adequate Assurance Agreement, could

- 8 -

severely deteriorate the value of the underlying hotel properties. In addition, maintaining Marriott's goodwill through payment of the Conversion Fees is valuable as Marriott is one of the Debtors' longest standing and most important franchisors.

18.     As disclosed in the Debtors' Disclosure Statement for Debtors' Plans of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 1093], given the importance of the Consent and Agreement, and in accordance with the Marriott Adequate Assurance Agreement, the Debtors intend to assume the Consent and Agreement as part of the consummation of their plan of reorganization. As such, payment of any portion of the Conversion Fees that may potentially be deemed prepetition merely becomes a timing issue. The Debtors believe the payment of the Conversion Fees prior to the effective date of the plan (when the payment would otherwise be due if it was characterized as a prepetition obligation) is necessary to preserve its important relationship with Marriott. Of course to the extent that a portion of the Conversion Fees indisputably represents a postpetition obligation, the Debtors have the ability to make the payment in the ordinary course of business. Simply put, out of an abundance of caution, the Debtors seek the authority fulfill their obligations under the Consent and Agreement just as they have fulfilled their obligations with respect to their other Marriott franchise and related agreements.

19.     The Debtors submit that, for the reasons set forth herein, payment of the Conversion Fees is a proper exercise of their business judgment and is necessary to preserve the value of their estates.

## **Motion Practice**

20.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this

Motion. Accordingly, the Debtors submit that this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules for the Southern District of New York.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

21. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of a property under Bankruptcy Rule 6004(h).

## The Debtors' Reservation of Rights

22. Nothing in the Motion or the Order shall be deemed or construed as: (a) an admission as to the validity or priority of any claim against the Debtors; (b) a waiver of the Debtors' rights to dispute any claim; or (c) an approval or assumption of any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.

## Notice

23. The Debtors have provided notice of this Motion to: (a) the entities on the Master Service List (as such term is defined in the *Notice, Case Management, and Administrative Procedures* [Docket No. 68]), which is available at www.omnimgt.com/innkeepers, the website maintained by Omni Management Group, LLC, the Debtors' notice and claims agent; and (b) counsel to Marriott. The Debtors respectfully submit that no further notice is necessary.

## No Prior Request

24. No prior motion for the relief requested herein has been made to this or any other court.

K&E 18828512

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

New York, New York
Dated:  April 28, 2011

/s/ *Brian S. Lennon*

James H.M. Sprayregen, P.C.
Paul M. Basta
Stephen E. Hessler
Brian S. Lennon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022-4611
Telephone:  (212) 446-4800
Facsimile:   (212) 446-4900

and

Anup Sathy, P.C.
Todd M. Schwartz (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654-3406
Telephone:  (312) 862-2000
Facsimile:   (312) 862-2200

Counsel to the Debtors
and Debtors in Possession

K&E 18828512

**EXHIBIT A**

**Proposed Order**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| INNKEEPERS USA TRUST, *et al.*,[1] | ) | Case No. 10-13800 (SCC) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

## ORDER AUTHORIZING THE DEBTORS TO PAY
## CONVERSION FEES UNDER MARRIOTT CONSENT AND AGREEMENT

Upon the motion (the "**Motion**")[2] of the Debtors, as debtors and debtors in possession, for the entry of an order (this "**Order**") (a) authorizing, but not directing, the Debtors to honor certain obligations under the Consent and Agreement and (b) granting such other relief as is just and proper; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Motion is granted to the extent provided herein.

---

[1]     The list of Debtors in these Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number can be found by visiting the Debtors' restructuring website at www.omnimgt.com/innkeepers or by contacting Omni Management Group, LLC at Innkeepers USA Trust c/o Omni Management Group, LLC, 16161 Ventura Boulevard, Suite C, PMB 606, Encino, California 91436.  The location of the Debtors' corporate headquarters and the service address for their affiliates is:  c/o Innkeepers USA, 340 Royal Poinciana Way, Suite 306, Palm Beach, Florida 33480.

[2]     All capitalized terms used by otherwise not defined herein shall have the meanings set forth in the Motion.

K&E 18828512

1.	The Debtors are authorized, but not directed, to pay the Conversion Fees under the Consent and Agreement.

2.	The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

3.	The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

4.	All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

5.	This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Dated: _____, 2011

_____
United States Bankruptcy Judge

- 2 -