**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INNKEEPERS USA TRUST, *et al.*, | ) | Case No. 10-13800 (SCC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## DEBTORS' PLANS OF REORGANIZATION
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**Nothing contained herein shall constitute an offer, acceptance, or a legally binding obligation of the Debtors or any other party in interest. This Plan is subject to approval of the Bankruptcy Court and other customary conditions. This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances or rejections with respect to this Plan may not be solicited until a disclosure statement has been approved by the United States Bankruptcy Court for the Southern District of New York in accordance with section 1125 of the Bankruptcy Code. Such a solicitation will only be made in compliance with applicable provisions of securities and bankruptcy laws. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTORS' SECURITIES) PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

| | |
|---|---|
| James H.M. Sprayregen, P.C. | Anup Sathy, P.C. |
| Paul M. Basta | ~~Marc J. Carmel (admitted *pro hac vice*)~~**KIRKLAND & ELLIS LLP** |
| Stephen E. Hessler | ~~KIRKLAND & ELLIS LLP~~**300 North LaSalle Drive** |
| Brian S. Lennon | ~~300 North LaSalle Drive~~**Chicago, Illinois 60654-3406** |
| KIRKLAND & ELLIS LLP | ~~Chicago, Illinois 60654~~**Telephone: (312) 862-**~~3406~~**2000** |
| 601 Lexington Avenue | ~~Telephone: (312) 862-2000~~ |
| New York, New York 10022-4611 | |
| Telephone: (212) 446-4800 | |

Counsel to the Debtors and Debtors in Possession

Dated: ~~April 8,~~**May 9,** 2011

# TABLE OF CONTENTS

**ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** ........................................................................................ 1
   A.     Defined Terms ............................................................................................. 1
   B.     Rules of Interpretation ......................................................................... ~~21~~**19**
   C.     Computation of Time .......................................................................... ~~21~~**20**
   D.     Governing Law .................................................................................... ~~21~~**20**
   E.     Reference to Monetary Figures ........................................................... ~~21~~**20**
   F.     Controlling Document ......................................................................... ~~22~~**20**

**ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS** ................ ~~22~~**20**
   A.     Administrative Claims ........................................................................ ~~22~~**20**
   B.     Accrued Professional Compensation Claims ...................................... ~~22~~**21**
   C.     Five Mile DIP Claims ......................................................................... ~~23~~**22**
   D.     Lehman DIP Claims ............................................................................ ~~23~~**22**
   ~~E.~~     **LNR Structuring Fee** .......................................................................... **22**
   **F.**     Claims Based on Postpetition Intercompany Loans ........................... ~~24~~**22**
   ~~F.~~**G.**   **Reimbursement of** Five Mile ~~Counsel Fees and~~ Expenses and Lehman Advisor and Counsel Fees and Expenses ................................ ~~24~~**22**
   ~~G.~~**H.**   Priority Tax Claims ............................................................................ ~~24~~**23**

**ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ...................... ~~24~~**23**
   A.     Summary of Classification .................................................................. ~~24~~**23**
   B.     Treatment of Claims and Interests ...................................................... ~~29~~**27**
   ~~C.~~**B.**   Special Provision Governing Unimpaired Claims ............................. ~~51~~**45**
   ~~D.~~**C.**   Elimination of Vacant Classes ............................................................ ~~51~~**45**
   ~~E.~~**D.**   Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ......... ~~51~~**45**

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** ................................................ ~~52~~**45**
   A.     Substantive Consolidation .................................................................. ~~52~~**45**
   B.     Restructuring Transactions and Sources of Consideration for Plan Distributions ... ~~52~~**45**
   C.     General Settlement of Claims ............................................................. ~~52~~**46**
   D.     Fixed/Floating Investment .................................................................. ~~52~~**46**
   E.     ~~Anaheim~~**Chatham** Hotel Sale Transaction ~~and Hotel Sale Transactions~~ .............. ~~52~~ 46
   F.     New Fixed Rate Pool Mortgage Loan Limited Guarantys ................. ~~53~~**46**
   G.     ~~Rights Offering or New Mezzanine Financing~~ ................................... ~~53~~
   ~~H.~~     Special Servicer Payment and Special Servicer Release Payment .... ~~53~~**46**
   ~~I.~~**H.**   Issuance of ~~New HoldCo~~ Interests ~~53~~ **in Post-Effective Date Fixed/Floating Debtors** .............. **46**
   ~~J.~~**I.**    Management ~~Incentive Program~~ ................................................. ~~53~~**Compensatio**
   ~~K.~~     ~~Securities Act Exemptions~~ .................................................................. ~~53~~
   ~~L.~~**J.**    Listing of New HoldCo Interests; Reporting Obligations .................. ~~54~~**47**
   ~~M.~~**K.**   Release of Liens ................................................................................. ~~54~~**47**
   ~~N.~~**L.**   Vesting of Assets in the Post-Effective Date Debtors ....................... ~~54~~**47**
   **M.**    **Rights and Obligations Under Troy Settlement Agreement** ............... **47**
   ~~O.~~**N.**   Cancellation of Securities and Agreements ........................................ ~~54~~**48**
   ~~P.~~**O.**   Corporate Action ................................................................................ ~~54~~**48**
   ~~Q.~~**P.**   Effectuating Documents; Further Transactions ................................. ~~55~~**48**
   ~~R.~~**Q.**   Exemption from Certain Taxes and Fees ........................................... ~~55~~**48**
   ~~S.~~**R.**   D&O Liability Insurance Policies ...................................................... ~~55~~**49**
   ~~T.~~**S.**   D&O Tail Insurance Policies .............................................................. ~~55~~**49**
   ~~U.~~**T.**   New Fixed/Floating Organizational Documents and New Fixed/Floating By-Laws ......... ~~56~~**49**
   ~~V.~~**U.**   Board Representation .......................................................................... ~~56~~**49**

i

| | | |
|---|---|---|
| ~~W~~**V**. | Indemnification Provisions | ~~56~~**50** |
| **W.** | **Wind Down** | **50** |
| X. | Preservation of Rights of Action | ~~57~~**50** |

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ~~57~~**50**

| | | |
|---|---|---|
| A. | **Assumption of Franchise Agreements** | **50** |
| **B.** | Rejection of Executory Contracts and Unexpired Leases | ~~57~~**51** |
| ~~B~~**C**. | Cure of Defaults for Assumed and Assigned Executory Contracts and Unexpired Leases | ~~57~~**51** |
| ~~C~~**D**. | Claims Based on Rejection of Executory Contracts and Unexpired Leases | ~~58~~**52** |
| ~~D~~**E**. | Pre-existing Obligations to the Debtors Under Executory Contracts and Unexpired Leases | ~~58~~**52** |
| ~~E~~**F**. | Modifications, Amendments, Supplements, Restatements, or Other Agreements | ~~59~~**52** |
| ~~F~~**G**. | Reservation of Rights | ~~59~~**52** |

**ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS** ~~59~~**53**

| | | |
|---|---|---|
| A. | Timing and Calculation of Amounts to Be Distributed | ~~59~~**53** |
| B. | Distributions Generally; Disbursing Agent | ~~59~~**53** |
| C. | Rights and Powers of Disbursing Agent | ~~60~~**53** |
| D. | Distributions on Account of Claims Allowed After the Effective Date | ~~60~~**54** |
| E. | Delivery of Distributions and Undeliverable or Unclaimed Distributions | ~~60~~**54** |
| F. | Compliance with Tax Requirements/Allocations | ~~61~~**55** |
| G. | Claims Paid or Payable by Third Parties | ~~62~~**55** |

**ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** ~~62~~**56**

| | | |
|---|---|---|
| A. | Resolution of Disputed Claims | ~~62~~**56** |
| B. | Disallowance of Claims | ~~63~~**57** |
| C. | Amendments to Claims | ~~64~~**57** |

**ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ~~64~~**58**

| | | |
|---|---|---|
| A. | Compromise and Settlement of Claims, Interests, and Controversies | ~~64~~**58** |
| B. | Subordinated Claims | ~~64~~**58** |
| C. | Midland Release | ~~64~~**58** |
| D. | Apollo Release | ~~65~~**59** |
| E. | Fixed/Floating Debtors' Plan General Release | ~~66~~**60** |
| F. | Anaheim Hotel Debtors' Plan General Release | ~~67~~**61** |
| G. | Ontario Hotel Debtors' Plan General Release | ~~68~~**62** |
| H. | Re~~org~~**main**i~~niz~~ing Debtors' Plan General Release | ~~69~~**63** |
| I. | Exculpation | ~~70~~**64** |
| J. | Injunction | ~~71~~**65** |
| K. | Setoffs | ~~72~~**66** |

**ARTICLE IX. SEVERABILITY OF PLAN AND CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** ~~72~~**66**

| | | |
|---|---|---|
| A. | Severability of the Plan | ~~72~~**66** |
| B. | Condition Precedent to Confirmation of the Fixed/Floating Plan | ~~72~~**66** |
| C. | Conditions Precedent to the Effective Date of Each of the Joint Plans | ~~72~~**66** |
| D. | Waiver of Conditions | ~~73~~**67** |
| E. | Effective Date | ~~73~~**67** |
| F. | Effect of Non-Occurrence of the Effective Date Regarding Fixed/Floating Debtors | ~~73~~**67** |

**ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ~~73~~**68**

| | | |
|---|---|---|
| A. | Modification and Amendments | ~~73~~**68** |
| B. | Effect of Confirmation on Modifications | ~~74~~**68** |
| C. | Revocation or Withdrawal of the Plan | ~~74~~**68** |

**ARTICLE XI. RETENTION OF JURISDICTION** ........................................................................................ ~~74~~**68**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ................................................................................... ~~76~~**70**
  A.  Immediate Binding Effect........................................................................................ ~~76~~**70**
  B.  Additional Documents ............................................................................................ ~~76~~**70**
  C.  Payment of Statutory Fees .................................................................................... ~~76~~**71**
  D.  Dissolution of Committees ................................................................................... ~~76~~**71**
  E.  Reservation of Rights ............................................................................................ ~~77~~**71**
  F.  Successors and Assigns .......................................................................................... ~~77~~**71**
  G.  Dissolution of Entities ........................................................................................... ~~77~~**71**
  H.  Service of Documents............................................................................................ ~~77~~**71**
  I.  Term of Injunctions or Stays ................................................................................ ~~78~~**72**
  J.  Entire Agreement................................................................................................... ~~78~~**72**
  K.  Nonseverability of Plan Provisions....................................................................... ~~78~~**72**

K&E 18934861.12

# INTRODUCTION

Innkeepers USA Trust and certain of its affiliates (as defined in section 101(2) of the Bankruptcy Code) as debtors and debtors in possession (collectively, the "**Debtors**")[1] propose the following plans of reorganization. The Plan (as defined herein) is an aggregation of four separate joint plans of reorganization: the Fixed/Floating Plan; the Anaheim Plan, the Ontario Plan, and the Re~~org~~**ma**~~niz~~ing Debtor Plan (each as defined herein). Together these Joint Plans (as defined herein) provide for the resolution of all Claims against and Interests in each of the 92 Debtors in the Chapter 11 Cases. The Fixed/Floating Plan, the Anaheim Plan, the Ontario Plan, and the Re~~org~~**ma**~~niz~~ing Debtor Plan are severable from each other and the Confirmation and Consummation of any one of the Joint Plans are not conditioned on the Confirmation and Consummation of any of the other Joint Plans.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

*A.     Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.      "*Accrued Professional Compensation Claims*" means, at any given moment, all Claims for accrued fees and expenses (including success fees) for services rendered by a Professional through and including the Confirmation Date, to the extent such fees and expenses have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court and regardless of whether a fee application has been Filed for such fees and expenses. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Accrued Professional Compensation Claim.

2.      "*Adequate Protection Obligations*" means all outstanding Claims for adequate protection as set forth in the Cash Collateral Orders.

3.      "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtors' estates pursuant to sections 503(b) or 507(a)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses of preserving the Estates and operating the business of the Debtors incurred after the Petition Date and through the Effective Date; (b) Claims of Professionals in the Chapter 11 Cases; (c) amounts owing pursuant to the DIP Orders; (d) amounts owing on account of the Adequate Protection Obligations; (e) fees and charges assessed against the Estates pursuant to chapter 123 of the Judicial Code, including the U.S. Trustee Fees; and (f) requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code.

4.      "*Administrative Claims Bar Date*" means, except for Administrative Claims of Professionals, the first Business Day that is 30 days following the Effective Date of the Joint Plan applicable to the Debtor against whom the Administrative Claim is asserted, except as specifically set forth in the Plan or a Final Order.

5.      "*Allowed*" means with reference to any Claim or Interest, as may be applicable, (a) any Claim against the Debtors that has been listed on its Schedules (as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009) as liquidated in amount and not Disputed or contingent and for which (i) no contrary Proof of Claim has been Filed, (ii) no objection to allowance, request for estimation, or other challenge has been interposed, or (iii) no motion to deem the Schedules amended has been Filed, (b) any Proof of Claim or Interest that is timely Filed by the applicable Claims Bar Date, as to which no litigation (whether stayed or unstayed) is

---

[1]     The list of Debtors in these Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number can be found by visiting the Debtors' restructuring website at www.omnimgt.com/innkeepers or by contacting Omni Management Group, LLC at Innkeepers USA Trust c/o Omni Management Group, LLC, 16161 Ventura Boulevard, Suite C, PMB 606, Encino, California 91436. The location of the Debtors' corporate headquarters and the service address for their affiliates is: c/o Innkeepers USA, 340 Royal Poinciana Way, Suite 306, Palm Beach, Florida 33480.

pending and to which no objection or other challenge has been or is interposed in accordance with the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, or the Bankruptcy Court, if any, (c) any Claim expressly allowed by a Final Order or under the Plan, (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtors pursuant to a Final Order or under the Plan, (e) any Claim that is not otherwise subject to disallowance under section 502(d) of the Bankruptcy Code, (f) any Claim arising from the recovery of property in accordance with sections 550 and 553 of the Bankruptcy Code and Allowed in accordance with section 502(h) of the Bankruptcy Code (unless such Claim is otherwise Disputed), or (g) any Interest registered in the ownership register or otherwise on the Debtors' books and records, maintained by, or on behalf of, the Debtors as of the Voting Record Date.  Except as otherwise provided in the Plan, for purposes of determining the amount of an "Allowed Claim," there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset pursuant to applicable non-bankruptcy law or subject to recoupment.  Claims allowed solely for the purpose of voting to accept or reject a Joint Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder unless otherwise specified herein or by order of the Bankruptcy Court.  For any purpose under the Plan, unless specifically provided for herein, a Claim that has been Allowed shall not include amounts constituting interest, penalties, or late charges arising from or relating to the period from and after the Petition Date.  Any Claim or Interest that has been or is hereafter listed in the Schedules as Disputed, contingent, or unliquidated, and for which no Proof of Claim or Interest has been timely Filed, is not considered an Allowed Claim or Allowed Interest and shall be expunged without further action by the Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court.

6. **"*Anaheim Hotel Assumption Documents*" means the agreements relating to the assumption by New Anaheim HoldCo, pursuant to the Anaheim Hotel Commitment Letter, of the Anaheim Hotel Mortgage Loan Agreement, which documents shall be included in the Plan Supplement**

7. 6. "*Anaheim ~~Asset Purchase Agreement~~*" means, ~~to the extent the Debtors pursue a sale transaction related to the assets of the Anaheim Hotel Owner, that certain asset purchase agreement, if any, dated as of [\_\_\_\_\_], by and between the Anaheim Hotel Owner and [\_\_\_\_\_]~~*Hotel Commitment Letter*" means that Commitment Letter Regarding the Restructuring of the Hilton Suites in Anaheim, California by and between CWCapital and Lehman, dated May [\_\_], 2011.**

8. 7. "*Anaheim Hotel Debtors*" means Debtors:  (a) KPA HS Anaheim, LLC; (b) Grand Prix Mezz Borrower Term LLC; and (c) Grand Prix Anaheim Orange Lessee, LLC.

9. 8. "*Anaheim Hotel Debtors' Plan General Release*" means the release provision set forth in Article VIII.F.

10. 9. "*Anaheim Hotel Lessee*" means Grand Prix Anaheim Orange Lessee, LLC.

~~10. "*Anaheim Hotel Lessee Unencumbered Assets*" means the assets, if any, of the Anaheim Hotel Lessee that are not subject to a Secured Claim of any Entity, which assets are available for distribution to the Holders of Claims against and Interests in the Anaheim Hotel Lessee.~~

11. "*Anaheim Hotel Mezzanine Loan Agreement*" means that certain Mezzanine Loan Agreement, dated as of June 29, 2007, as amended, by and between Grand Prix Mezz Borrower Term, LLC, the 100% owner of KPA HS Anaheim, LLC, as borrower, and Lehman, as lender, pursuant to which Lehman provided Grand Prix Mezz Borrower Term, LLC a junior mezzanine loan in the original principal amount of $21.3 million, which amount is collateralized by Grand Prix Mezz Borrower Term, LLC's Interests in KPA HS Anaheim, LLC.

12. "*Anaheim Hotel Mezzanine Loan Claims*" means the**all** Claims **arising under,** derived from**,** or based upon the ~~outstanding principal and interest owing on account of the~~ Anaheim Hotel Mezzanine Loan Agreement**, including any guarantees provided by any of the Debtors in connection therewith**.

13. "*Anaheim Hotel Mezzanine Loan Deficiency Claims*" means any Anaheim Hotel Mezzanine Loan Claim that is not Secured.

2

14. "*Anaheim Hotel Mortgage Loan Agreement*" means that certain Deed of Trust Note, dated as of June 14, 2005, as amended, by and between RLJ Anaheim Suites Hotel L.P., as borrower, and GMAC Commercial Mortgage Bank, as lender, pursuant to which GMAC Commercial Mortgage Bank provided a mortgage loan in the original principal amount of $13.7 million to RLJ Anaheim Suites Hotel L.P. that was later assumed by KPA HS Anaheim, LLC pursuant to those certain Loan Assumption and Modification Agreements, dated as of October 4, 2006 and June 29, 2007, which amount is collateralized by the Hilton Suites in Anaheim, California.

15. "*Anaheim Hotel Mortgage Loan Claims*" means ~~the~~**all** Claims **arising under,** derived from**,** or based upon the ~~outstanding principal and interest owing on account of the~~ Anaheim Hotel Mortgage Loan Agreement**, including any guarantees provided by any of the Debtors in connection therewith**.

16. "*Anaheim Hotel Owner*" means Debtor KPA HS Anaheim, LLC.

~~17. "*Anaheim Hotel Purchase Consideration*" means, to the extent the Debtors contemplate and consummate the Anaheim Hotel Sale Transaction, the consideration received by the Anaheim Hotel Owner and/or the assumption of the obligations under the Anaheim Hotel Mortgage Loan Agreement pursuant to the Anaheim Asset Purchase Agreement and, if applicable, in accordance with the Anaheim Stalking Horse Order.~~

**17.** ~~18.~~ "*Anaheim Hotel Releasing Parties*" means, collectively, each of the following parties in their respective capacities as such:  (a) the Debtors, (b); CWCapital, (c) TriMont, in its capacity as servicer for the Anaheim Hotel Mezzanine Loan **Agreement**; (d) Apollo; (e) **SASCO, as holder of all economic and beneficial interests or lender of record under the Anaheim Hotel Mezzanine Loan Agreement; (f)** the Independent Committee; (~~f~~**g**) all other Holders of Claims against or Interests in the Anaheim Hotel Debtors; (~~g~~**h**) the officers, directors, trustees, and members of the Debtors; and (~~h~~*i*) each of the foregoing entities' respective predecessors, successors and assigns, shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, trustees, members, master servicers, special servicers, trusts and trustees, and professionals.

~~19. "*Anaheim Hotel Sale Transaction*" means, to the extent consummated, the sale of the assets of the Anaheim Hotel Owner in accordance with the Anaheim Asset Purchase Agreement and, if applicable, the Anaheim Hotel Stalking Horse Order.~~

**18.** ~~20.~~ "*Anaheim Mezzanine Debtor*" means Debtor Grand Prix Mezz Borrower Term LLC.

**19.** ~~21.~~ "*Anaheim Plan*" means the chapter 11 plan of reorganization proposed herein for the Anaheim Hotel Debtors.

~~22. "*Anaheim Stalking Horse Order*" means, to the extent the Debtors pursue a stalking horse sale process related to the assets of the Anaheim Hotel Owner, the Order (I) Authorizing the Debtors to Enter into the Anaheim Asset Purchase Agreement with [_____], (II) Approving Bidding Procedures, and (III) Approving an Expense Reimbursement, entered by the Bankruptcy Court on [_____], 2011 [Docket No. •].~~

**20.** ~~23.~~ "*Apollo*" means Apollo Investment Corporation and its predecessors, successors and assigns, shareholders, affiliates, subsidiaries, as well as the principals, employees, agents, officers, directors, and professionals of each such party, each in its capacity as such.

**21.** ~~24.~~ "*Apollo Guaranty*" means that certain Required Capital Improvements Guaranty, executed by Apollo Investment Corporation for the benefit of Lehman ALI Inc., in its capacity as original lender under the Fixed Rate Pool Hotel Mortgage Loan Agreement, dated as of June 29, 2007.

**22.** ~~25.~~ "*Apollo Unsecured Claim Fund Payment*" means the $375,000 payment to be made by Apollo on the Effective Date with respect to the Fixed/Floating Plan and to be included in the Fixed/Floating Unsecured Claim Fund.

**23.** ~~26.~~ "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as applicable to the Chapter 11 Cases, as may be amended from time to time.

3

**24.** ~~27.~~ "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases, and, to the extent of the withdrawal of any reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the Southern District of New York.

**25.** ~~28.~~ "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, as may be amended from time to time.

**26.** ~~29.~~ "*Bidding Procedures Order*" means the Order (I) Authorizing the Debtors to Enter into the Amended Commitment Letter with Five Mile Capital II Pooling REIT LLC, Lehman ALI Inc., and Midland Loan Services, (II) Approving the Amended New Party/Midland Commitment Between the Debtors and Midland Loan Services, (III) Approving Fixed/Floating Bidding Procedures, (IV) Approving Bid Protections, (V) Authorizing an Expense Reimbursement to "Bidder D," and (VI) Modifying Cash Collateral Order to Increase Cash Reserve, entered by the Bankruptcy Court on March 11, 2011 [Docket No. 1009].

**27.** ~~30.~~ "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**28.** ~~31.~~ "*C-III*" means C-III Asset Management, LLC, or any successor thereto, as special servicer for the Ontario Hotel Mortgage Loan Agreement.

**29.** ~~32.~~ "*C6 and C7 Trusts*" means the mortgage loan pools known as LB-UBS Commercial Mortgage Trust 2007-C6 and LB-UBS Commercial Mortgage Trust 2007-C7.~~;~~ **7; provided that the foregoing definition of C6 and C7 Trusts shall not include the holders of certificates in such commercial mortgage backed securitization trusts in their capacity as such.**

**30.** ~~33.~~ "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

**31.** ~~34.~~ "*Cash Collateral Orders*" means the: Interim Order (A) Authorizing the Debtors to (I) Use the Adequate Protection Parties' Cash Collateral and (II) Provide Adequate Protection to the Adequate Protection Parties Pursuant to 11 U.S.C. §§ 361, 362, and 363, (B) to the Extent Approved in the Final Order, Granting Senior Secured, Priming Liens on Certain Postpetition Intercompany Claims, (C) to the Extent Approved in the Final Order, Granting Administrative Priority Status to Certain Postpetition Intercompany Claims, and (D) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b), entered by the Bankruptcy Court on July 20, 2010 [Docket No. 54]; the Final Order Authorizing the Debtors to (i) Use the Adequate Protection Parties' Cash Collateral and (ii) Provide Adequate Protection to the Adequate Protection Parties Pursuant to 11 U.S.C. §§ 361, 362, and 363, entered by the Bankruptcy Court on September 2, 2010 [Docket No. 402]; Order Amending the Cash Collateral Order, entered by the Bankruptcy Court on October 1, 2010 [Docket No. 539]; Stipulation Regarding Modification of the Committee's Challenge Deadline In The Cash Collateral Order, entered by the Bankruptcy Court on November 30, 2010 [Docket No. 744]; Stipulation Between The Official Committee of Unsecured Creditors of Innkeepers USA Trust And The Adequate Protection Parties Regarding Further Modification of the Committee's Challenge Deadline In The Cash Collateral Order, entered by the Bankruptcy Court on January 4, 2011 (Docket No. 788); Third Stipulation Regarding Further Modification of the Committee's Challenge Deadline In The Cash Collateral Order, entered by the Bankruptcy Court on January 28, 2011 [Docket No. 875]; Fourth Stipulation Regarding Further Modification of the Committee's Challenge Deadline In The Cash Collateral Order, entered by the Bankruptcy Court on February 28, 2011 [Docket No. 953]; Order Modifying Final Cash Collateral Order, entered by the Bankruptcy Court on March 11, 2011 [Docket No. 1008], and Fifth Stipulation Regarding Further Modification of the Committee's Challenge Deadline ~~In in~~ **in** ~~T~~the Cash Collateral Order, entered by the Bankruptcy Court on March 28, 2011 [Docket No. 1060], as may be amended, modified, or supplemented by the Bankruptcy Court from time to time**. The Cash Collateral Orders shall remain in effect between the Confirmation Date and the Effective Date**.

**32.** ~~35.~~ "*Causes of Action*" means any Claim, cause of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability,

damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, Secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.

**33.** 36. "*Certificate*" means any instrument evidencing a Claim against, or an Interest in, one of more of the Debtors.

**34.** 37. "*Chapter 11 Cases*" means the jointly administered chapter 11 cases commenced by the Debtors and styled In re Innkeepers USA Trust, et al., Chapter 11 Case No. 10-13800 (SCC), which are currently pending before the Bankruptcy Court.

**35.** 38. "*Claim*" shall have the meaning set forth in section 101(5) of the Bankruptcy Code. ***Chatham*"** **means Chatham Lodging, L.P.**

**36.** **"*Chatham APA*" means that certain Agreement of Purchase and Sale, dated as of May 3, 2011, by and among the San Diego Hotel Owner, the Garden Grove Hotel Owner, the Tysons Corner Hotel Owner, the Washington DC Hotel Owner, the San Antonio Hotel Owner, the San Diego Hotel Lessee, the Garden Grove Hotel Lessee, the General Hotel Lessee, Innkeepers USA Limited Partnership, and Chatham.**

**37.** **"*Chatham Hotel Sale Transaction*" means the sale transaction set forth in the Chatham APA.**

**38.** **"*Chatham Hotel Sale Transaction Documents*" means the Chatham APA** *(and ancillary documents related thereto) for the* **Chatham Hotel Sale Transaction, which shall be included in the Plan Supplement.**

**39.** **"*Chatham Hotel Sale Transaction Purchase* *Consideration" means the Garden Grove Hotel Purchase Consideration, the San Diego Hotel Purchase Consideration, the Washington DC Hotel Purchase Consideration, the Tysons Corner Hotel Purchase Consideration, and the San Antonio Hotel Purchase Consideration.***

**40.** **"*Chatham Hotel Sale Transaction Loan Assumption Documents*" means the agreements relating to the assumption by Chatham, pursuant to the LNR Commitment, of the Garden Grove Hotel Mortgage Loan Agreement, the San Antonio Hotel Mortgage Loan Agreement, the San Diego Hotel Mortgage Loan Agreement, the Tysons Corner Hotel Mortgage Loan Agreement, and the Washington DC Hotel Mortgage Loan Agreement, as such loan agreements may be assumed, amended, restated, and/or supplemented in connection with the Chatham Hotel Sale Transaction, which documents shall be included in the Plan Supplement.**

**41.** **"*Claim*" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.**

**42.** 39. "*Claims Bar Date*" means the applicable deadline by which a Proof of Claim must be or must have been Filed, as established by the Order Establishing Deadlines and Procedures for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof, entered by the Bankruptcy Court on September 16, 2010 [Docket No. 440].

**43.** 40. "*Claims Objection Bar Date*" means the date that is 120 days after the Effective Date of the Joint Plan applicable to the Debtor against whom the Claim is asserted, or such later date as may be fixed by order of the Bankruptcy Court.

**44.** 41. "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

**45.** 42. "*Class*" means a category of Holders of Claims or Interests as set forth in Article III in accordance with section 1122(a) of the Bankruptcy Code.

K&E 18934861.12

**46.** ~~43.~~ "*Commitment Letter*" means that certain Amended and Restated Binding Commitment Agreement Regarding the Acquisition and Restructuring of Certain Subsidiaries of Innkeepers USA Trust, dated ~~as of March 9,~~ **May 3,** 2011, by and among ~~Lehman, Five Mile Pooling~~**New HoldCo,** *the Fixed/Floating Plan Sponsors*, Apollo Investment Corporation, the Fixed/Floating Debtors, and Midland, as well as the appendices and exhibits attached thereto, ~~including the Five Mile/Lehman Commitment and the Five Mile/Midland Commitment, as may be amended by the adoption and ratification by~~ *the Fixed/Floating Plan Sponsors*.

**47.** ~~44.~~ "*Committee*" or "*Committees*" means any official committee (and any and all subcommittees thereof) appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

**48.** ~~45.~~ "*Confirmation*" means, with respect to any of the Joint Plans, the entry on the docket of the Chapter 11 Cases of a Confirmation Order applicable to such Joint Plan.

**49.** ~~46.~~ "*Confirmation Date*" means, with respect to any of the Joint Plans, the date upon which the Bankruptcy Court enters the Confirmation Order (within the meaning of Bankruptcy Rules 5003 and 9021) applicable to such Joint Plan.

**50.** ~~47.~~ "*Confirmation Hearing*" means, with respect to any of the Joint Plans, the hearing held by the Bankruptcy Court to consider Confirmation of the Plan applicable to such Joint Plan pursuant to section 1129 of the Bankruptcy Code.

**51.** ~~48.~~ "*Confirmation Objection Deadline*" means, with respect to any of the Joint Plans, the deadline for Filing objections to Confirmation of such Joint Plan.

**52.** ~~49.~~ "*Confirmation Order*" means, with respect to any **or all** of the Joint Plans, an order of the Bankruptcy Court confirming such Joint Plan **or Joint Plans** pursuant to section 1129 of the Bankruptcy Code. **The Confirmation Order for the Fixed/Floating Plan shall be in form and substance acceptable to the Fixed/Floating Plan Sponsors.**

**53.** ~~50.~~ "*Consummation*" means, for all purposes with respect to any of the Joint Plans, the occurrence of the Effective Date for such Joint Plan.

**54.** ~~51.~~ "*Corporate Structure Summary*" means the description of the ultimate corporate structure for the Post-Effective Date Fixed/Floating Debtors, which description shall be set forth in the Plan Supplement.

**55.** ~~52.~~ "*Cure Obligations*" means all (a) amounts (or such lesser amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) required to cure any monetary defaults and (b) other obligations required to cure any non-monetary defaults (the performance required to cure such non-monetary defaults and the timing of such performance will be described in reasonable detail in a notice of proposed assumption and assignment) under any Executory Contract or Unexpired Lease that is to be assumed by the Debtors pursuant to sections 365 or 1123 of the Bankruptcy Code.

**56.** ~~53.~~ "*CWCapital*" means CWCapital Asset Management, LLC, or any successor thereto, as special servicer for the Anaheim Hotel Mortgage Loan Agreement.

**57.** ~~54.~~ "*D&O Liability Insurance Policies*" means all insurance policies for directors, members, trustees, officers, and managers' liability maintained by the Debtors as of the Effective Date.

**58.** ~~55.~~ "*DIP Orders*" means (a) the Final Order Authorizing the Debtors to Obtain Postpetition Senior Secured Super-Priority Debtor-in-Possession Financing from Five Mile Capital II Pooling International LLC Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c), 364(d) and 364(e), entered September 2, 2010 [Docket No. 400] as may be amended, modified, or supplemented by the Bankruptcy Court from time to time and (b) the Amended Final Order Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, 364 and 507 (I) Authorizing Floating Rate Debtors to Obtain Postpetition Financing and (II) Granting Liens and Super-Priority Claims, entered September 13, 2010 [Docket No. 432] as may be amended, modified, or supplemented by the Bankruptcy Court from time to time.

6

**59.** ~~56.~~ "*Disbursing Agent*" means the Debtors or their agent or any other Entity or Entities selected by the Debtors ~~or the Post-Effective Date Debtors, as applicable,~~ **in their sole discretion** to make or facilitate distributions that are to be made on and after the Effective Date pursuant to the applicable Joint Plan.

**60.** ~~57.~~ "*Disclosure Statement*" means, with respect to any of the Joint Plans, the Disclosure Statement for the Debtors' Plans of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, dated [~~____~~],**May 9,** 2011, as amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

**61.** ~~58.~~ "*Disclosure Statement and Solicitation Procedures Order*" means, with respect to any of the Joint Plans, the Order Approving (A) Adequacy of the Disclosure Statement, (B) Certain Dates Related to Confirmation of the Plan; (C) Certain Voting Procedures and the Form of Certain Documents to Be Distributed in Connection With Solicitation of the Plan; and (D) Proposed Voting and General Tabulation Procedures, entered by the Bankruptcy Court on [_____], 2011 [Docket No. __], approving the Disclosure Statement and certain procedures for solicitation of votes on such Joint Plan and granting related relief.

**62.** ~~59.~~ "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

**63.** ~~60.~~ "*Distribution Waterfall*" means distributions of a Debtor's property in satisfaction of Claims and Interests in accordance with all applicable priority principles of the Bankruptcy Code and other applicable law; provided that, for the avoidance of doubt, no Holder of a Claim or Interest shall receive a distribution under the Plan that exceeds the Allowed amount of its Claim or Interest.

**64.** ~~61.~~ "*Effective Date*" means, with respect to any of the Joint Plans, the date that is a Business Day selected by the Debtors after the Confirmation Date applicable to such Joint Plan on which: (a) no stay of the Confirmation Order applicable to such Joint Plan is in effect; and (b) all conditions precedent specified in Article IX.C applicable to such Joint Plan have been satisfied or waived (in accordance with Article IX.D).

**65.** ~~62.~~ "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

**66.** ~~63.~~ "*Estate*" means, as to each Debtor, the estate created for each Debtor on the Petition Date pursuant to sections 301 and 541 of the Bankruptcy Code.

**67.** ~~64.~~ "*Exculpated Parties*" means, collectively, the Anaheim Hotel Releasing Parties, the Fixed/Floating Releasing Parties, the Ontario Hotel Releasing Parties, and the ~~Reorganizing~~**Remaining Debtor** Releasing Parties; provided that the Anaheim Releasing Parties shall not be deemed Exculpated Parties unless and until the Effective Date of the Anaheim Plan; provided further that the Fixed/Floating Releasing Parties shall not be deemed Exculpated Parties unless and until the Effective Date of the Fixed/Floating Plan; provided further that the Ontario Releasing Parties shall not be deemed Exculpated Parties unless and until the Effective Date of the Ontario Plan; provided further that the ~~Reorganizing~~**Remaining Debtor** Releasing Parties shall not be deemed Exculpated Parties unless and until the Effective Date of the Re~~organizing~~**mai**~~ning~~ Debtor Plan.

**68.** ~~65.~~ "*Exculpation*" means the exculpation provision set forth in Article VIII.I.

**69.** ~~66.~~ "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

**70.** ~~67.~~ "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, which was 0.28%.

**71.** ~~68.~~ "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest, the Notice and Claims Agent.

7

**72.** ~~69.~~ "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; <u>provided</u> <u>that</u> the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules, may be Filed relating to such order shall not prevent such order from being a Final Order; <u>provided</u> <u>further</u> that<u>,</u> the Debtors or the Post-Effective Date Debtors, as applicable, reserve the right to waive any appeal period.

**73.** ~~70.~~ "*Five Mile*" means, collectively, Five Mile Capital II Pooling REIT LLC, through its investment advisor Five Mile Capital Partners LLC.

~~71.     "*Five Mile/Lehman Commitment*" means that certain Revised and Amended and Restated Commitment Agreement, dated as of March 9, 2011, by and among Five Mile Pooling and Lehman.~~

~~72.     "*Five Mile/Midland Commitment*" means that certain Second Amended and Restated *Binding Commitment Regarding the Acquisition of Certain Subsidiaries of Innkeepers USA Trust, dated* as of March 9, 2011, by and between Five Mile Pooling and Midland.~~

**74.** ~~73.~~ "*Five Mile DIP Agent*" means Five Mile Capital II Pooling International LLC, as administrative agent under the Five Mile DIP Facility.

**75.** ~~74.~~ "*Five Mile DIP Agreement*" means that certain Senior Secured Super-Priority Debtor-in-Possession Credit Agreement, dated as of September 24, 2010, among certain of the Debtors, as borrowers, and Five Mile Capital II Pooling International LLC as administrative agent, collateral agent, and Syndication Agent, and the lenders party thereto.

**76.** ~~75.~~ "*Five Mile DIP Claims*" means any Claim derived from or based upon the Five Mile DIP Agreement.

**77.** ~~76.~~ "*Five Mile DIP Facility*" means that certain $53.0 million debtor in possession credit facility entered into pursuant to the Five Mile DIP Agreement, which credit facility contains three "tranches:" "Tranche A," "Tranche B," and "Tranche C."

**78.** ~~77.~~ "*Five Mile DIP Lenders*" means the lenders under the Five Mile DIP Facility.

**79.** ~~78.~~ "*Five Mile ~~Pooling~~**Expense Reimbursement Claim**" means Five Mile ~~Capital II Pooling REIT LLC~~'*s reasonable and documented fees and expenses* **paid pursuant to the Bidding Procedures Order**".

**80.** ~~79.~~ "*Fixed/Floating Debtors*" means (a) the Fixed Rate Pool Hotel Debtors, (b) the Fixed Rate Pool Lessee, (c) the Floating Rate Pool Hotel Debtors, (d) the Floating Rate Pool Lessee; (e) GP AC Sublessee LLC, (f) Grand Prix Mezz Borrower Fixed, LLC; (g) Grand Prix Mezz Borrower Floating, LLC; and (h) Grand Prix Mezz Borrower Floating 2, LLC.

**81.** ~~80.~~ "*Fixed/Floating Debtors' Plan General Release*" means the release provision set forth in Article VIII.E.

**82.** ~~81.~~ "*Fixed/Floating Plan*" means the chapter 11 plan of reorganization proposed herein for the Fixed/Floating Debtors.

**83.** ~~82.~~ "*Fixed/Floating Plan Sponsors*" means ~~(a) if the Debtors do not receive a qualified bid under the terms of the Bidding Procedures Order, Five Mile (through one or more of its wholly owned affiliates(s), or through a Five Mile controlled investment vehicle, comprised of limited partners in Five Mile Capital Partners II LP and Five Mile Capital Investment Opportunities LP) and Lehman; or (b) if the Debtors do receive a qualified bid under the~~

8

terms of the Bidding Procedure Order, the proponent(s) of the bid that is selected as the Fixed/Floating Successful Bid. Cerberus Series Four Holdings LLC and Chatham Lodging Trust.

**84.** 83. "*Fixed/Floating Releasing Parties*" means, collectively, each of the following parties in their respective capacities as such: (a) the Lehman DIP Lenders; (b) **Five Mile; (c)** the Five Mile DIP Agent; (c**d**) the Five Mile DIP Lenders; (d**e**) the Debtors; (e) Lehman, in its capacity as Holder of Claims *under the Floating Rate* Mortgage Loan Agreement; (f) Five Mile**f) Lehman**; (g) **New HoldCo and each of the Fixed/Floating Plan Sponsors; (h)** Midland; (h**i**) the master servicer for the C6 and C7 Trusts; (i**j**) trustees for the C6 and C7 Trusts; (j**k**) the C6 and C7 Trusts; (k**l**) TriMont, in its capacity as special servicer for the Floating Rate Pool Mezzanine Loan Agreement; (l**m**) Apollo; (m**n**) the Committee; (n**o**) the Independent Committee; (o**p) SASCO, as holder of all economic and beneficial interests or lender of record** *under the Floating Rate* **Pool Mezzanine Loan Agreement; (q)** all other Holders of Claims against or Interests in the Fixed/Floating Debtors; (p**r**) the officers, directors, trustees, and members of the Debtors; and (q**r**) each of the foregoing entities' respective predecessors, successors and assigns, shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, trustees, members, master servicers, special servicers, trusts and trustees, and professionals. **For the avoidance of doubt, certificateholders in the C6 and C7 Trusts, in their capacity as such, are not Fixed/Floating Releasing Parties.**

**85.** 84. "*Fixed/Floating Successful Bid*" means (a) if the Debtors do not receive a qualified bid under the terms of the Bidding Procedures Order, the bid of the Investor and Lehman**bid of New HoldCo** on the terms set forth in the Commitment Letter; or (b) if the Debtors do receive a qualified bid under the terms of the Bidding Procedure Order, the bid that in all regards complies with the applicable requirements of the Bidding Procedures Order and is determined to be the highest or otherwise best bid in accordance with the Bidding Procedures Order.

**86.** 85. "*Fixed/Floating Unsecured Claim Fund*" means a payment of Cash in the aggregate amount of $3.75**4.75** million (which amount includes the Apollo Unsecured Claim Fund Payment), which payment shall be shared Pro Rata between Holders of General Unsecured Claims against the Fixed/Floating Debtors in accordance with the treatment of Holders of General Unsecured Claims against the Fixed/Floating Debtors set forth in Article IV**III**.B.1.

**87.** 86. "*Fixed Rate Pool Hotel Debtors*" means Debtors: (a) Grand Prix Addison (RI) LLC; (b) Grand Prix Altamonte LLC; (c) Grand Prix Arlington LLC; (d) Grand Prix Atlanta (Peachtree Corners) LLC; (e) Grand Prix Atlanta LLC; (f) Grand Prix Bellevue LLC; (g) Grand Prix Belmont LLC; (h) Grand Prix Binghamton LLC; (i) Grand Prix Bothell LLC; (j) Grand Prix Campbell / San Jose LLC; (k) Grand Prix Cherry Hill LLC; (l) Grand Prix Chicago LLC; (m) Grand Prix Columbia LLC; (n) Grand Prix Denver LLC; (o) Grand Prix El Segundo LLC; (p) Grand Prix Englewood / Denver South LLC; (q) Grand Prix Fremont LLC; (r) Grand Prix Ft. Lauderdale LLC; (s) Grand Prix Gaithersburg LLC; (t) Grand Prix Germantown LLC; (u) Grand Prix Horsham LLC; (v) Grand Prix Islandia LLC; (w) Grand Prix Las Colinas LLC; (x) Grand Prix Lexington LLC; (y) Grand Prix Livonia LLC; (z) Grand Prix Lombard LLC; (aa) Grand Prix Louisville (RI) LLC; (bb) Grand Prix Lynnwood LLC; (cc) Grand Prix Mountain View LLC; (dd) Grand Prix Mt. Laurel LLC; (ee) Grand Prix Naples LLC; (ff) Grand Prix Portland LLC; (gg) Grand Prix Richmond (Northwest) LLC; (hh) Grand Prix Richmond LLC; (ii) Grand Prix Saddle River LLC; (jj) Grand Prix San Jose LLC; (kk) Grand Prix San Mateo LLC; (ll) Grand Prix Schaumburg LLC; (mm) Grand Prix Shelton LLC; (nn) Grand Prix Sili I LLC; (oo) Grand Prix Sili II LLC; (pp) Grand Prix Tukwila LLC; (qq) Grand Prix Westchester LLC; (rr) Grand Prix Willow Grove LLC; and (ss) Grand Prix Windsor LLC.

**88.** 87. "*Fixed Rate Pool Lessee*" means Debtor Grand Prix Fixed Lessee LLC.

**89.** 88. "*Fixed Rate Pool Mortgage Loan Agreement*" means that certain Loan Agreement, dated as of June 29, 2007, as amended, by and among the Fixed Rate Pool Hotel Debtors, as borrowers, the Fixed Rate Pool Lessee, as operating lessee, Grand Prix Holdings, as guarantor, and Lehman, as the original lender, pursuant to which Lehman provided mortgage loans to the Fixed Rate Pool Hotel Debtors in the aggregate principal amount of $825,402,542, which amount is collateralized by the 45 hotel properties owned by the Fixed Rate Pool Hotel Debtors and evidenced by a certain Replacement Promissory Note A-1 and a certain Replacement Promissory Note A-2, each in the principal amount of $412,701,271 and each dated as of August 9, 2007.

**90.** ~~89.~~ "*Fixed Rate Pool Mortgage Loan Claims*" means the**all** Claims **arising under,** derived from, or based upon the ~~outstanding principal and interest owing on account of the~~ Fixed Rate Pool Mortgage Loan Agreement**, including any guarantees provided by any of the Debtors in connection therewith**.

**91.** ~~90.~~ "*Fixed Rate Pool Mortgage Loan Deficiency Claims*" means any Fixed Rate Pool Mortgage Loan Claim that is not Secured.

**92.** ~~91.~~ "*Floating Rate Pool Hotel Debtors*" means Debtors: (a) Grand Prix Addison (SS) LLC; (b) Grand Prix Albany LLC; (c) Grand Prix Atlantic City LLC; (d) Grand Prix Bulfinch LLC; (e) Grand Prix East Lansing LLC; (f) Grand Prix Ft. Wayne LLC; (g) Grand Prix Grand Rapids LLC; (h) Grand Prix Harrisburg LLC; (i) Grand Prix Indianapolis LLC; (j) Grand Prix Montvale LLC; (k) Grand Prix Morristown LLC; (l) Grand Prix Ontario LLC; (m) Grand Prix Rockville LLC; (n) Grand Prix Troy (Central) LLC; (o) Grand Prix Troy (SE) LLC; (p) Grand Prix West Palm Beach LLC; (q) Grand Prix Woburn LLC; (r) KPA/GP Ft. Walton Beach LLC; (s) KPA/GP Louisville (HI) LLC; and (t) KPA/GP Valencia LLC.

**93.** ~~92.~~ "*Floating Rate Pool Lessee*" means Debtor Grand Prix Floating Lessee LLC.

**94.** ~~93.~~ "*Floating Rate Pool Mezzanine Loan Agreement*" means that certain Mezzanine Loan Agreement, dated as of June 29, 2007, as amended, by and between Grand Prix Mezz Borrower Floating 2, LLC, the 100% owner of the Floating Rate Pool Hotel Debtors, as borrower, and Lehman, as original lender, pursuant to which Lehman provided Grand Prix Mezz Borrower Floating 2, LLC a junior mezzanine loan in the original principal amount of $118.0 million, which amount is collateralized by Grand Prix Mezz Borrower Floating 2, LLC's Interests in the Floating Rate Pool Hotel Debtors.

**95.** ~~94.~~ "*Floating Rate Pool Mezzanine Loan Claims*" means the**all** Claims **arising under,** derived from, or based upon ~~the outstanding principal and interest owing on account of~~ the Floating Rate Pool Mezzanine Loan Agreement, including any guarantees provided by any of the Debtors in connection therewith.

**96.** ~~95.~~ "*Floating Rate Pool Mortgage Loan Agreement*" means that certain Loan Agreement, dated as of June 29, 2007, as amended, by and among the Floating Rate Pool Hotel Debtors, Grand Prix Wichita LLC, Grand Prix Tallahassee LLC, and Grand Prix Columbia LLC, as borrowers, the Floating Rate Pool Lessee, as operating lessee, Grand Prix Holdings, as guarantor, and Lehman, as original lender, pursuant to which Lehman provided mortgage loans to the borrowers in the original principal amount of $250.0 million, which amount is collateralized by the 20 hotels owned by the Floating Rate Pool Hotel Debtors, and evidenced by a certain Promissory Note, dated as of June 29, 2007, by the Floating Rate Pool Hotel Debtors, Grand Prix Wichita LLC, Grand Prix Tallahassee LLC, and Grand Prix Columbus LLC, for the benefit of Lehman.

**97.** ~~96.~~ "*Floating Rate Pool Mortgage Loan Claims*" means the**all** Claims **arising under,** derived from, or based upon the ~~outstanding principal and interest owing on account of the~~ Floating Rate Pool Mortgage Loan Agreement**, including any guarantees provided by any of the Debtors in connection therewith**.

**98.** ~~97.~~ "*Floating Rate Pool Mortgage Loan Deficiency Claims*" means any Floating Rate Pool Mortgage Loan Claim that is not Secured.

**99.** ~~98.~~ "*Garden Grove ~~Asset Purchase Agreement~~*" means~~, to the extent the Debtors pursue a sale transaction related to the assets of~~ **Hotel Debtors" means the Garden Grove Hotel Lessee and** the Garden Grove Hotel Owner~~, that certain asset purchase agreement, if any, dated as of [_____], by and between the Garden Grove Hotel Owner and [_____]~~.

**100.** ~~99.~~ "*Garden Grove Hotel Lessee*" means Debtor Grand Prix RIGG Lessee, LLC.

~~100. "*Garden Grove Hotel Lessee Unencumbered Assets*" means the assets, if any, of the Garden Grove Hotel Lessee that are not subject to a Secured Claim of any Entity, which assets are available for distribution to the Holders of Claims against and Interests in the Garden Grove Hotel Lessee.~~

101.    "*Garden Grove Hotel Mortgage Loan Agreement*" means that certain Deed of Trust Note, dated as of October 4, 2006, by and between KPA RIGG, LLC, as borrower, and Capmark Bank, as lender, pursuant to which Capmark Bank provided a mortgage loan to KPA RIGG, LLC in the original principal amount of $37.6 million, which amount is collateralized by the Residence Inn in Garden Grove, California.

102.    "*Garden Grove Hotel Mortgage Loan Claims*" means ~~the~~**all** Claims **arising under,** ~~derived from~~**,** or based upon the ~~outstanding principal and interest owing on account of the~~ Garden Grove Hotel Mortgage Loan Agreement**, including any guarantees provided by any of the Debtors in connection therewith**.

103.    "*Garden Grove Hotel Mortgage Loan Deficiency Claims*" means any Garden Grove Hotel Mortgage Loan Claim that is not Secured.

104.    "*Garden Grove Hotel Owner*" means Debtor KPA RIGG, LLC.

105.    "*Garden Grove Hotel Purchase Consideration*" means~~, to the extent the Debtors contemplate and consummate the Garden Grove Hotel Sale Transaction,~~ the consideration received by the Garden Grove Hotel Owner and~~/or~~ the assumption of the obligations under the Garden Grove Hotel Mortgage Loan Agreement pursuant to the ~~Garden Grove Asset Purchase Agreement and, if applicable, in accordance with the Garden Grove Stalking Horse Order~~**Chatham APA**.

106.    "~~*Garden Grove Hotel Sale Transaction*" means, to the extent consummated, the sale of the assets of the Garden Grove Hotel Owner in accordance with the Garden Grove Asset Purchase Agreement and, if applicable, the Garden Grove Hotel Stalking Horse Order.~~**General Hotel Debtors" means the General Hotel Lessee, the San Antonio Hotel Owner, the Tysons Corner Hotel Owner, and the Washington DC Hotel Owner.**

~~107.    "*Garden Grove Stalking Horse Order*" means, to the extent the Debtors pursue a stalking horse sale process related to the assets of the Garden Grove Hotel Owner, the Order (I) Authorizing the Debtors to Enter into the Garden Grove Asset Purchase Agreement with [_____], (II) Approving Bidding Procedures, and (III) Approving an Expense Reimbursement, entered by the Bankruptcy Court on [_____], 2011 [Docket No. •].~~

**107.**    ~~108.~~ "*General Hotel Lessee*" means Debtor Grand Prix General Lessee, LLC.

~~109.    "*General Hotel Lessee Unencumbered Assets*" means the assets, if any, of the Garden Grove Hotel Lessee that are not subject to a Secured Claim of any Entity, which assets are available for distribution to the Holders of Claims against and Interests in the Garden Grove Hotel Lessee.~~

**108.**    ~~110.~~ "*General Unsecured Claim*" means any Claim against any Debtor that is not Secured and that is not:  (a) an Administrative Claim; (b) a Priority Tax Claim; (c) an Other Priority Claim; (d) a Mortgage Loan Deficiency Claim; (e) a Floating Rate Pool Mezzanine Loan Claim; (f) an Anaheim Hotel Mezzanine Loan Deficiency Claim; (g) an Intercompany Claim; or (h) a Section 510(b) Claim.

**109.**    ~~111.~~ "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

**110.**    ~~112.~~ "*Grand Prix Holdings*" means Debtor Grand Prix Holdings LLC.

**111.**    ~~113.~~ "*Grand Prix Holdings Interests*" means the common interests in Debtor Grand Prix Holdings and the preferred interests in Debtor Grand Prix Holdings.

**112.**    ~~114.~~ "*Holder*" means any Entity holding a Claim or an Interest.

~~115.    "*Hotel Sale Transaction*" means, to the extent contemplated and consummated by the Debtors, the Garden Grove Hotel Sale Transaction, the San Diego Hotel Sale Transaction, the Washington DC Hotel Sale Transaction, the Tysons Corner Hotel Sale Transaction, and/or the San Antonio Hotel Sale Transaction.~~

116. "*Hotel Sale Transaction Documents*" *means the asset purchase agreements (and ancillary documents related thereto) for the* Hotel Sale Transactions and the Anaheim Hotel Sale Transaction, each to the extent contemplated by the Debtors pursuant to the Plan, which shall be included in the Plan Supplement.

117. "*Hotel Sale Transaction Consideration*" *means the Garden Grove Hotel Purchase Consideration, the San Diego Hotel Purchase Consideration, the Washington DC Hotel Purchase Consideration, the Tysons Corner Hotel Purchase Consideration, and the San Antonio Hotel Purchase Consideration.*

**113.** 118. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

**114.** 119. "*Indemnification Provision*" means each of the Debtors' indemnification provisions in place as of the Effective Date whether in the bylaws, certificates of incorporation, other formation documents, board resolutions, or employment contracts for the current and former directors, members, trustees, officers, and managers, employees, attorneys, other professionals, and agents of the Debtors and such current and former directors, members, trustees, officers, and managers' respective affiliates.

**115.** 120. "*Independent Committee*" means the committee of independent trustees of the board of trustees of Innkeepers USA Trust.

**116.** 121. "*Innkeepers USA LP Preferred D Interests*" means the class D preferred limited partnership units in Debtor Innkeepers USA Limited Partnership.

**117.** 122. "*Innkeepers USA Trust Common Interests*" means the common shares of Debtor Innkeepers USA Trust that are not Intercompany Interests.

**118.** 123. "*Innkeepers USA Trust Preferred A Interests*" means the 12% Series A cumulative preferred shares in Debtor Innkeepers USA Trust.

**119.** 124. "*Innkeepers USA Trust Preferred C Interests*" means the 8% Series C cumulative preferred shares in Debtor Innkeepers USA Trust.

**120.** 125. "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor other than a Claim based on a Postpetition Intercompany Loan.

**121.** 126. "*Intercompany Interests*" means any Interest held by a Debtor in another Debtor and any Interest held by a Debtor in a non-Debtor affiliate of a Debtor, including the Interests of KPA Raleigh, LLC held by Debtor Innkeepers USA Limited Partnership and the Interests of KPA Raleigh Leaseco, LLC held by Debtor KPA Leaseco Holding, Inc, except for Innkeepers USA Trust Preferred A Interests held by Debtor Grand Prix Holdings.

**122.** 127. "*Interests*" means the common stock or shares, limited liability company interests, limited partnership units, preferred interests, and any other equity, ownership or profits interests of any Debtor or non-Debtor subsidiary of a Debtor and options, warrants, rights or other securities or agreements to acquire the common stock or shares, limited liability company interests, other equity, ownership or profits interests of any Debtor or non-Debtor subsidiary of a Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtors subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

**123.** 128. "*Interim Compensation Order*" means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Official Committee Members, entered August 12, 2010 [Docket No. 189] as may be amended, modified, or supplemented by the Bankruptcy Court from time to time.

**124.** 129. "*Investment*" means (a) if the Debtors do not receive a qualified bid under the terms of the Bidding Procedures Order, an investment by Investor**New HoldCo** of $174.1 million**[___]** in Cash in the aggregate

whereby ~~the Investor~~**New HoldCo** will receive ~~50~~**, directly or indirectly, 100**% of the ~~New HoldCo~~ Interests ~~(subject to adjustment for the Third Party Investment)~~**of the Post-Effective Date Fixed/Floating Debtors** in accordance with the terms of ~~the Commitment Letter; or (b) if the Debtors do receive a qualified bid under the terms of the Bidding Procedure Order, the investment contemplated by the Fixed/Floating Successful Bid.~~

~~130.    "*Investor*" means (a) if the Debtors do not receive a qualified bid under the terms of the Bidding Procedures Order, Five Mile, through one or more of its wholly owned affiliates(s), or through a Five Mile controlled investment vehicle, comprised of limited partners in Five Mile Capital Partners II LP and Five Mile Capital Investment Opportunities LP; or (b) if the Debtors do receive a qualified bid under the terms of the Bidding Procedure Order, the investor contemplated in~~ the Fixed/Floating Successful Bid.

**125.**    ~~131.~~ "*Joint Plan*" or "*Joint Plans*" means, respectively, on an individual basis, and as applicable, the Anaheim Plan, the Fixed/Floating Plan, the Ontario Plan, or the Re~~org~~**ma**~~niz~~**in**ing Debtor Plan, or, collectively, the Anaheim Plan, the Fixed/Floating Plan, the Ontario Plan, and the Re~~org~~**ma**~~niz~~**in**ing Debtor Plan.

**126.**    ~~132.~~ "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001.

**127.**    ~~133.~~ "*Lehman*" means Lehman ALI Inc. **in its capacity as Holder of all Claims with respect to, and lender of record under, the Floating Rate Pool Mortgage Loan Agreement.**

**128.**    ~~134.~~ "*Lehman DIP Agreement*" means that certain Senior Secured Super Priority Debtor-in-Possession Loan Agreement, dated as of September 17, 2010, among certain of the Debtors, as borrowers, and the Lehman DIP Lender, as lender.

**129.**    ~~135.~~ "*Lehman DIP Claims*" means any Claim derived from or based upon the Lehman DIP Agreement.

**130.**    ~~136.~~ "*Lehman DIP Facility*" means that certain $17,498,095.52 debtor in possession credit facility entered into pursuant to the Lehman DIP Agreement.

**131.**    ~~137.~~ "*Lehman DIP Lenders*" means Solar Finance Inc. together with its successors and assigns.

**132.**    ~~138.~~ "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

**133.**    ~~139.~~ "*LNR*" means LNR Partners, LLC, or any successor(s) thereto, as special servicer for the Garden Grove Hotel Mortgage Loan Agreement, the San Diego Hotel Mortgage Loan Agreement, the Washington DC Hotel Mortgage Loan Agreement, the Tysons Corner Hotel Mortgage Loan Agreement, and the San Antonio Hotel Mortgage Loan Agreement.

**134.    "*LNR Commitment*" means that certain letter agreement by and between the LNR-Serviced Trusts and Chatham, dated May 3, 2011, regarding the LNR-Serviced Trusts agreement to provide financing to Chatham under certain circumstances, which shall be included in the Plan Supplement.**

**135.    "*LNR-Serviced Loans*" means the Garden Grove Hotel Mortgage Loan Agreement, San Antonio Hotel Mortgage Loan Agreement, San Diego Hotel Mortgage Loan Agreement, Tysons Corner Hotel Mortgage Loan Agreement, and Washington DC Hotel Mortgage Loan Agreement.**

**136.    "*LNR-Serviced Trusts*" means the trusts holding the Credit Suisse First Boston Mortgage Securities Corp. Commercial Mortgage Pass-Through Certificates, Series 2007-C1 and ML-CFC Commercial Mortgage Trust 2006-4, Commercial Mortgage Pass-Through Certificates, Series 2006-4.**

**137.    "*LNR Structuring Fee*" means a payment in Cash in the amount of $2.5 million to the LNR-Serviced Trusts in exchange for the agreement of the LNR-Serviced Trusts to provide the financing in connection with the Chatham Hotel Sale Transaction.**

13

**138.** ~~140.~~ "*Local Bankruptcy Rules*" means the Local Bankruptcy Rules for the Southern District of New York, as applicable to the Chapter 11 Cases, as may be amended, modified, or supplemented from time to time.

**139.** ~~141.~~ "*LP Bank Account*" means the approximately $7.4 million of Cash currently existing in a segregated bank account in the name of Innkeepers USA Limited Partnership.

~~142. "*Management Incentive Program*" means the management incentive program, which is described in Article IV.G of the Disclosure Statement and shall be described further in the Plan Supplement.~~

**140.** ~~143.~~ "*Midland*" means Midland Loan Services, a division of PNC Bank, National Association, or any successor thereto, solely in its capacity as special servicer for the C6 and C7 Trusts that own and hold the Fixed Rate Pool Mortgage Loan Agreement Claims.

~~144. "*Midland Financing*" means the debt financing provided by Midland to the Post-Effective Date Fixed/Floating Debtors in accordance with the Commitment Letter and the Five Mile/Midland Commitment.~~

**141.** ~~145.~~ "*Mortgage Loan Deficiency Claims*" means all (a) Fixed Rate Pool Mortgage Loan Deficiency Claims, (b) Floating Rate Pool Mortgage Loan Deficiency Claims, (c) Garden Grove Hotel Mortgage Loan Deficiency Claims, (d) Ontario Hotel Mortgage Loan Deficiency Claims, (e) San Antonio Hotel Mortgage Loan Deficiency Claims, (f) San Diego Grove Hotel Mortgage Loan Deficiency Claims, (g) Tysons Corner Hotel Mortgage Loan Deficiency Claims, and (h) Washington DC Hotel Mortgage Loan Deficiency Claims.

**142.** "***New Anaheim HoldCo*" means a special purpose entity controlled by the Holder of Allowed Class A4 Secured Anaheim Hotel Mezzanine Loan Claims.**

**143.** ~~146.~~ "*New Fixed/Floating By-Laws*" means the forms of the by-laws of ~~New HoldCo and~~ the Post-Effective Date Fixed/Floating Debtors, the forms of which shall be included in the Plan Supplement and consistent with the terms of the Fixed/Floating Successful Bid **and shall be acceptable to the Fixed/Floating Plan Sponsors**.

**144.** ~~147.~~ "*New Fixed/Floating Organizational Documents*" means the forms of the organizational documents for New HoldCo and the Post-Effective Date Fixed/Floating Debtors, the forms of which shall be included in the Plan Supplement and consistent with the terms of the Fixed/Floating Successful Bid **and shall be acceptable to the Fixed/Floating Plan Sponsors**.

**145.** ~~148.~~ "*New Fixed Rate Pool Mortgage Loan*" means~~, to the extent the Fixed/Floating Successful Bid contemplates the Midland Financing,~~ the assumed, amended, restated, and/or supplemented Fixed Rate Pool Mortgage Loan Agreement as reasonably required by Midland and as reasonably acceptable to the Debtors, the Fixed/Floating Plan Sponsors, and New HoldCo and consistent with the ~~Fixed/Floating Successful Bid~~**New HoldCo/Midland Commitment**, the form and terms of which shall substantially be set forth in the Plan Supplement and which shall include the terms and conditions set forth in the **New HoldCo/Midland** Commitment Letter and the New Fixed Rate Pool Mortgage Loan Limited Guarantys, pursuant to which the New Fixed Rate Pool Mortgage Notes shall be issued pursuant to the Fixed/Floating Plan.

**146.** ~~149.~~ "*New Fixed Rate Pool Mortgage Loan Limited Guarantys*" means~~, to the extent the Fixed/Floating Successful Bid contemplates the Midland Financing,~~ the limited guarantys provided to the lender under the New Fixed Rate Pool Mortgage Loan by ~~the Investor and~~ New HoldCo **and Cerberus Series Four Holdings, LLC**, which guarantys shall be consistent with the terms of the ~~Fixed/Floating Successful Bid~~**New HoldCo/Midland Commitment**.

**147.** ~~150.~~ "*New Fixed Rate Pool Mortgage Notes*" means~~, to the extent the Fixed/Floating Successful Bid contemplates the Midland Financing,~~ the new mortgage notes in the aggregate amount of $~~622.5 million (or such other amount set forth in the Fixed/Floating Successful Bid, if any)~~**[___]** to be issued in connection with execution of the New Fixed Rate Pool Mortgage Loan, which shall provide that the Holders of such notes will retain the liens securing the

K&E 18934861.12

Fixed Rate Pool Mortgage Loan Claims to the extent of the amount of such notes and shall contain the terms set forth in the ~~Fixed/Floating Successful Bid.~~

~~151.~~ ~~*"New Floating Rate Pool Mezzanine Loan Instrument"* means [a structured note or other debt or equity instrument or other consideration on terms to be agreed upon by the Fixed/Floating Plan Sponsors and the Debtors].~~ **New HoldCo/Midland Commitment.**

**148.** ~~152.~~ "*New HoldCo*" means ~~an entity that is newly~~ **INK Acquisition LLC, a Delaware limited liability company** formed by the Fixed/Floating Plan Sponsors that will acquire ~~the indirect and direct equity of Grand Prix Mezz Borrower Fixed, LLC, Grand Prix Mezz Borrower Floating, LLC, Fixed Rate Pool Lessee, and Floating Rate Pool Lessee~~**, directly or indirectly, 100% of the Interests of the Post-Effective Date Fixed/Floating Debtors** and such other assets as may be subsequently identified as necessary to the operation of the Fixed/Floating Debtors, on or after the Effective Date; *provided* ~~that~~ that no assets of the Other Debtors, including without limitation, Cash or Cash equivalents, shall be acquired by New HoldCo**, except as contemplated by the Transition Services Agreement**.

**149.** ~~153.~~ "*New HoldCo Board*" means the board of directors, members, managers, or trustees of New HoldCo.

**150.** ~~154.~~ "*New HoldCo ~~Interests~~*" means ~~the common stock or shares issued by New HoldCo, which are to be authorized and issued pursuant to~~ */Midland Commitment"* **means that certain** *Binding Commitment Regarding the Acquisition of Certain Subsidiaries of Innkeepers USA Trust, dated* **April 25, 2011, by and between New HoldCo,** the Fixed/Floating Plan **Sponsors, and Midland**.

**151.** ~~155.~~ "*Notice and Claims Agent*" means Omni Management Group, LLC in its capacity as notice, claims, and balloting agent for the Debtors.

**152.** ~~156.~~ "*Ontario Hotel Debtors*" means the Ontario Hotel Owner and the Ontario Hotel Lessee.

**153.** ~~157.~~ "*Ontario Hotel Debtors' Plan General Release*" means the release provision set forth in Article VIII.G.

**154.** ~~158.~~ "*Ontario Hotel Lessee*" means Debtor Grand Prix Ontario Lessee, LLC.

**155.** ~~159.~~ "*Ontario Hotel Lessee Unencumbered Assets*" means the assets, if any, of the Ontario Hotel Lessee that are not subject to a Secured Claim of any Entity, which assets are available for distribution to the Holders of Claims against and Interests in the Ontario Hotel Lessee.

**156.** ~~160.~~ "*Ontario Hotel Mortgage Loan Agreement*" means that certain Deed of Trust Note, dated as of October 4, 2006, by and between KPA HI Ontario, LLC, as borrower, and Deutsche Banc Mortgage Capital, LLC, as successor in interest to Capmark Bank, as lender, pursuant to which Deutsche Banc Mortgage Capital, LLC provided a mortgage loan to KPA HI Ontario, LLC in the original principal amount of $35.0 million, which amount is collateralized by the Hilton in Ontario, California.

**157.** ~~161.~~ "*Ontario Hotel Mortgage Loan Claims*" means ~~the~~**all** Claims **arising under,** derived from**,** or based upon the ~~outstanding principal and interest owing on account of the~~ Ontario Hotel Mortgage Loan Agreement**, including any guarantees provided by any of the Debtors in connection therewith**.

**158.** ~~162.~~ "*Ontario Hotel Mortgage Loan Deficiency Claims*" means any Ontario Hotel Mortgage Loan Claim that is not Secured.

**159.** ~~163.~~ "*Ontario Hotel Owner*" means Debtor KPA HI Ontario.

**160.** ~~164.~~ "*Ontario Hotel Releasing Parties*" means, collectively, each of the following parties in their respective capacities as such: (a) the Debtors; (b) C-III; (c) Apollo; (d) the Independent Committee; (e) all other

15

Holders of Claims against or Interests in the Ontario Hotel Debtors; (f) the officers, directors, trustees, and members of the Debtors; and (g) each of the foregoing entities' respective predecessors, successors and assigns, shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, trustees, members, master servicers, special servicers, trusts and trustees, and professionals.

**161.** ~~165.~~ "*Ontario Hotel Unsecured Claim Fund*" means a payment of Cash in the aggregate amount of $~~[___]~~**30,000,** which payment shall be shared Pro Rata between Holders of General Unsecured Claims against the Ontario Hotel Debtors.

**162.** ~~166.~~ "*Ontario Plan*" means the chapter 11 plan of reorganization proposed herein for the Ontario Debtors.

**163.** ~~167.~~ "*Ordinary Course Professional*" means professionals retained and compensated by the Debtors in accordance with the Ordinary Course Professionals Order.

**164.** ~~168.~~ "*Ordinary Course Professionals Order*" means the Order Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business, entered August 12, 2010 [Docket No. 187] as may be amended, modified, or supplemented by the Bankruptcy Court from time to time.

**165.** ~~169.~~ "*Other Debtors*" means Debtors that are not the Fixed/Floating Debtors.

**166.** ~~170.~~ "*Other Priority Claim*" means any Claim against any Debtor entitled to priority in right of payment under section 507 of the Bankruptcy Code, other than:  (a) an Administrative Claim or (b) a Priority Tax Claim.

**167.** ~~171.~~ "*Other Secured Claim*" means any Secured Claim against any of the Debtors that is not a:  (a) Five Mile DIP Claim; (b) Lehman DIP Claim; (c) Anaheim Hotel Mortgage Loan Claim; (d) Fixed Rate Pool Mortgage Loan Claim; (e) Floating Rate Pool Mortgage Loan Claim; (f) Garden Grove Hotel Mortgage Loan Claim; (g) Ontario Hotel Mortgage Loan Claim; (h) San Antonio Hotel Mortgage Loan Claim; (i) San Diego Grove Hotel Mortgage Loan Claim; (j) Tysons Corner Hotel Mortgage Loan Claim; (k) Washington DC Hotel Mortgage Loan Claim; or (l) Anaheim Hotel Mezzanine Loan Claim.

**168.** ~~172.~~ "*Parent Companies*" means Debtors Grand Prix Holdings, Innkeepers USA Trust, Innkeepers Financial Corporation, and Innkeepers USA Limited Partnership.

**169.** ~~173.~~ "*Petition Date*" means July 19, 2010, the date on which the Debtors Filed their petitions for relief commencing the Chapter 11 Cases.

**170.** ~~174.~~ "*Plan*" means the Debtors' Plans of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code, as amended, supplemented, or modified from time to time, including the Plan Supplement, which is incorporated herein by reference and made part of this Plan as if set forth herein.

**171.** ~~175.~~ "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed before the Confirmation Hearing, as amended, supplemented, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including: (a) a list of Causes of Action to be retained by the Post-Effective Date Debtors; (b) a list of Executory Contracts**, including any franchise agreements,** and Unexpired Leases to be assumed and assigned to the Post-Effective Date Debtors and their respective Cure Obligations; (c) the Corporate Structure Summary; (d) the forms of the New Fixed/Floating By-Laws; (e) the forms of the New Fixed/Floating Organizational Documents; (f) ~~to the extent contemplated by the Fixed/Floating Successful Bid,~~ the forms of the New Fixed Rate Pool Mortgage Loan, the New Fixed Rate Pool Mortgage Notes, and the forms of the New Fixed Rate Pool Mortgage Loan Limited Guarantys; (g) the **Anaheim** Hotel ~~Sale Transaction Documents; (h) documents related to a rights offering or new mezzanine financing to the extent the Debtors determine to go forward with a rights offering or new mezzanine financing in connection with the Reorganizing Debtor Plan~~**Assumption Documents and the Anaheim Hotel Commitment Letter; (h) the LNR Commitment and the Chatham Hotel Sale Transaction Documents, including the Chatham Hotel Sale**

**Transaction Loan Assumption Documents**; (i) the Transition Services Agreement; (j) to the extent known, with respect to members of the New HoldCo Board and the Post-Effective Date Board, information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code; (k) ~~the Management Incentive Program; and~~ (l)**information regarding the compensation program related to the Remaining Debtors referenced in Article IV.I, if implemented; and (l)** to the extent contemplated by the Ontario Plan, the form of the deed in lieu of foreclosure agreement with respect to the collateral under the Ontario Hotel Mortgage Loan Agreement.

**172.** ~~176.~~ "*Post-Effective Date Anaheim Hotel Debtors*" means, collectively, the Entities holding the assets of the Anaheim Hotel Debtors or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

**173.** ~~177.~~ "*Post-Effective Date Board*" means the board of directors, members, trustees, managers, or trustees of Post-Effective Date Innkeepers USA Trust.

**174.** ~~178.~~ "*Post-Effective Date Debtors*" means, collectively, the Entities holding the assets of the 92 Debtors in the Chapter 11 Cases, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, including the Post-Effective Date Anaheim Hotel Debtors, the Post-Effective Date Fixed/Floating Debtors, the Post-Effective Date Ontario Hotel Debtors, ~~the Post-Effective Date San Antonio Hotel Debtors,~~ and the Post-Effective Date Re~~org~~**ma**~~niz~~ing Debtors.

**175.** ~~179.~~ "*Post-Effective Date Fixed/Floating Debtors*" means, collectively, the Entities holding the assets of the Fixed/Floating Debtors or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

**176.** ~~180.~~ "*Post-Effective Date General Hotel Lessee*" means, collectively, the Entities holding the assets of General Hotel Lessee or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

**177.** ~~181.~~ "*Post-Effective Date Innkeepers USA Limited Partnership*" means Innkeepers USA Limited Partnership or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, which entity, for the avoidance of doubt, is one of the Post-Effective Date Re~~org~~**ma**~~niz~~ing Debtors.

**178.** ~~182.~~ "*Post-Effective Date Innkeepers USA Trust*" means Innkeepers USA Trust or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, which entity, for the avoidance of doubt, is one of the Post-Effective Date Re~~org~~**ma**~~niz~~ing Debtors.

**179.** ~~183.~~ "*Post-Effective Date Ontario Hotel Debtors*" means, collectively, the Entities holding the assets of the Ontario Hotel Debtors or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

**180.** ~~184.~~ "*Post-Effective Date KPA Leaseco Holding, Inc.*" means KPA Leaseco Holding, Inc., or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

**181.** ~~185.~~ "*Post-Effective Date Re~~org~~**ma**~~niz~~ing Debtors*" means, collectively, the Entities holding the assets of the Re~~org~~**ma**~~niz~~ing Debtors or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

**182.** ~~186.~~ "*Post-Effective Date San Diego Hotel Debtors*" means, collectively, the Entities holding the assets of the San Diego Hotel Debtors or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

**183.** ~~187.~~ "*Post-Effective Date Tysons Corner Hotel Owner*" means, collectively, the Entities holding the assets of the Tysons Corner Hotel Owner or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date.

**184.** ~~188.~~ "*Postpetition Intercompany Loan*" means any Claim against a Debtor held by another Debtor based on an "Intercompany Loan" arising pursuant to the Cash Collateral Order, which Claim is, pursuant to the terms of the Cash Collateral Order, secured on a superpriority basis in accordance with sections 364(c)(2) and (d) of the Bankruptcy Code by senior secured and priming liens on and security interests in all the borrower Debtors' property, and the obligations of the borrower Debtors to satisfy such Claims is, in accordance with section 364(c)(1) of the Bankruptcy Code, a super-priority administrative expense Claim entitled to priority over any or all administrative expenses of the kind specified in, among other sections, sections 105, 326, 330, 331, 503(b), 506(c), 507(a), and 726 of the Bankruptcy Code (as further set forth in the Cash Collateral Order).

~~189. "*Preferred A Shareholders*" means the Holders of Innkeepers USA Trust Preferred A Interests.~~

~~190. "*Preferred C Shareholders*" means the Holders of Innkeepers USA Trust Preferred C Interests.~~

**185.** ~~191.~~ "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

**186.** ~~192.~~ "*Pro Rata*" means (a) the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class or (b) for an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

**187.** ~~193.~~ "*Professional*" means an Entity: (a) retained in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 363, and 331 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code; excluding those Entities entitled to retention and payment pursuant to the Ordinary Course Professionals Order.

**188.** ~~194.~~ "*Professional Fee Escrow Account*" means an interest-bearing escrow account to hold and maintain an amount of Cash equal to the Professional Fee Reserve Amount funded by the Debtors on or before the Effective Date solely for the purpose of paying all Allowed and unpaid Accrued Professional Compensation Claims.

**189.** ~~195.~~ "*Professional Fee Reserve Amount*" means the aggregate Accrued Professional Compensation Claims through the Confirmation Date as estimated in accordance with Article II.B.3.

**190.** ~~196.~~ "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

~~197. "*Reorganizing Debtor Plan" means the chapter 11 plan of reorganization proposed herein for the Reorganizing Debtors.*~~

**191.** ~~198.~~ "~~*Reorganizing*~~**Remaining** *Debtors*" means the Debtors that are not Fixed/Floating Debtors, Anaheim Hotel Debtors, or Ontario Hotel Debtors: (a) Grand Prix General Lessee LLC; (b) Grand Prix Holdings LLC; (c) Grand Prix IHM, Inc.; (d) Grand Prix RIGG Lessee LLC; (e) Grand Prix RIMV Lessee, LLC; (f) Grand Prix Term Lessee LLC; (g) Innkeepers Financial Corporation; (h) Innkeepers USA Limited Partnership; (i) Innkeepers USA Trust; (j) KPA Leaseco Holding, Inc.; (k) KPA Leaseco, Inc.; (l) KPA RIGG, LLC; (m) KPA RIMV, LLC; (n) KPA San Antonio, LLC; (o) KPA Tysons Corner RI, LLC; and (p) KPA Washington DC, LLC.

**192.** ~~199.~~ "~~*Reorganizing Debtors' Plan General Release" means the release provision set forth in Article VIII.H*~~**Remaining** *Debtor Plan" means the chapter 11 plan of reorganization proposed herein for the* **Remaining Debtors.**

**193.** ~~200.~~ "~~*Reorganizing*~~**Remaining Debtor** *Releasing Parties*" means, collectively, each of the following parties in their respective capacities as such: (a) **Chatham; (b)** the Five Mile DIP Agent; (b**c**) the Five Mile DIP Lenders; (~~c) the Debtors; (d) LNR; (e) Apollo; (f~~**d) the Debtors; (d) LNR, in its capacity as special servicer for the**

K&E 18934861.12

**Garden Grove Hotel Mortgage Loan Agreement, the San Antonio Hotel Mortgage Loan Agreement, the San Diego Hotel Mortgage Loan Agreement, the Tysons Corner Hotel Mortgage Loan Agreement, and the Washington DC Hotel Mortgage Loan Agreement; (e) the LNR-Serviced Trusts; (f) the master servicer for the Garden Grove Hotel Mortgage Loan Agreement, the San Antonio Hotel Mortgage Loan Agreement, the San Diego Hotel Mortgage Loan Agreement, the Tysons Corner Hotel Mortgage Loan Agreement, and the Washington DC Hotel Mortgage Loan Agreement; (g) Apollo; (h)** the Independent Committee; (~~e~~**i**) all other Holders of Claims against or Interests in the Reor~~g~~**mai**~~ni~~zing Debtors; (h**j**) the officers, directors, trustees, and members of the Debtors; and (~~i~~**k**) each of the foregoing entities' respective predecessors, successors and assigns, shareholders, affiliates, subsidiaries, principals, employees, agents, officers, directors, trustees, members, master servicers, special servicers, trusts and trustees, and professionals.

**194.** ~~201.~~ "~~*San Antonio Asset Purchase Agreement*" means, to the extent the Debtors pursue a sale transaction related to the assets of the San Antonio Hotel Owner, that certain asset purchase agreement, if any, dated as of [_____], by and between the San Antonio Hotel Owner and [_____].~~*Remaining Debtors' Plan General Release" means the release provision set forth in Article VIII.H***.**

**195.** ~~202.~~ "*San Antonio Hotel Mortgage Loan Agreement*" means that certain Loan Agreement, dated as of September 19, 2006, by and between KPA San Antonio, LLC, as borrower, and Merrill Lynch Mortgage Lending, Inc., as lender, pursuant to which Merrill Lynch Mortgage Lending, Inc. provided a mortgage loan to KPA San Antonio, LLC in the original principal amount of $24.2 million, which amount is collateralized by the Homewood Suites in San Antonio, Texas.

**196.** ~~203.~~ "*San Antonio Hotel Mortgage Loan Claims*" means ~~the~~**all** Claims **arising under,** derived from**,** or based upon the ~~outstanding principal and interest owing on account of the~~ San Antonio Hotel Mortgage Loan Agreement**, including any guarantees provided by any of the Debtors in connection therewith**.

**197.** ~~204.~~ "*San Antonio Hotel Mortgage Loan Deficiency Claims*" means any San Antonio Hotel Mortgage Loan Claim that is not Secured.

**198.** ~~205.~~ "*San Antonio Hotel Owner*" means Debtor KPA San Antonio, LLC.

**199.** ~~206.~~ "*San Antonio Hotel Purchase Consideration*" means~~, to the extent the Debtors contemplate and consummate the San Antonio Sale Transaction,~~ the consideration received by the San Antonio Hotel Owner and~~/~~**or** the assumption of the obligations under the San Antonio Hotel Mortgage Loan Agreement pursuant to the ~~San Antonio Asset Purchase Agreement and, if applicable, in accordance with the San Antonio Stalking Horse Order~~.

~~207. "*San Antonio Hotel Sale Transaction*" means, to the extent consummated, the sale of the assets of the San Antonio Hotel Owner in accordance with the San Antonio Asset Purchase Agreement and, if applicable, the San Antonio Hotel Stalking Horse Order.~~

~~208. "*San Antonio Stalking Horse Order*" means, to the extent the Debtors pursue a stalking horse process related to the assets of the San Antonio Hotel Owner, the Order (I) Authorizing the Debtors to Enter into the San Antonio Asset Purchase Agreement with [_____], (II) Approving Bidding Procedures, and (III) Approving an Expense Reimbursement, entered by the Bankruptcy Court on [_____], 2011 [Docket No. •].~~

~~209. "*San Diego Asset Purchase Agreement*" means, to the extent the Debtors pursue a sale transaction related to the assets of the San Diego Hotel Owner, that certain asset purchase agreement, if any, dated as of [_____], by and between the San Diego Hotel Owner and [_____]~~**Chatham APA**.

**200.** ~~210.~~ "*San Diego Hotel Debtors*" means the San Diego Hotel Lessee and the San Diego Hotel Owner.

**201.** ~~211.~~ "*San Diego Hotel Lessee"* means Debtor Grand Prix RIMV Lessee, LLC.

212. "*San Diego Hotel Lessee Unencumbered Assets*" means the assets, if any, of the San Diego Hotel Lessee that are not subject to a Secured Claim of any Entity, which assets are available for distribution to the Holders of Claims against and Interests in the San Diego Hotel Lessee.

**202.** 213. "*San Diego Hotel Mortgage Loan Agreement*" means that certain Loan Agreement, dated as of October 4, 2006, by and between KPA RIMV, LLC, as borrower, and Capmark Bank, as lender, pursuant to which Capmark Bank provided KPA RIMV, LLC a mortgage loan in the original principal amount of $47.4 million, which amount is collateralized by the Residence Inn in San Diego, California.

**203.** 214. "*San Diego Hotel Mortgage Loan Claims*" means the**all** Claims **arising under,** derived from**,** or based upon the outstanding principal and interest owing on account of the San Diego Hotel Mortgage Loan Agreement**, including any guarantees provided by any of the Debtors in connection therewith**.

**204.** 215. "*San Diego Hotel Mortgage Loan Deficiency Claims*" means any San Diego Hotel Mortgage Loan Claim that is not Secured.

**205.** 216. "*San Diego Hotel Owner*" means Debtor KPA RIMV, LLC.

**206.** 217. "*San Diego Hotel Purchase Consideration*" means, to the extent the Debtors contemplate and consummate the San Diego Sale Transaction, the consideration received by the San Diego Hotel Owner and/or the assumption of the obligations under the San Diego Hotel Mortgage Loan Agreement pursuant to the San Diego Asset Purchase Agreement and, if applicable, in accordance with the San Diego Stalking Horse Order**Chatham APA**.

**207.** 218. "*San Diego Hotel Sale Transaction*" means, to the extent consummated, the sale of the assets of the San Diego Hotel Owner in accordance with the San Diego Asset Purchase Agreement and, if applicable, the San Diego Hotel Stalking Horse Order.**SASCO" means SASCO 2008-C2 LLC and/or other affiliates of Lehman Brothers Holdings Inc., who together are the 100% participant and owner of all economic and beneficial interests in, or lender of record under (a) the Floating Rate Pool Mezzanine Loan Agreement and (b) the Anaheim Hotel Mezzanine Loan Agreement.**

219. "*San Diego Stalking Horse Order*" means, to the extent the Debtors pursue a stalking horse sale process related to the assets of the San Diego Hotel Owner, the Order (I) Authorizing the Debtors to Enter into the San Diego Asset Purchase Agreement with [_____], (II) Approving Bidding Procedures, and (III) Approving an Expense Reimbursement, entered by the Bankruptcy Court on [_____], 2011 [Docket No. •].

**208.** 220. "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

**209.** 221. "*Section 510(b) Claims*" means any Claim against any Debtor arising from rescission of a purchase or sale of a Security of any Debtor or an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor, which Security is not an Interest, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

**210.** 222. "*Secured*" means when referring to a Claim:  (a) Secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

**211.** 223. "*Secured Tax Claims*" means any Secured Claim against any Debtor that, absent its Secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

20

**212.** ~~224.~~ "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended.

**213.** ~~225.~~ "*Securities Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn, as amended.

**214.** ~~226.~~ "*Security*" shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

**215.** ~~227.~~ "*Special Servicers*" means C-III, CWCapital, LNR, Midland, and TriMont.

**216.** ~~228.~~ "*Special Servicer Release Payment*" means a Cash payment of $3.0 million to be made by New HoldCo contemporaneously with the occurrence of the Effective Date to Midland, on behalf of the C6 and C7 Trusts, as settlement of Midland's claims against Apollo with respect to the Apollo Guaranty, which have been the subject of litigation pending in New York Supreme Court.

**217.** ~~229.~~ "*Special Servicer Payment*" means a Cash payment of $2.5 million to be made by New HoldCo contemporaneously with the occurrence of the Effective Date to Midland as consideration for effecting the restructuring of the Fixed Rate Pool Mortgage Loan Agreement on behalf of the C6 and C7 Trusts.

~~230. "*Third Party Investment*" means, if applicable and subject to applicable law and the consent of the Debtors, such consent not to be unreasonably withheld, conditioned, or delayed, an investment by the Third Party Investors on account of which the Third Party Investors will receive up to 20% of the New HoldCo Interests, and, in the event the Third Party Investors pay cash on the Effective Date for the New HoldCo Interests in connection with such investment, then the amount of New HoldCo Interests (and the corresponding payment therefor) purchased by the Investor, and the amount of the New HoldCo Interests (and the corresponding payment in cash to the Holder of Floating Rate Pool Mortgage Loan Claims) received by the Holder of Floating Rate Pool Mortgage Loan Claims, shall be adjusted accordingly.~~

~~231. "*Third Party Investors*" means a third party investor and/or new manager of the Fixed/Floating Debtors' properties.~~

**218.** ~~232.~~ "*Transition Services Agreement*" means the separation plan and transition services agreement for the Fixed/Floating Debtors and the Other Debtors, which shall address the uses of certain assets including, without limitation, intellectual property, licenses, IT resources, book and records and permits, and address cash management, cash collateral, and other cash issues, which separation plan and transition services agreement shall be contained in the Plan Supplement and be reasonably satisfactory to the Fixed/Floating Plan Sponsors, the Fixed/Floating Debtors, and the Other Debtors.

**219.** ~~233.~~ "*TriMont*" means TriMont Real Estate Advisors, Inc., or any successor thereto, in its capacity as (a) special servicer for the Anaheim Hotel Mezzanine Loan Agreement; or (b) special servicer for the Floating Rate Pool Mezzanine Loan Agreement.

~~234. "*Tysons Corner Asset Purchase Agreement*" means, to the extent the Debtors pursue a sale transaction related to the assets of the Tysons Corner Hotel Owner, that certain asset purchase agreement, if any, dated as of [_____], by and between the Tysons Corner Hotel Owner and [_____].~~

**220.** ~~235.~~ "*Tysons Corner Hotel Mortgage Loan Agreement*" means that certain Loan Agreement, dated as of September 19, 2006, by and between KPA Tysons Corner RI, LLC, as borrower, and Merrill Lynch Mortgage Lending, Inc., as lender, pursuant to which Merrill Lynch Mortgage Lending, Inc. provided KPA Tysons Corner RI, LLC a mortgage loan in the original principal amount of $25.2 million, which amount is collateralized by the Residence Inn in Vienna, Virginia.

**221.** ~~236.~~ "*Tysons Corner Hotel Mortgage Loan Claims*" means ~~the~~**all** Claims **arising under,** derived from**,** or based upon ~~the outstanding principal and interest owing on account of the~~ Tysons Corner Hotel Mortgage Loan Agreement**, including any guarantees provided by any of the Debtors in connection therewith**.

21

**222.** ~~237.~~ "*Tysons Corner Hotel Mortgage Loan Deficiency Claims*" means any Tysons Corner Hotel Mortgage Loan Claim that is not Secured.

**223.** ~~238.~~ "*Tysons Corner Hotel Owner*" means Debtor KPA Tysons Corner RI, LLC.

**224.** ~~239.~~ "*Tysons Corner Hotel Purchase Consideration*" means~~, to the extent the Debtors contemplate and consummate the Tysons Corner Sale Transaction,~~ the consideration received by the Tysons Corner Hotel Owner and~~/~~or the assumption of the obligations under the Tysons Corner Hotel Mortgage Loan Agreement pursuant to the ~~Tysons Corner Asset Purchase Agreement and, if applicable, in accordance with the Tysons Corner Stalking Horse Order.~~

~~240. "*Tysons Corner Hotel Sale Transaction*" means, to the extent consummated, the sale of the assets of the Tysons Corner Hotel Owner in accordance with the Tysons Corner Asset Purchase Agreement and, if applicable, the Tysons Corner Hotel Stalking Horse Order.~~

~~241. "*Tysons Corner Stalking Horse Order*" means, to the extent the Debtors pursue a stalking horse sale process related to the assets of the Tysons Corner Hotel Owner, the Order (I) Authorizing the Debtors to Enter into the Tysons Corner Asset Purchase Agreement with [_____], (II) Approving Bidding Procedures, and (III) Approving an Expense Reimbursement, entered by the Bankruptcy Court on [_____], 2011 [Docket No. •]~~**Chatham APA**.

**225.** ~~242.~~ "*U.S. Trustee Fees*" means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

**226.** ~~243.~~ "*Unexpired Lease*" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

**227.** ~~244.~~ "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

**228.** ~~245.~~ "*Voting Record Date*" means the close of business on **[•]**, 2011.

~~246. "*Washington DC Asset Purchase Agreement*" means, to the extent the Debtors pursue a sale transaction related to the assets of the Washington DC Hotel Owner, that certain asset purchase agreement, if any, dated as of [_____], by and between the Washington DC Hotel Owner and [_____].~~

**229.** ~~247.~~ "*Washington DC Hotel Mortgage Loan Agreement*" means that certain Loan Agreement, dated as of September 19, 2006, by and between KPA Washington DC, LLC, as borrower, and Merrill Lynch Mortgage Lending, Inc., as lender, pursuant to which Merrill Lynch Mortgage Lending, Inc. provided a mortgage loan to KPA Washington DC, LLC in the original principal amount of $25.6 million, which amount is collateralized by the Doubletree Guest Suites in Washington, D.C.

**230.** ~~248.~~ "*Washington DC Hotel Mortgage Loan Claims*" means ~~the~~**all** Claims **arising under,** ~~derived from,~~ or based upon the ~~outstanding principal and interest owing on account of the~~ Washington DC Hotel Mortgage Loan Agreement**, including any guarantees provided by any of the Debtors in connection therewith**.

**231.** ~~249.~~ "*Washington DC Hotel Mortgage Loan Deficiency Claims*" means any Washington DC Hotel Mortgage Loan Claim that is not Secured.

**232.** ~~250.~~ "*Washington DC Hotel Owner*" means Debtor KPA Washington DC, LLC.

**233.** ~~251.~~ "*Washington DC Hotel Purchase Consideration*" means~~, to the extent the Debtors contemplate and consummate the Washington DC Sale Transaction,~~ the consideration received by the Washington DC Hotel Owner and~~/~~or the assumption of the obligations under the Washington DC Hotel Mortgage Loan Agreement pursuant to the ~~Washington DC Asset Purchase Agreement and, if applicable, in accordance with the Washington DC Stalking Horse Order~~**Chatham APA**.

22

**234.** 252. "*Washington DC Hotel Sale Transaction*" means, to the extent consummated, the sale of the assets of the Washington DC Hotel Owner in accordance with the Washington DC Asset Purchase Agreement and, if applicable, the Washington DC Hotel Stalking Horse Order.*Wind Down***" means the wind down, dissolution, and liquidation of the Debtors' Estates in accordance with the Plan following the Effective Date as set forth in Article IV.W.**

253. "*Washington DC Stalking Horse Order*" means, to the extent the Debtors pursue a stalking horse sale process related to the assets of the Washington DC Hotel Owner, the Order (I) Authorizing the Debtors to Enter into the Washington DC Asset Purchase Agreement with [_____], (II) Approving Bidding Procedures, and (III) Approving an Expense Reimbursement, entered by the Bankruptcy Court on [_____], 2011 [Docket No. •].

## B. Rules of Interpretation

For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified, or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words "herein," "hereof," and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

## C. Computation of Time

The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

## D. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws (except for Sections 5-1401 and 5-1402 of the General Obligations Law of the State of New York), shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate or limited liability company governance matters; provided that corporate or limited liability company governance matters relating to the Debtors or the Post-Effective Date Debtors, as applicable, not incorporated or formed (as applicable) in New York shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor or the Post-Effective Date Debtors, as applicable.

## E. Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to the legal tender of the United States of America, unless otherwise expressly provided.

## F. Controlling Document

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the

K&E 18934861.12

relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document). The provisions of the Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; provided that if there is determined to be any inconsistency between any Plan provision and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern and any such provision of the Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence**. The provisions hereof are subject to the provisions of Article IX.B and Article IX.C.2.e**.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS

A.      *Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Post-Effective Date Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than of an Accrued Professional Compensation Claim), will receive in exchange for full and final satisfaction, settlement, release, and compromise of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim either:  (1) on the Effective Date or as soon as practicable thereafter; (2) if the Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; or (3) if the Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holders of such Allowed Administrative Claims and without any further notice to or action, order, or approval of the Bankruptcy Court.

Except for Claims of Professionals **and Governmental Units**, unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Post-Effective Date Debtors no later than the Administrative Claims Bar Date applicable to the Debtor against whom the Administrative Claim is asserted pursuant to the procedures specified in the Confirmation Order and the notice of the Effective Date.  Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims by the Administrative Bar Date that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Post-–Effective Date Debtors, or the property of the Post-Effective Date Debtors and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be Filed and served on the requesting party by the later of (a) 180 days after the Effective Date and (b) 180 days after the Filing of the applicable request for payment of Administrative Claims, if applicable.

B.      *Accrued Professional Compensation Claims*

1.      Professional Fee Escrow Account

In accordance with Article II.B.3, as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish the Professional Fee Escrow Account.  The Debtors shall fund the Professional Fee Escrow Account with Cash in the amount of the aggregate Professional Fee Reserve Amount for all Professionals.  The Professional Fee Escrow Account shall be maintained in trust for the Professionals.  Such funds shall not be considered property of the Debtors' Estates or the Post-Effective Date Debtors, as applicable.

2.      Final Fee Applications and Payment of Accrued Professional Compensation Claims

All final requests for payment of Claims of a Professional shall be Filed no later than 60 days after the latest Effective Date for any of the Joint Plans.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court.   The amount of Accrued Professional Compensation Claims owing to the Professionals shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order.  **To the extent that funds held in**

**the Professional Fee Escrow Account are unable to satisfy the amount of Allowed Professional Compensation Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A.** After all Accrued Professional Compensation Claims have been paid in full, the Final Order allowing such Accrued Professional Compensation Claims shall direct the Post-Effective Date Debtors to direct the escrow agent to return any excess amounts in the Professional Fee Escrow Account to each particular lender whose cash collateral was the source for the funding of the Professional Fee Escrow Account in an amount equal to such lender's interest in the excess Cash in accordance with the Cash Collateral Orders.

        3.        <u>Professional Fee Reserve Amount</u>

To receive payment for unbilled fees and expenses incurred through the Confirmation Date, the Professionals shall estimate their Accrued Professional Compensation Claims prior to and as of the Confirmation Date and shall deliver such estimate to the Debtors no later than five days after the Confirmation Date; <u>provided</u> <u>that</u> such estimate shall not be considered an admission with respect to the fees and expenses of such Professional and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unbilled fees and expenses of such Professional. The total amount so estimated shall comprise the Professional Fee Reserve Amount.

        4.        <u>Post-Confirmation Date Fees and Expenses</u>

Except as otherwise specifically provided in the Plan, on and after the Confirmation Date, the Debtors or the Post-Effective Date Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation and Consummation of the Plan incurred by the Debtors, the Post-Effective Date Debtors, or the Committee, as applicable. Upon the Confirmation Date, any requirement that Professionals and Ordinary Course Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code, the Interim Compensation Order, or the Ordinary Course Professionals Order, in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Post-Effective Date Debtors, as applicable, may employ and pay any Professional or Ordinary Course Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

*C.*       *Five Mile DIP Claims*

In exchange for full and final satisfaction, settlement, release, and compromise of each Allowed Five Mile DIP Claim against the Fixed/Floating Debtors, on the Effective Date of the Fixed/Floating Plan, the Fixed/Floating Debtors or New HoldCo shall pay **the outstanding amount of** "Tranche A" of the Allowed Five Mile DIP Claims in full in Cash.

In exchange for full and final satisfaction, settlement, release, and compromise of each Allowed Five Mile DIP Claim, on the Effective Date of the Re~~org~~**ma**~~niz~~ing Debtor Plan, the Post-Effective Date San Diego Hotel Debtors shall pay "Tranche B" of the Allowed Five Mile DIP Claims in full in Cash and the Post-Effective Date General Lessee and the Tysons Corner Hotel Owner shall pay "Tranche C" of the Allowed Five Mile DIP Claims in full in Cash.

        **The Five Mile DIP Claims shall be Allowed pursuant to the Confirmation Order.**

*D.*       *Lehman DIP Claims*

In exchange for full and final satisfaction, settlement, release, and compromise of each Allowed Lehman DIP Claim, on the Effective Date of the Fixed/Floating Plan, the Fixed/Floating Debtors or New HoldCo shall pay the **outstanding amount of the** Allowed Lehman DIP Claims in full in Cash.

        **The Lehman DIP Claims shall be Allowed pursuant to the Confirmation Order.**

***E.        LNR Structuring Fee***

**On the Effective Date of the Remaining Debtor Plan, the Debtors shall pay the LNR Structuring Fee in full in Cash.**

***F.***    ~~E.~~ *Claims Based on Postpetition Intercompany Loans*

In exchange for full and final satisfaction, settlement, release, and compromise of each Claim based on a Postpetition Intercompany Loan arising pursuant to the Cash Collateral Order, if any, on the Effective Date of a borrower Debtor's plan, the borrower Debtors shall pay the lender Debtors in full in Cash.

***G.***    ~~F.~~ ***Reimbursement of*** *Five Mile ~~Counsel Fees and~~ Expenses and Lehman Advisor and Counsel Fees and Expenses*

~~On or after the Effective Date of the Fixed/Floating Plan, New HoldCo shall reimburse Five Mile for the~~ ~~reasonable and documented fees and expenses~~ ~~of its counsel, provided that the transaction set forth in the~~ ~~Commitment Letter is the Fixed/Floating Successful Bid.~~  **Upon the earlier of (i) the Fixed/Floating Plan Effective Date and (ii) consummation of an alternative transaction for any of the Fixed/Floating Debtors' assets, as contemplated in** *the Bidding Procedures Order,* **the Fixed/Floating Debtors shall pay to Five Mile the Five Mile Expense Reimbursement Claim in an amount** *not to exceed $3 million.*  **Notwithstanding any provision herein to the contrary, neither Five Mile nor its counsel shall be required to file any application or other formal request for payment or allowance of the Five Mile Expense Reimbursement Claim.**

Lehman's advisors' and counsel's reasonable and documented fees and expenses **through the Effective Date** shall continue to be paid in accordance with the Cash Collateral Orders. ~~If the transaction set forth in the~~ ~~Commitment Letter is not the Fixed/Floating Successful Bid, in accordance with the terms of~~ *the Bidding Procedures* *Order,* ~~Five Mile and Lehman may be entitled to receive reimbursement of all of Five Mile's reasonable fees and~~ ~~expenses~~ *not to exceed $3 million.*

***H.***    ~~G.~~ *Priority Tax Claims*

Each Holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive one of the following treatments in exchange for full and final satisfaction, settlement, release, and compromise of such Claim, (1) Cash, payable by the liable Debtors on the Effective Date, in an amount equal to the amount of such Allowed Priority Tax Claim, (2) Cash in an amount agreed to and paid by the liable Debtors or Post-Effective Date Debtors, as applicable, and such Holder, <u>provided that</u> such parties may further agree for the payment of such Allowed Priority Tax Claim to occur at a later date without any further notice to or action, order, or approval of the Bankruptcy Court, or (3) at the option of the liable Debtor or Post-Effective Date Debtor, as applicable, Cash paid by the liable Post-Effective Date Debtor in the aggregate amount of such Allowed Priority Tax Claim, payable in installment payments over a period not more than five years after the Petition Date with payment of interest at the Federal Judgment Rate in accordance with section 1129(a)(9)(C) of the Bankruptcy Code.  To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the liable Debtors or Post-Effective Date Debtors, as applicable, and the Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law or in the ordinary course of business.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Claims, Administrative Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in this Article III.

26

*A.* *Summary of Classification*

All Claims and Interests, other than Five Mile DIP Claims, Lehman DIP Claims, Administrative Claims, Accrued Professional Compensation Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant hereto and in connection with sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date. In addition, subject to the Commitment Letter, the Debtors reserve the right to withdraw the Plan with respect to one or more Debtors while seeking confirmation or approval of the Plan with respect to all other Debtors.

1.    Class Identification for the Fixed/Floating Debtors

The classification of Claims and Interests against each of the Fixed/Floating Debtors pursuant to the Fixed/Floating Plan is as follows.

The classification of Claims and Interests set forth herein shall apply separately to each of the Fixed/Floating Debtors. All of the potential Classes for the Fixed/Floating Debtors are set forth herein. Certain of the Fixed/Floating Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.D hereof. For all purposes under the Fixed/Floating Plan, each Class will contain sub-Classes for each of the Fixed/Floating Debtors (*i.e.*, there will be 71 sub-Classes in each Class and many of such sub-Classes may be vacant). In addition, the sub-Classes in Class FF2 are subject to further sub-division as discussed below.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class FF1 | Other Priority Claims Against Fixed/Floating Debtors | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class FF2 | Other Secured Claims Against Fixed/Floating Debtors | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class FF3A | Secured Fixed Rate Pool Mortgage Loan Claims Against Fixed/Floating Debtors | Impaired | Entitled to Vote |
| Class FF3B | Secured Floating Rate Pool Mortgage Loan Claims Against Fixed/Floating Debtors | Impaired | Entitled to Vote |
| Class FF4 | Floating Rate Pool Mezzanine Loan Claims Against Fixed/Floating Debtors | Impaired | Entitled to Vote |
| Class FF5 | General Unsecured Claims Against Fixed/Floating Debtors | Impaired | Entitled to Vote |
| Class FF6 | Mortgage Loan Deficiency Claims Against Fixed/Floating Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class FF7 | Intercompany Claims Against Fixed/Floating Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class FF8 | Section 510(b) Claims Against Fixed/Floating Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class FF9 | Interests in Fixed/Floating Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |

K&E 18934861.12

2. <u>Class Identification for the Anaheim Hotel Debtors</u>

The classification of Claims and Interests against each of the Anaheim Hotel Debtors pursuant to the Anaheim Plan is as follows.

The classification of Claims and Interests set forth herein shall apply separately to each of the Anaheim Hotel Debtors. All of the potential Classes for the Anaheim Hotel Debtors are set forth herein. Certain of the Anaheim Hotel Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.D hereof. For all purposes under the Anaheim Plan, each Class will contain sub-Classes for each of the Anaheim Hotel Debtors (*i.e.*, there will be three sub-Classes in each Class and many of such sub-Classes may be vacant). In addition, the sub-Classes in Class A2 are subject to further sub-division as discussed below.

| Class | Claims and Interests | Status | Voting Rights |
|-------|----------------------|--------|---------------|
| Class A1 | Other Priority Claims against Anaheim Hotel Debtors | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class A2 | Other Secured Claims against Anaheim Hotel Debtors | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class A3 | Secured Anaheim Hotel Mortgage Loan Claims | ~~Unimpaired~~**Impaired** | ~~Not~~ Entitled to Vote ~~(Presumed to Accept)~~ |
| Class A4 | Secured Anaheim Hotel Mezzanine Loan Claims | Impaired | Entitled to Vote |
| Class A5A | General Unsecured Claims against Anaheim Hotel Owner | ~~Unimpaired~~**Impaired** | ~~Not~~ Entitled to Vote ~~(Presumed to Accept)~~ |
| Class A5B | General Unsecured Claims against Anaheim Mezzanine Debtor | Impaired | **Not** Entitled to Vote **(Deemed to Reject)** |
| Class A5C | General Unsecured Claims against Anaheim Hotel Lessee | Impaired | Entitled to Vote |
| Class A6 | Anaheim Hotel Mezzanine Loan Deficiency Claims against Anaheim Hotel Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class A7 | Intercompany Claims against Anaheim Hotel Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class A8~~A~~ | ~~Section 510(b) Claims against~~**Intercompany Interests in** Anaheim Hotel ~~Owner~~**Debtors** | ~~Unimpaired~~**Impaired** | Not Entitled to Vote (~~Presumed~~**Deemed** to ~~Accept~~**Reject**) |
| ~~Class A8B~~ | ~~Section 510(b) Claims against Anaheim Mezzanine Debtor~~ | ~~Impaired~~ | ~~Not Entitled to Vote (Deemed to Reject)~~ |
| ~~Class A8C~~ | ~~Section 510(b) Claims against Anaheim Hotel Lessee~~ | ~~Impaired~~ | ~~Entitled to Vote~~ |
| ~~Class A9A~~ | ~~Intercompany Interests in Anaheim Hotel Owner~~ | ~~Unimpaired~~ | ~~Not Entitled to Vote (Presumed to Accept)~~ |
| ~~Class A9B~~ | ~~Intercompany Interests in Anaheim Mezzanine Debtor~~ | ~~Impaired~~ | ~~Not Entitled to Vote (Deemed to Reject)~~ |
| ~~Class A9C~~ | ~~Intercompany Interests in Anaheim Hotel Lessee~~ | ~~Impaired~~ | ~~Entitled to Vote~~ |

K&E 18934861.12

3.      <u>Class Identification for the Ontario Hotel Debtors</u>

The classification of Claims and Interests against each of the Ontario Hotel Debtors pursuant to the Ontario Plan is as follows.

The classification of Claims and Interests set forth herein shall apply separately to each of the Ontario Hotel Debtors. All of the potential Classes for the Ontario Hotel Debtors are set forth herein. Certain of the Ontario Hotel Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.D hereof. For all purposes under the Ontario Plan, each Class will contain sub-Classes for each of the Ontario Hotel Debtors (*i.e.*, there will be two sub-Classes in each Class and many of such sub-Classes may be vacant). In addition, the sub-Classes in Class O2 are subject to further sub-division as discussed below.

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class O1 | Other Priority Claims against Ontario Hotel Debtors | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class O2 | Other Secured Claims Ontario Hotel Debtors | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class O3 | Secured Ontario Hotel Mortgage Loan Claims | Impaired | Entitled to Vote |
| Class O4A | General Unsecured Claims against Ontario Hotel Owner | Impaired | Entitled to Vote |
| Class O4B | General Unsecured Claims against Ontario Hotel Lessee | Impaired | Entitled to Vote |
| Class O5 | Mortgage Loan Deficiency Claims against Ontario Hotel Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class O6 | Intercompany Claims against Ontario Hotel Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class O7 | Section 510(b) Claims against Ontario Hotel Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class O8 | Intercompany Interests in Ontario Hotel Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |

K&E 18934861.12

4.    Class Identification for the Re~~org~~**ma**i~~niz~~ing Debtors

The classification of Claims and Interests against each of the Re~~org~~**ma**i~~niz~~ing Debtors pursuant to the Re~~org~~**ma**i~~niz~~ing Debtor Plan is as follows.

The classification of Claims and Interests set forth herein shall apply separately to each of the Re~~org~~**ma**i~~niz~~ing Debtors.  All of the potential Classes for the Re~~org~~**ma**i~~niz~~ing Debtors are set forth herein.  Certain of the Re~~org~~**ma**i~~niz~~ing Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Classes shall be treated as set forth in Article III.D hereof.  For all purposes under the Re~~org~~**ma**i~~niz~~ing Debtor Plan, each Class will contain sub-Classes for each of the Re~~org~~**ma**i~~niz~~ing Debtors (*i.e.*, there will be 16 sub-Classes in each Class and many of such sub-Classes may be vacant).  In addition, the sub-Classes in Class R2 are subject to further sub-division as discussed below.

| Class | Claims and Interests | Status | Voting Rights |
|---|---|---|---|
| Class R1 | Other Priority Claims against the Re~~org~~**ma**i~~niz~~ing Debtors | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class R2 | Other Secured Claims against the Re~~org~~**ma**i~~niz~~ing Debtors | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class R3A | Secured Garden Grove Hotel Mortgage Loan Claims | ~~TBD~~**Impaired** | Entitled to Vote ~~on a Provisional Basis~~ |
| Class R3B | Secured San Diego Hotel Mortgage Loan Claims | ~~Unimpaired~~**Impaired** | ~~Not~~ Entitled to Vote ~~(Presumed to Accept)~~ |
| Class R3C | Secured Washington DC Hotel Mortgage Loan Claims | ~~Unimpaired~~**Impaired** | ~~Not~~ Entitled to Vote ~~(Presumed to Accept)~~ |
| Class R3D | Secured Tysons Corner Hotel Mortgage Loan Claims | ~~Unimpaired~~**Impaired** | ~~Not~~ Entitled to Vote ~~(Presumed to Accept)~~ |
| Class R3E | Secured San Antonio Hotel Mortgage Loan Claims | ~~Unimpaired~~**Impaired** | ~~Not~~ Entitled to Vote ~~(Presumed to Accept)~~ |
| Class R4 | General Unsecured Claims against the Re~~org~~**ma**i~~niz~~ing Debtors | ~~TBD~~**Impaired** | Entitled to Vote ~~on a Provisional Basis~~ |
| Class R5 | Intercompany Claims against the Re~~org~~**ma**i~~niz~~ing Debtors | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class R6 | Intercompany Interests in the Re~~org~~**ma**i~~niz~~ing Debtors | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class R7 | Innkeepers USA LP Preferred D Interests | ~~TBD~~**Impaired** | **Not** Entitled to Vote ~~on a Provisional Basis~~ **(Deemed to Reject)** |
| Class R8 | Innkeepers USA Trust Preferred C Interests | ~~TBD~~**Impaired** | Entitled to Vote ~~on a Provisional Basis~~ |
| Class R9 | Innkeepers USA Trust Preferred A Interests | ~~TBD~~**Impaired** | Entitled to Vote ~~on a Provisional Basis~~ |
| Class R10 | Innkeepers USA Trust Common Interests | ~~TBD~~**Impaired** | **Not** Entitled to Vote ~~on a Provisional Basis~~ **(Deemed to Reject)** |
| Class R11 | Grand Prix Holdings Interests | ~~TBD~~**Impaired** | Entitled to Vote ~~on a Provisional Basis~~ |
| Class R12 | Section 510(b) Claims against the Re~~org~~**ma**i~~niz~~ing Debtors | ~~Unimpaired~~**Impaired** | ~~Not~~ Entitled to Vote ~~(Presumed to Accept)~~ |

1.    The treatment provided to each Class relating to each of the Fixed/Floating Debtors for distribution purposes and voting rights are specified below:

### Class FF1 - Other Priority Claims Against the Fixed/Floating Debtors

(a)     *Classification*:  Class FF1 consists of all Other Priority Claims against the Fixed/Floating Debtors.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Class FF1 Other Priority Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each and every Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall, at the sole option of the Debtors or the Post-Effective Date Fixed/Floating Debtors, as applicable:

   (i)     be paid in full in Cash on the later of the Effective Date and the date on which such Other Priority Claims becomes an Allowed Other Priority Claim, or as soon as reasonably practical thereafter; or

   (ii)    otherwise be treated in any other manner such that the Allowed Other Priority Claim shall be rendered Unimpaired on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim or as soon as reasonably practicable thereafter.

(c)     *Voting*:  Class FF1 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class FF1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

### Class FF2 - Other Secured Claims Against the Fixed/Floating Debtors

(a)     *Classification*:  Class FF2 consists of all Other Secured Claims against the Fixed/Floating Debtors.  For all purposes under the Fixed/Floating Plan, each Other Secured Claim is a separate Secured Claim against the applicable Debtors.  Accordingly, the sub-Class of Other Secured Claims against a particular Debtor will be further sub-divided into its own Class and designated by letters of the alphabet (*e.g.*, Class FF2A against Grand Prix Addison (RI) LLC, Class FF2B against Grand Prix Addison (RI) LLC, and so on), so that each Holder of any Other Secured Claim against a particular Debtor is in a Class by itself, except to the extent that there are Other Secured Claims against that same Debtor that are substantially similar to each other and may be included within a single sub-Class of Claims against that particular Debtor.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Class FF2 Other Secured Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each and every Allowed Other Secured Claim, each Holder of such Claim shall, at the sole option of the Debtors or the Post-Effective Date Fixed/Floating Debtors, as applicable:

K&E 18934861.12

(i) be paid in full in Cash in an amount equal to such Allowed Class FF2 Other Secured Claim by the Debtors on the Effective Date;

(ii) receive the collateral securing any such Allowed Class FF2 Other Secured Claim and be paid interest required to be paid under section 506(b) of the Bankruptcy Code; or

(iii) otherwise be treated in any other manner such that the Allowed Class FF2 Other Secured Claim shall be rendered Unimpaired on the later of the Effective Date and the date on which such Class FF2 Other Secured Claim becomes an Allowed Class FF2 Other Secured Claim or as soon as reasonably practicable thereafter have its Class FF2 Other Secured Claim be reinstated in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*: Class FF2 is Unimpaired, and Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class FF2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

## Class FF3A - Secured Fixed Rate Pool Mortgage Loan Claims Against the Fixed/Floating Debtors

(a) *Classification:* Class FF3A consists of all Secured Fixed Rate Pool Mortgage Loan Claims against the Fixed/Floating Debtors.

(b) *Treatment:* Except to the extent that the Holder of Allowed Class FF3A Secured Fixed Rate Pool Mortgage Loan Claims and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of Allowed Secured Fixed Rate Pool Mortgage Loan Claims, the Holder of Allowed Secured Fixed Rate Pool Mortgage Loan Claims shall **(i) enter into the New Fixed Rate Pool Mortgage Loan and** receive the New Fixed Rate Pool Mortgage Notes **and the New Fixed Rate Pool Mortgage Loan Limited Guarantys, and (ii) receive a payment of Cash in the amount of $[__]**. For the avoidance of doubt and notwithstanding anything to the contrary herein, such Holder shall not receive any recovery from any of the Debtors on account of any deficiency Claim, guaranty Claim, indemnity Claim, and Claims for Adequate Protection Obligations related to the Fixed Rate Pool Mortgage Loan Agreement and such Claims shall be deemed to be canceled, released, and extinguished as of the Effective Date of the Fixed/Floating Plan.

(c) *Voting:* Class FF3A is Impaired ~~by the Plan~~, and the Holder of Secured Fixed Rate Pool Mortgage Loan Claims is entitled to vote to accept or reject the Plan.

## Class FF3B - Secured Floating Rate Pool Mortgage Loan Claims Against the Fixed/Floating Debtors

(a) *Classification:* Class FF3B consists of all Secured Floating Rate Pool Mortgage Loan Claims against the Fixed/Floating Debtors.

(b) *Treatment:* Except to the extent that the Holder of Allowed Class FF3B Secured Floating Rate Pool Mortgage Loan Claims and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of Allowed Secured Floating Rate Pool Mortgage Loan Claims, the Holder of Allowed Secured Floating Rate Pool Mortgage Loan Claims shall receive ~~50% of the New HoldCo Interests (subject to adjustment for the Third-Party Investment) and (ii)~~ a payment of Cash in the ~~aggregate~~ amount of ~~not less than $26.2 million~~$[__]. For the avoidance of

32

doubt and notwithstanding anything to the contrary herein, such Holder shall not receive any recovery from any of the Debtors on account of any deficiency Claim, guaranty Claim, indemnity Claim, and Claims for Adequate Protection Obligations related to the Floating Rate Pool Mortgage Loan Agreement and such Claims shall be deemed to be canceled, released, and extinguished as of the Effective Date of the Fixed/Floating Plan.

(c)     *Voting:* Class FF3B is Impaired ~~by the Plan~~**,** and the Holder of Secured Floating Rate Pool Mortgage Loan Claims is entitled to vote to accept or reject the Plan.

### Class FF4 - Floating Rate Pool Mezzanine Loan Claims Against the Fixed/Floating Debtors

(a)     *Classification:* Class FF4 consists of all Floating Rate Pool Mezzanine Loan Claims against the Fixed/Floating Debtors.

(b)     *Treatment:* Except to the extent that the Holder of Allowed Class FF4 Floating Rate Pool Mezzanine Loan Claims and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of Allowed Floating Rate Pool Mezzanine Loan Claims, the Holder of Allowed Floating Rate Pool Mezzanine Loan Claims shall receive ~~the New Floating Rate Pool Mezzanine Loan Instrument; provided~~ ~~that~~ ~~the Holder of Allowed Floating Rate Pool Mezzanine Loan Claims shall only receive such treatment in the event that Class FF4 votes to accept and otherwise supports the Fixed/Floating Plan.  In the event that Class FF4 votes to reject the Fixed/Floating Plan or otherwise does not support the Fixed/Floating Plan, the Holder of Allowed Floating Rate Pool Mezzanine Loan Claims shall not receive any distribution on account of such Floating Rate Pool Mezzanine Loan Claims and~~**a payment of Cash in the amount of $[   ].  For the avoidance of doubt and notwithstanding anything to the contrary herein, such Holder shall not receive any recovery from any of the Debtors on account of any deficiency Claim, guaranty Claim, indemnity Claim, and Claims for Adequate Protection Obligations related to** the Floating Rate Pool Mezzanine Loan **Agreement and such** Claims shall **be deemed to** be canceled, released, and extinguished as of the Effective Date **of the Fixed/Floating Plan**.

(c)     *Voting:* Class FF4 is Impaired ~~by the Plan~~**,** and the Holder of Allowed Floating Rate Pool Mezzanine Loan Claims is entitled to vote to accept or reject the Plan.

### Class FF5 - General Unsecured Claims Against the Fixed/Floating Debtors

(a)     *Classification:* Class FF5 consists of all General Unsecured Claims against the Fixed Floating Debtors.

(b)     *Treatment:* Except to the extent that a Holder of an Allowed Class FF5 General Unsecured Claim and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall ~~receive~~:

(i)     ~~the lesser of (A) its~~**(A) if the Holder's General Unsecured Claim is against Debtor Grand Prix West Palm Beach LLC, receive such Holder's** Pro Rata share of **$100,000 of** the Fixed/Floating Unsecured Claim Fund**,** or (B) ~~65% of the face amount of~~**if** the Holder's ~~Allowed~~ General Unsecured Claim ~~against~~**is against a Fixed/Floating Debtor other than Debtor Grand Prix West Palm Beach LLC, receive such Holder's Pro Rata share of $4,650,000 of** the Fixed/Floating ~~Debtor~~**Unsecured Claim Fund**; and

(ii)    **receive** a release and waiver by the ~~Post-Effective Date Fixed/Floating~~ Debtors of all Claims of the Fixed/Floating Debtors against such Holder to recover preferences under section 547 of the Bankruptcy Code and, to the extent related thereto, section 550 of the Bankruptcy Code.

(c)    *Voting:* Class FF5 is Impaired ~~by the Plan~~**,** and each Holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

## Class FF6 - Mortgage Loan Deficiency Claims Against the Fixed/Floating Debtors

(a)    *Classification:* Class FF6 consists of all Mortgage Loan Deficiency Claims against the Fixed/Floating Debtors.

(b)    *Treatment:* Holders of Allowed Class FF6 Mortgage Loan Deficiency Claims shall not receive any distribution on account of such Mortgage Loan Deficiency Claims, and Allowed Mortgage Loan Deficiency Claims shall be canceled, released, and extinguished as of the Effective Date.

(c)    *Voting:* Class FF6 is Impaired ~~by the Plan~~**,** and each Holder of a Mortgage Loan Deficiency Claim is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Mortgage Loan Deficiency Claims are not entitled to vote to accept or reject the Plan.

## Class FF7 - Intercompany Claims Against the Fixed/Floating Debtors

(a)    *Classification:* Class FF7 consists of all Intercompany Claims against the Fixed/Floating Debtors.

(b)    *Treatment:* Holders of Allowed Class FF7 Intercompany Claims shall not receive any distribution on account of such Intercompany Claims, and Allowed Intercompany Claims shall be canceled, released, and extinguished as of the Effective Date.

(c)    *Voting*: Class FF7 is Impaired ~~by the Plan~~**,** and Holders of Intercompany Claims against the Debtors are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Claims against the Fixed/Floating Debtors are not entitled to vote to accept or reject the Plan.

## Class FF8 - Section 510(b) Claims Against the Fixed/Floating Debtors

(a)    *Classification*: Class FF8 consists of all Section 510(b) Claims against the Fixed/Floating Debtors.

(b)    *Treatment*: Holders of Allowed Class FF8 Section 510(b) Claims shall not receive any distribution on account of such Section 510(b) Claims, and Allowed Section 510(b) Claims shall be canceled, released, and extinguished as of the Effective Date.

(c)    *Voting*: Class FF8 is Impaired, and Holders of Section 510(b) Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

## Class FF9 - Interests in the Fixed/Floating Debtors

(a)    *Classification:* Class FF9 consists of all Interests in the Fixed/Floating Debtors.

K&E 18934861.12

(b) *Treatment:*  Holders of Allowed Class FF9 Interests shall not receive any distribution on account of such Intercompany Interests.  ~~The~~ **and, except as provided in the immediately following sentence, all such Interests shall be cancelled and of no further force or effect.  Notwithstanding the foregoing, the** Interests may, at the discretion of Fixed/Floating Plan Sponsors, be maintained for the purposes of preserving the organizational structure of certain of the Fixed/Floating Debtors; <u>provided</u> <u>further</u> <u>that</u> the Interests ~~that are the equity in Grand Prix Mezz Borrower Fixed, LLC, Grand Prix Mezz Borrower Floating, LLC, Grand Prix Fixed Lessee, LLC, and Grand Prix Floating Lessee, LLC  shall~~ **of the Post-Effective Date Fixed/Floating Debtors shall, directly or indirectly,** be transferred to New HoldCo pursuant to the Investment **and** in accordance with the Fixed/Floating Successful Bid.

(c) *Voting:*  Class FF9 is Impaired, and Holders of Intercompany Interests in the Fixed/Floating Debtors are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Intercompany Interests in the Fixed/Floating Debtors are not entitled to vote to accept or reject the Plan.

2.   The treatment provided to each Class relating to each of the Anaheim Hotel Debtors for distribution purposes and voting rights are specified below:

### Class A1 - Other Priority Claims Against the Anaheim Hotel Debtors

(a) *Classification*:  Class A1 consists of all Other Priority Claims against the Anaheim Hotel Debtors.

(b) *Treatment*:  Except to the extent that a Holder of an Allowed Class A1 Other Priority Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each and every Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall, at the sole option of the Debtors or the Post-Effective Date Anaheim Hotel Debtors, as applicable:

(i) be paid in full in Cash on the later of the Effective Date and the date on which such Other Priority Claims becomes an Allowed Other Priority Claim, or as soon as reasonably practical thereafter; or

(ii) otherwise be treated in any other manner such that the Allowed Other Priority Claim shall be rendered Unimpaired on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim or as soon as reasonably practicable thereafter.

(c) *Voting*:  Class A1 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class A1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

### Class A2 - Other Secured Claims Against the Anaheim Hotel Debtors

(a) *Classification*:  Class A2 consists of all Other Secured Claims against the Anaheim Hotel Debtors.  For all purposes under the Anaheim Plan, each Other Secured Claim is a separate Secured Claim against the applicable Debtors.  Accordingly, the sub-Class of Other Secured Claims against a particular Debtor will be further sub-divided into its own Class and designated by letters of the alphabet (*e.g.*, Class A2A against the Anaheim Hotel Owner, Class A2B the Anaheim Hotel Owner, and so on), so that each Holder of any Other Secured Claim against a particular Debtor is in a Class by itself, except to the extent that there are Other Secured Claims against that same Debtor that are substantially similar to

35

each other and may be included within a single sub-Class of Claims against that particular Debtor.

(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Class A2 Other Secured Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each and every Allowed Other Secured Claim, each Holder of such Claim shall, at the sole option of the Debtors or the Post-Effective Date Anaheim Hotel Debtors, as applicable:

      (i)     be paid in full in Cash in an amount equal to such Allowed Class A2 Other Secured Claim by the Debtors on the Effective Date;

      (ii)    receive the collateral securing any such Allowed Class A2 Other Secured Claim and be paid interest required to be paid under section 506(b) of the Bankruptcy Code; or

      (iii)   otherwise be treated in any other manner such that the Allowed Class A2 Other Secured Claim shall be rendered Unimpaired on the later of the Effective Date and the date on which such Class A2 Other Secured Claim becomes an Allowed Class A2 Other Secured Claim or as soon as reasonably practicable thereafter have its Class A2 Other Secured Claim be reinstated in accordance with section 1124 of the Bankruptcy Code.

(c)     *Voting*:  Class A2 is Unimpaired, and Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class A2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

## Class A3 - Secured Anaheim Hotel Mortgage Loan Claims

(a)     *Classification:*  Class A3 consists of all Secured Anaheim Hotel Mortgage Loan Claims.

(b)     *Treatment:*  Except to the extent that the Holder of Allowed Class A3 Secured Anaheim Hotel Mortgage Loan Claims and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of Allowed Secured Anaheim Hotel Mortgage Loan Claims, the Holder of Allowed Secured Anaheim Hotel Mortgage Loan Claims shall ~~be paid in full in cash on the Effective Date or as soon as reasonably practical thereafter as a result of the Anaheim Hotel Sale Transaction, if consummated, or other transaction~~**in accordance with the Anaheim Hotel Commitment Letter enter into the assumed, amended, restated, and/or supplemented Anaheim Hotel Mortgage Loan Agreement, the form and terms of which assumption shall include the terms and conditions set forth in the Anaheim Hotel Commitment Letter and substantially be set forth in the Anaheim Hotel Assumption Documents included in the Plan Supplement, pursuant to which the new amended or restated note or notes shall be issued to the Holder of the Allowed Class A3 Secured Anaheim Hotel Mortgage Loan Claims**.  For the avoidance of doubt and notwithstanding anything to the contrary herein, such Holder shall not receive any recovery from any of the Debtors on account of **any deficiency Claim, guaranty Claim, indemnity Claim, and** Claims for Adequate Protection Obligations related to the Anaheim Hotel Mortgage Loan Agreement and such Claims shall be deemed to be canceled, released, and extinguished as of the Effective Date of the Anaheim Plan.

(c)     *Voting:*  Class A3 is ~~Unimpaired~~**Impaired**, and the Holder of ~~Secured Anaheim Hotel Mortgage Loan Claims is conclusively presumed to have accepted the Plan pursuant to~~

~~section 1126(f) of the Bankruptcy Code. Therefore, the Holder of~~ Class A3 Secured Anaheim Hotel Mortgage Loan Claims is ~~not~~ entitled to vote to accept or reject the Plan.

**Class A4 - Secured Anaheim Hotel Mezzanine Loan Claims**

(a)      *Classification*:  Class A4 consists of all Secured Anaheim Hotel Mezzanine Loan Claims.

(b)      *Treatment*:  Except to the extent that the Holder of Allowed Class A4 Secured Anaheim Hotel Mezzanine Loan Claims and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of Allowed Secured Anaheim Hotel Mezzanine Loan Claims, the Holder of Allowed Secured Anaheim Hotel Mezzanine Loan Claims shall~~:~~

~~(i)      to the extent that the Anaheim Hotel Sale Transaction is contemplated and consummated, receive the Holder's entitled distribution of the Anaheim Hotel Purchase Consideration, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the Anaheim Mezzanine Debtor; or~~

~~(ii)      to the extent that the Anaheim Hotel Sale Transaction is not contemplated and consummated, receive~~ **have** the collateral securing the Secured Anaheim Hotel Mezzanine Loan Claims **and all of the other assets of the Anaheim Hotel Debtors transferred, conveyed, assumed, and assigned to the New Anaheim HoldCo.  For the avoidance of doubt and notwithstanding anything to the contrary herein, such Holder shall not receive any recovery from any of the Debtors on account of any deficiency Claim, guaranty Claim, indemnity Claim, and Claims for Adequate Protection Obligations related to the Anaheim Hotel Mezzanine Loan Agreement and such Claims shall be deemed to be canceled, released, and extinguished as of the Effective Date of the Anaheim Plan**.

**(d)**    ~~(c)~~ *Voting*:  Class A4 is Impaired ~~by the Plan~~**,** and the Holder of Secured Anaheim Hotel Mezzanine Loan Claims is entitled to vote to accept or reject the Plan.

**Class A5A - General Unsecured Claims Against the Anaheim Hotel Owner**

(a)      *Classification:*  Class A5A consists of all General Unsecured Claims against the Anaheim Hotel Owner.

(b)      *Treatment:*   Except to the extent that a Holder of an Allowed Class A5A General Unsecured Claim against the Anaheim Hotel Owner and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each Allowed General Unsecured Claim against the Anaheim Hotel Owner, each Holder of an Allowed General Unsecured Claim against the Anaheim Hotel Owner shall be paid in full ~~in cash~~ on the Effective Date or as soon as reasonably practical thereafter ~~as a result of the Anaheim Hotel Sale Transaction, if consummated, or other transaction~~.

(c)      *Voting:*  Class A5A is ~~Unimpaired~~**Impaired**, and ~~Holders~~**each Holder** of **a** General Unsecured Claim~~s~~ against the Anaheim Hotel Owner ~~are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class A5A General Unsecured Claims against the Anaheim Hotel Owner are not~~**is** entitled to vote to accept or reject the Plan.

37

**Class A5B - General Unsecured Claims Against the Anaheim Mezzanine Debtor**

(a)    *Classification:*  Class A5B consists of all General Unsecured Claims against the Anaheim Mezzanine Debtor.

(b)    *Treatment:*  Except to the extent that a Holder of an Allowed Class A5B General Unsecured Claim against the Anaheim Mezzanine Debtor and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each Allowed General Unsecured Claim against the Anaheim Mezzanine Debtor, each Holder of an Allowed General Unsecured Claim against the Anaheim Mezzanine Debtor shall~~:~~

(i)    ~~to the extent that the Anaheim Hotel Sale Transaction is contemplated and consummated, receive the Holder's entitled Pro Rata distribution of the Anaheim Hotel Purchase Consideration, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the Anaheim Mezzanine Debtor; or~~

(ii)   ~~to the extent that the Anaheim Hotel Sale Transaction is not contemplated and consummated and the Holder of the Secured Anaheim Hotel Mezzanine Loan Claims receives the collateral securing its Claims, a distribution agreed to by the Holder of the Secured Anaheim Mezzanine Loans Claims.~~ **not receive any distribution on account of such Allowed General Unsecured Claim against the Anaheim Mezzanine Debtor, and Allowed General Unsecured Claims against the Anaheim Mezzanine Debtor shall be canceled, released, and extinguished as of the Effective Date.**

(c)    *Voting:*  Class A5B is Impaired ~~by the Plan~~**,** and ~~each~~**the** Holder~~s~~ of ~~a General Unsecured Claim~~**General Unsecured Claims against the Anaheim Mezzanine Debtor are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the Holders of General Unsecured Claims** against the Anaheim Mezzanine Debtor ~~is~~**are not** entitled to vote to accept or reject the Plan.

**Class A5C - General Unsecured Claims Against the Anaheim Hotel Lessee**

(a)    *Classification*:  Class A5C consists of all General Unsecured Claims against the Anaheim Hotel Lessee.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Class A5C General Unsecured Claim against the Anaheim Hotel Lessee and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each Allowed General Unsecured Claim against the Anaheim Hotel Lessee, each Holder of an Allowed General Unsecured Claim against the Anaheim Hotel Lessee shall ~~receive such Holder's entitled Pro Rata distribution of the Anaheim Hotel Lessee Unencumbered Assets, if any, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the Anaheim Hotel Lessee~~ **be paid in full on the Effective Date or as soon as reasonably practical thereafter**.

(c)    *Voting:*  Class A5C is Impaired ~~by the Plan~~**,** and each Holder of a General Unsecured Claim against the Anaheim Hotel Lessee is entitled to vote to accept or reject the Plan.

**Class A6 - Anaheim Hotel Mezzanine Loan Deficiency Claims Against the Anaheim Hotel Debtors**

(a)    *Classification:*  Class A6 consists of all Anaheim Hotel Mezzanine Loan Deficiency Claims against the Anaheim Hotel Debtors.

K&E 18934861.12

(b)     *Treatment:*  The Holder of Allowed Class A6 Anaheim Hotel Mezzanine Loan Deficiency Claims shall not receive any distribution on account of such Anaheim Hotel Mezzanine Loan Deficiency Claims, and Allowed Anaheim Hotel Mezzanine Loan Deficiency Claims shall be canceled, released, and extinguished as of the Effective Date.

(c)     *Voting:*  Class A6 is Impaired ~~by the Plan~~**,** and the Holder of Anaheim Hotel Mezzanine Loan Deficiency Claims against the Anaheim Hotel Debtors is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the Holder of Anaheim Hotel Mezzanine Loan Deficiency Claims is not entitled to vote to accept or reject the Plan.

**Class A7 - Intercompany Claims Against the Anaheim Hotel Debtors**

(a)     *Classification*:  Class A7 consists of all Intercompany Claims against the Anaheim Hotel Debtors.

(b)     *Treatment*:  Holders of Allowed Class A7 Intercompany Claims shall not receive any distribution on account of such Intercompany Claims, and Allowed Intercompany Claims shall be canceled, released, and extinguished as of the Effective Date.

(c)     *Voting*:  Class A7 is Impaired ~~by the Plan~~**,** and Holders of Intercompany Claims against the Anaheim Hotel Debtors are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Intercompany Claims against the Anaheim Hotel Debtors are not entitled to vote to accept or reject the Plan.

**Class A8~~A - Section 510(b) Claims Against~~ - Intercompany Interests in the Anaheim Hotel ~~Owner~~Debtor**

(a)     *Classification:*  Class A8~~A~~ consists of all ~~Section 510(b) Claims against~~**Intercompany Interests in** the Anaheim Hotel ~~Owner~~**Debtors**.

~~(b)     *Treatment*:  Except to the extent that a Holder of an Allowed Class A8A Section 510(b) Claim against the Anaheim Hotel Owner and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each Allowed Section 510(b) Claims against the Anaheim Hotel Owner, each Holder of an Allowed Section 510(b) Claim against the Anaheim Hotel Owner shall be paid in full in cash on the Effective Date or as soon as reasonably practical thereafter as a result of the Anaheim Hotel Sale Transaction, if consummated, or other transaction.~~

~~(c)     *Voting*:  Class A8A is Unimpaired, and Holders of Section 510(b) Claims against the Anaheim Hotel Owner are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class A8A Section 510(b) Claims against the Anaheim Hotel Owner are not entitled to vote to accept or reject the Plan.~~

~~**Class A8B - Section 510(b) Claims Against the Anaheim Mezzanine Debtor**~~

~~(a)     *Classification*:  Class A8B consists of all Section 510(b) Claims against the Anaheim Mezzanine Debtor.~~

~~(b)     *Treatment*:  Holders of Allowed Section 510(b) Claim against the Anaheim Mezzanine Debtor shall not receive any distribution on account of such Section 510(b) Claim against the Anaheim Mezzanine Debtor, and Allowed Section 510(b) Claim against the Anaheim Mezzanine Debtor shall be canceled, released, and extinguished as of the Effective Date.~~

39

(c)     *Voting:* Class A8B is Impaired by the Plan and each Holder of a Section 510(b) Claim against the Anaheim Mezzanine Debtor is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Section 510(b) Claims against the Anaheim Mezzanine Debtor are not entitled to vote to accept or reject the Plan.

**Class A8C – Section 510(b) Claims Against the Anaheim Hotel Lessee**

(a)     *Classification*: Class A8C consists of all Section 510(b) Claims against the Anaheim Hotel Lessee.

(b)     *Treatment*: Except to the extent that a Holder of an Allowed Class A8C Section 510(b) Claim against the Anaheim Hotel Lessee and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each Allowed Section 510(b) Claims against the Anaheim Hotel Lessee, each Holder of an Allowed Section 510(b) Claim against the Anaheim Hotel Lessee shall receive such Holder's entitled Pro Rata distribution of the Anaheim Hotel Lessee Unencumbered Assets, if any, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the Anaheim Hotel Lessee.

(c)     *Voting:* Class A8C is Impaired by the Plan and each Holder of a Section 510(b) Claim against the Anaheim Hotel Lessee is entitled to vote to accept or reject the Plan.

**Class A9A – Intercompany Interests in the Anaheim Hotel Owner**

(a)     *Classification:* Class A9A consists of all Intercompany Interests in the Anaheim Hotel Owner.

(b)     *Treatment:* Except to the extent that a Holder of an Allowed Class A9A Intercompany Interest in the Anaheim Hotel Owner and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each Allowed Class A9A Intercompany Interest in the Anaheim Hotel Owner, each Holder of an Allowed Class A9A Intercompany Interest in the Anaheim Hotel Owner shall:

    (i)     to the extent that the Anaheim Hotel Sale Transaction is contemplated and consummated, receive the Holder's entitled Pro Rata distribution of the Anaheim Hotel Purchase Consideration, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the Anaheim Hotel Owner; or

    (ii)     to the extent that the Anaheim Hotel Sale Transaction is not contemplated and consummated and the Holder of the Secured Anaheim Hotel Mezzanine Loan Claims receives the collateral securing its Claims, not receive any distribution on account of such Intercompany Interests; provided that, for the avoidance of doubt, the Holder of the Secured Anaheim Hotel Mezzanine Loan shall receive the Intercompany Interests in the Anaheim Hotel Owner as the Intercompany Interests in the Anaheim Hotel Owner are the collateral securing the Secured Anaheim Hotel Mezzanine Loan Claims.

(c)     *Voting:* Class A9A is Unimpaired, and Holders of Intercompany Interests in the Anaheim Hotel Owner are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class A9A Intercompany Interests in the Anaheim Hotel Owner are not entitled to vote to accept or reject the Plan.

**Class A9B - Intercompany Interests in the Anaheim Mezzanine Debtor**

(a) *Classification:* Class A9B consists of all Intercompany Interests in the Anaheim Mezzanine Debtor.

(b) *Treatment:* ~~Except to the extent that a Holder~~**Holders** of ~~an~~ Allowed Class A~~9B~~**8** Intercompany ~~Interest in the Anaheim Mezzanine Debtor and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each Allowed Class A9B Intercompany Interest in the Anaheim Mezzanine Debtor, each Holder of an Allowed Class A9B Intercompany Interest in the Anaheim Mezzanine~~**Interests in the Anaheim Hotel** Debtor shall not receive any distribution on account of such Intercompany Interests and the Intercompany Interests in the Anaheim Mezzanine Debtor shall be canceled, released, and extinguished as of the Effective Date.

(c) *Voting:* Class A~~9B~~**8** is Impaired ~~by the Plan~~**,** and Holders of Intercompany Interests in the Anaheim Mezzanine ~~Debtor~~**Hotel Debtors** are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Interests in the Anaheim Mezzanine Debtor are not entitled to vote to accept or reject the Plan.

**Class A9C - Intercompany Interests in the Anaheim Hotel Lessee**

(d) *Classification:* Class A9C consists of all Intercompany Interests in the Anaheim Hotel Lessee.

(e) *Treatment:* Except to the extent that a Holder of an Allowed Class A9C Intercompany Interest in the Anaheim Hotel Lessee and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, and compromise of each Allowed Class A9C Intercompany Interest in the Anaheim Hotel Lessee, each Holder of an Allowed Class A9C Intercompany Interest in the Anaheim Hotel Lessee shall receive such Holder's entitled Pro Rata distribution of the Anaheim Hotel Lessee Unencumbered Assets, if any, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the Anaheim Hotel Lessee

(f) *Voting:* Class A9C is Impaired by the Plan and each Holder of an Intercompany Interest in the Anaheim Hotel Lessee is entitled to vote to accept or reject the Plan.

3. The treatment provided to each Class relating to each of the Ontario Hotel Debtors for distribution purposes and voting rights are specified below:

**Class O1 - Other Priority Claims Against the Ontario Hotel Debtors**

(a) *Classification*: Class O1 consists of all Other Priority Claims against the Ontario Hotel Debtors.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Class O1 Other Priority Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each and every Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall, at the sole option of the Debtors or the Post-Effective Date Ontario Hotel Debtors, as applicable:

41

<table>
<tr><td>(i)</td><td>be paid in full in Cash on the later of the Effective Date and the date on which such Other Priority Claims becomes an Allowed Other Priority Claim, or as soon as reasonably practical thereafter; or</td></tr>
<tr><td>(ii)</td><td>otherwise be treated in any other manner such that the Allowed Other Priority Claim shall be rendered Unimpaired on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim or as soon as reasonably practicable thereafter.</td></tr>
</table>

(c)    *Voting*:  Class O1 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class O1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

**Class O2 - Other Secured Claims Against the Ontario Hotel Debtors**

(a)    *Classification*:  Class O2 consists of all Other Secured Claims against Ontario Hotel Debtors.  For all purposes under the Ontario Plan, each Other Secured Claim is a separate Secured Claim against the applicable Debtors.  Accordingly, the sub-Class of Other Secured Claims against a particular Debtor will be further sub-divided into its own Class and designated by letters of the alphabet (*e.g.*, Class O2A against the Ontario Hotel Owner, Class O2B against the Ontario Hotel Owner, and so on), so that each Holder of any Other Secured Claim against a particular Debtor is in a Class by itself, except to the extent that there are Other Secured Claims against that same Debtor that are substantially similar to each other and may be included within a single sub-Class of Claims against that particular Debtor.

(b)    *Treatment*:  Except to the extent that a Holder of an Allowed Class O2 Other Secured Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each and every Allowed Other Secured Claim, each Holder of such Claim shall, at the sole option of the Debtors or the Post-Effective Date Ontario Hotel Debtors, as applicable:

<table>
<tr><td>(i)</td><td>be paid in full in Cash in an amount equal to such Allowed Class O2 Other Secured Claim by the Debtors on the Effective Date;</td></tr>
<tr><td>(ii)</td><td>receive the collateral securing any such Allowed Class O2 Other Secured Claim and be paid interest required to be paid under section 506(b) of the Bankruptcy Code; or</td></tr>
<tr><td>(iii)</td><td>otherwise be treated in any other manner such that the Allowed Class O2 Other Secured Claim shall be rendered Unimpaired on the later of the Effective Date and the date on which such Class O2 Other Secured Claim becomes an Allowed Class O2 Other Secured Claim or as soon as reasonably practicable thereafter have its Class O2 Other Secured Claim be reinstated in accordance with section 1124 of the Bankruptcy Code.</td></tr>
</table>

(c)    *Voting*:  Class O2 is Unimpaired, and Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class O2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

**Class O3 - Secured Ontario Hotel Mortgage Loan Claims**

(a)    *Classification:*  Class O3 consists of all Secured Ontario Hotel Mortgage Loan Claims.

K&E 18934861.12

(b)    *Treatment:* Except to the extent that the Holder of Allowed Class O3 Secured Ontario Hotel Mortgage Loan Claims and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of Allowed Secured Ontario Hotel Mortgage Loan Claims, the Holder of Allowed Secured Ontario Hotel Mortgage Loan Claims shall receive a deed in lieu of foreclosure with respect to the collateral under the Ontario Hotel Mortgage Loan Agreement. For the avoidance of doubt and notwithstanding anything to the contrary herein, such Holder shall not receive any recovery from any of the Debtors on account of **any deficiency Claim, guaranty Claim, indemnity Claim, and** Claims for Adequate Protection Obligations related to the Ontario Hotel Mortgage Loan Agreement and such Claims shall be deemed to be canceled, released, and extinguished as of the Effective Date of the Ontario Plan.

(c)    *Voting:* Class O3 is Impaired ~~by the Plan~~, and the Holder of Secured Ontario Hotel Mortgage Loan Claims is entitled to vote to accept or reject the Plan.

### Class O4A - General Unsecured Claims Against the Ontario Hotel Owner

(a)    *Classification:* Class O4A consists of all General Unsecured Claims against the Ontario Hotel Owner.

(b)    *Treatment:* Except to the extent that a Holder of an Allowed Class O4A General Unsecured Claim against the Ontario Hotel Owner and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each Allowed General Unsecured Claim against the Ontario Hotel Owner, each Holder of an Allowed General Unsecured Claim against the Ontario Hotel Owner shall receive its Pro Rata share of the Ontario Hotel Unsecured Claim Fund.

(c)    *Voting:* Class O4A is Impaired ~~by the Plan~~, and each Holder of a General Unsecured Claim against the Ontario Hotel Owner is entitled to vote to accept or reject the Plan.

### Class O4B - General Unsecured Claims Against the Ontario Hotel Lessee

(a)    *Classification:* Class O4B consists of all General Unsecured Claims against the Ontario Hotel Lessee.

(b)    *Treatment:* Except to the extent that a Holder of an Allowed Class O4B General Unsecured Claim against the Ontario Hotel Lessee and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each Allowed General Unsecured Claim against the Ontario Hotel Lessee, each Holder of an Allowed General Unsecured Claim against the Ontario Hotel Lessee shall receive its Pro Rata share of the Ontario Hotel Unsecured Claim Fund and such Holder's entitled Pro Rata distribution of the Ontario Hotel Lessee Unencumbered Assets, if any, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the Ontario Hotel Lessee..

(c)    *Voting:* Class O4B is Impaired ~~by the Plan~~, and each Holder of a General Unsecured Claim against the Ontario Hotel Debtors is entitled to vote to accept or reject the Plan.

### Class O5 - Mortgage Loan Deficiency Claims Against Ontario Hotel Debtors

(a)    *Classification:* Class O5 consists of all Mortgage Loan Deficiency Claims against Ontario Hotel Debtors.

(b)    *Treatment:*  The Holder of Allowed Class O5 Mortgage Loan Deficiency Claims shall not receive any distribution on account of such Mortgage Loan Deficiency Claims, and Allowed Mortgage Loan Deficiency Claims shall be canceled, released, and extinguished as of the Effective Date.

(c)    *Voting:*  Class O5 is Impaired ~~by the Plan~~, and the Holder of Mortgage Loan Deficiency Claims Against the Ontario Hotel Debtors is conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, the Holder of Mortgage Loan Deficiency Claims against Ontario Hotel Debtors is not entitled to vote to accept or reject the Plan.

## Class O6 - Intercompany Claims Against Ontario Hotel Debtors

(a)    *Classification*:  Class O6 consists of all Intercompany Claims against Ontario Hotel Debtors.

(b)    *Treatment*:  Holders of Allowed Class O6 Intercompany Claims shall not receive any distribution on account of such Intercompany Claims, and Allowed Intercompany Claims shall be canceled, released, and extinguished as of the Effective Date.

(c)    *Voting*:  Class O6 is Impaired by the Plan and Holders of Intercompany Claims against the Ontario Hotel Debtors are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Intercompany Claims against the Ontario Hotel Debtors are not entitled to vote to accept or reject the Plan.

## Class O7 - Section 510(b) Claims Against Ontario Hotel Debtors

(a)    *Classification*:  Class O7 consists of all Section 510(b) Claims against Ontario Hotel Debtors.

(b)    *Treatment*:  Holders of Allowed Class O7 Section 510(b) Claims against Ontario Hotel Debtors shall not receive any distribution on account of such Section 510(b) Claims, and Allowed Section 510(b) Claims against Ontario Hotel Debtors shall be canceled, released, and extinguished as of the Effective Date.

(c)    *Voting*:  Class O7 is Impaired, and Holders of Section 510(b) Claims against Ontario Hotel Debtors are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Section 510(b) Claims against Ontario Hotel Debtors are not entitled to vote to accept or reject the Plan.

## Class O8 - Intercompany Interests in Ontario Hotel Debtors

(a)    *Classification:*  Class O8 consists of all Intercompany Interests in Ontario Hotel Debtors.

(b)    *Treatment:*  Holders of Allowed Class O8 Intercompany Interests in Ontario Hotel Debtors shall not receive any distribution on account of such Intercompany Interests and the Intercompany Interests in Ontario Hotel Debtors shall be canceled, released, and extinguished as of the Effective Date.

(c)    *Voting:*  Class O8 is Impaired, and Holders of Intercompany Interests in the Anaheim Hotel Debtors are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Intercompany Interests in the Anaheim Hotel Debtors are not entitled to vote to accept or reject the Plan.

4. The treatment provided to each Class relating to each of the Re~~org~~**main**~~iz~~ing Debtors for distribution purposes and voting rights are specified below:

### Class R1 - Other Priority Claims Against the Re~~org~~**main**~~iz~~ing Debtors

(a) *Classification*: Class R1 consists of all Other Priority Claims against the Re~~org~~**main**~~iz~~ing Debtors.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Class R1 Other Priority Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each and every Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall, at the sole option of the Debtors or the Post-Effective Date Re~~org~~**main**~~iz~~ing Debtors, as applicable:

    (i) be paid in full in Cash on the later of the Effective Date and the date on which such Other Priority Claims becomes an Allowed Other Priority Claim, or as soon as reasonably practical thereafter; or

    (ii) otherwise be treated in any other manner such that the Allowed Other Priority Claim shall be rendered Unimpaired on the later of the Effective Date and the date on which such Other Priority Claim becomes an Allowed Other Priority Claim or as soon as reasonably practicable thereafter.

(c) *Voting*: Class R1 is Unimpaired, and Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class R1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

### Class R2 - Other Secured Claims Against the Re~~org~~**main**~~iz~~ing Debtors

(a) *Classification*: Class R2 consists of all Other Secured Claims against the Re~~org~~**main**~~iz~~ing Debtors. For all purposes under the Re~~org~~**main**~~iz~~ing Debtor Plan, each Other Secured Claim is a separate Secured Claim against the applicable Debtors. Accordingly, the sub-Class of Other Secured Claims against a particular Debtor will be further sub-divided into its own Class and designated by letters of the alphabet (*e.g.*, Class R2A ~~Innkeepers USA Trust~~**against the Garden Grove Hotel Owner**, Class R2B ~~Innkeepers USA Trust~~**against the Garden Grove Hotel Owner** and so on), so that each Holder of any Other Secured Claim against a particular Debtor is in a Class by itself, except to the extent that there are Other Secured Claims against that same Debtor that are substantially similar to each other and may be included within a single sub-Class of Claims against that particular Debtor.

(b) *Treatment*: Except to the extent that a Holder of an Allowed Class R2 Other Secured Claim agrees to a less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each and every Allowed Other Secured Claim, each Holder of such Claim shall, at the sole option of the Debtors or the Post-Effective Date Re~~org~~**main**~~iz~~ing Debtors, as applicable:

(i) be paid in full in Cash in an amount equal to such Allowed Class R2 Other Secured Claim by the Debtors on the Effective Date;

(ii) receive the collateral securing any such Allowed Class R2 Other Secured Claim and be paid interest required to be paid under section 506(b) of the Bankruptcy Code; or

(iii) otherwise be treated in any other manner such that the Allowed Class R2 Other Secured Claim shall be rendered Unimpaired on the later of the Effective Date and the date on which such Class R2 Other Secured Claim becomes an Allowed Class R2 Other Secured Claim or as soon as reasonably practicable thereafter have its Class R2 Other Secured Claim be reinstated in accordance with section 1124 of the Bankruptcy Code.

(c) *Voting*: Class R2 is Unimpaired, and Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class R2 Other Priority Claims are not entitled to vote to accept or reject the Plan.

**Class R3A - Secured Garden Grove Hotel Mortgage Loan Claims**

(a) *Classification*:  Class R3A consists of all Secured Garden Grove Hotel Mortgage Loan Claims.

(b) *Treatment*:  Except to the extent that the Holder of Allowed Class R3A Secured Garden Grove Hotel Mortgage Loan Claims and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of Allowed Class R3A Secured Garden Grove Hotel Mortgage Loan Claims, the Holder of Allowed Class R3A Secured Garden Grove Hotel Mortgage Loan Claims shall.

46

(i) to the extent the Garden Grove Sale Transaction is contemplated and consummated, receive the Holder's entitled distribution of the Garden Grove Hotel Purchase Consideration, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the Garden Grove Hotel Owner; or

(ii) to the extent no Garden Grove Sale Transaction is contemplated or consummated, have its**, in connection with the Chatham APA, enter into the assumed, amended, restated, and/or supplemented Garden Grove Hotel Mortgage Loan Agreement, as reasonably required by LNR, the form and terms of which shall include the terms and conditions set forth in the LNR Commitment and the May 3 Stipulation and substantially be set forth in the Chatham Hotel Sale Transaction Loan Assumption Documents included in the Plan Supplement, pursuant to which the new amended or restated note or notes shall be issued to the Holder of the** Allowed Class R3A Secured Garden Grove Hotel Mortgage Loan Claims reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(iii)**.** For the avoidance of doubt and notwithstanding anything to the contrary herein, such Holder shall not receive any recovery from any of the Debtors on account of **any deficiency Claim, guaranty Claim, indemnity Claim, and** Claims for Adequate Protection Obligations related to the Garden Grove Hotel Mortgage Loan Agreement and such Claims shall be deemed to be canceled, released, and extinguished as of the Effective Date of the Reorganizing Debtor Plan**Remaining Debtor Plan.**

(c) *Voting:* Class R3A is potentially Impaired by the Plan**,** and the Holder of Allowed Class R3A Secured Garden Grove Hotel Mortgage Loan Claims is entitled to vote to accept or reject the Plan on a provisional basis. To the extent that the Holder of Class R3A Secured Garden Grove Hotel Mortgage Loan Claims receives a treatment pursuant to (b)(i) above in an amount less that the amount of its Allowed Secured Garden Grove Hotel Mortgage Loan Claims, such Holder shall be Impaired by the Plan and its vote shall be considered for purposes of Confirmation of the Plan. To the extent that the Holder of Allowed Class R3A Secured Garden Grove Hotel Mortgage Loan Claims receives a treatment pursuant to (b)(ii) above, such Holder is Unimpaired by the Plan and its vote shall be disregarded.**.**

**Class R3B - Secured San Diego Hotel Mortgage Loan Claims**

(a) Classification: Class R3B consists of all Secured San Diego Hotel Mortgage Loan Claims.

(b) Treatment: Except to the extent that the Holder of Allowed Class R3B Secured San Diego Hotel Mortgage Loan Claims and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of Allowed Class R3B Secured San Diego Hotel Mortgage Loan Claims, the Holder of Allowed Class R3B Secured San Diego Hotel Mortgage Loan Claims shall:

(i) to the extent the San Diego Sale Transaction is contemplated and consummated, receive the Holder's entitled distribution of the San Diego Hotel Purchase Consideration, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the San Diego Hotel Owner; or

(ii) to the extent no San Diego Sale Transaction is contemplated or consummated, have its**, in connection with the Chatham APA, enter into the assumed, amended, restated, and/or supplemented San Diego Hotel Mortgage Loan Agreement, as reasonably required by LNR, the form and terms of which shall include the terms and conditions set forth in the LNR Commitment and**

the May 3 Stipulation and substantially be set forth in the Chatham Hotel Sale Transaction Loan Assumption Documents included in the Plan Supplement, pursuant to which the new amended or restated note or notes shall be issued to the Holder of the Allowed Class R3B Secured San Diego Hotel Mortgage Loan Claims reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(iii) , For the avoidance of doubt and notwithstanding anything to the contrary herein, such Holder shall not receive any recovery from any of the Debtors on account of any deficiency Claim, guaranty Claim, indemnity Claim, and Claims for Adequate Protection Obligations related to the San Diego Hotel Mortgage Loan Agreement and such Claims shall be deemed to be canceled, released, and extinguished as of the Effective Date of the Reorganizing Debtor Plan.Remaining Debtor Plan.

(c) *Voting:* Class R3B is UnimpairedImpaired, and the Holder of Class R3B Secured San Diego Hotel Mortgage Loan Claims is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of Class R3B Secured San Diego Hotel Mortgage Loan Claims is not entitled to vote to accept or reject the Plan.

**Class R3C - Secured Washington DC Hotel Mortgage Loan Claims**

(a) *Classification:* Class R3C consists of all Secured Washington DC Hotel Mortgage Loan Claims.

(b) *Treatment:* Except to the extent that the Holder of Allowed Class R3C Secured Washington DC Hotel Mortgage Loan Claims and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of Allowed Class R3C Secured Washington DC Hotel Mortgage Loan Claims, the Holder of Allowed Class R3C Secured Washington DC Hotel Mortgage Loan Claims shall:

(i) to the extent the Washington DC Sale Transaction is contemplated and consummated, receive the Holder's entitled distribution of the Washington DC Hotel Purchase Consideration, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the Washington DC Hotel Owner; or

(ii) to the extent no Washington DC Sale Transaction is contemplated or consummated, have its, in connection with the Chatham APA, enter into the assumed, amended, restated, and/or supplemented Washington DC Hotel Mortgage Loan Agreement, as reasonably required by LNR, the form and terms of which shall include the terms and conditions set forth in the LNR Commitment and the May 3 Stipulation and substantially be set forth in the Chatham Hotel Sale Transaction Loan Assumption Documents included in the Plan Supplement, pursuant to which the new amended or restated note or notes shall be issued to the Holder of the Allowed Class R3C Secured Washington DC Hotel Mortgage Loan Claims reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(iii) , For the avoidance of doubt and notwithstanding anything to the contrary herein, such Holder shall not receive any recovery from any of the Debtors on account of any deficiency Claim, guaranty Claim, indemnity Claim, and Claims for Adequate Protection Obligations related to the Washington DC Hotel Mortgage Loan Agreement and such Claims shall be deemed to be canceled, released, and

48

extinguished as of the Effective Date of the ~~Reorganizing Debtor Plan~~**Remaining Debtor Plan.**

(c)   *Voting:*   Class R3C is ~~Unimpaired~~**Impaired**, and the Holder of Class R3C Secured Washington DC Hotel Mortgage Loan Claims is ~~conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.   Therefore, the Holder of Class R3C Secured Washington DC Hotel Mortgage Loan Claims is not~~ entitled to vote to accept or reject the Plan.

## Class R3D - Secured Tysons Corner Hotel Mortgage Loan Claims

(a)   *Classification:*   Class R3D consists of all Secured Tysons Corner Hotel Mortgage Loan Claims.

(b)   *Treatment:*   Except to the extent that the Holder of Allowed Class R3D Secured Tysons Corner Hotel Mortgage Loan Claims and the Debtors agree to less favorable treatment to such Holders, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of Allowed Class R3D Secured Tysons Corner Hotel Mortgage Loan Claims, the Holder of Allowed Class R3D Secured Tysons Corner Hotel Mortgage Loan Claims shall~~:~~

~~(i)   to the extent the Tysons Corner Sale Transaction is contemplated and consummated, receive the Holder's entitled distribution of the Tysons Corner Hotel Purchase Consideration, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the Tysons Corner Hotel Owner; or~~

~~(ii)   to the extent no Tysons Corner Sale Transaction is contemplated or consummated, have its~~**, in connection with the Chatham APA, enter into the assumed, amended, restated, and/or supplemented Tysons Corner Hotel Mortgage Loan Agreement, as reasonably required by LNR, the form and terms of which shall include the terms and conditions set forth in the LNR Commitment and the May 3 Stipulation and substantially be set forth in the Chatham Hotel Sale Transaction Loan Assumption Documents included in the Plan Supplement, pursuant to which the new amended or restated note or notes shall be issued to the Holder of the** Allowed Class R3D Secured Tysons Corner Hotel Mortgage Loan Claims ~~reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.~~

~~(iii)~~   **.**  For the avoidance of doubt and notwithstanding anything to the contrary herein, such Holder shall not receive any recovery from any of the Debtors on account of **any deficiency Claim, guaranty Claim, indemnity Claim, and** Claims for Adequate Protection Obligations related to the Tysons Corner Hotel Mortgage Loan Agreement and such Claims shall be deemed to be canceled, released, and extinguished as of the Effective Date of the ~~Reorganizing Debtor Plan~~**Remaining Debtor Plan.**

(c)   *Voting:* Class R3D is ~~Unimpaired~~**Impaired**, and the Holder of Class R3D Secured Tysons Corner Hotel Mortgage Loan Claims is ~~conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.   Therefore, the Holder of Class R3D Secured Tysons Corner Hotel Mortgage Loan Claims is not~~ entitled to vote to accept or reject the Plan.

49

**Class R3E – Secured San Antonio Hotel Mortgage Loan Claims**

(a)     *Classification:*  Class R3E consists of all Secured San Antonio Hotel Mortgage Loan Claims.

(b)     *Treatment:*  Except to the extent that the Holder of Allowed Class R3E Secured San Antonio Hotel Mortgage Loan Claims and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of Allowed Class R3E Secured San Antonio Hotel Mortgage Loan Claims, the Holder of Allowed Class R3E Secured San Antonio Hotel Mortgage Loan Claims shall:

(i)     ~~to the extent the San Antonio Sale Transaction is contemplated and consummated, receive the Holder's entitled distribution of the San Antonio Hotel Purchase Consideration, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the San Antonio Hotel Owner; or~~

(ii)     ~~to the extent no San Antonio Sale Transaction is contemplated or consummated, have its~~**, in connection with the Chatham APA, enter into the assumed, amended, restated, and/or supplemented San Antonio Hotel Mortgage Loan Agreement, as reasonably required by LNR, the form and terms of which shall include the terms and conditions set forth in the LNR Commitment and the May 3 Stipulation and substantially be set forth in the Chatham Hotel Sale Transaction Loan Assumption Documents included in the Plan Supplement, pursuant to which the new amended or restated note or notes shall be issued to the Holder of the** Allowed Class R3E Secured San Antonio Hotel Mortgage Loan Claims ~~reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code~~**.   For the avoidance of doubt and notwithstanding anything to the contrary herein, such Holder shall not receive any recovery from any of the Debtors on account of any deficiency Claim, guaranty Claim, indemnity Claim, and Claims for Adequate Protection Obligations related to the San Antonio Hotel Mortgage Loan Agreement and such Claims shall be deemed to be canceled, released, and extinguished as of the Effective Date of the Remaining Debtor Plan.**

(c)     *Voting:*  Class R3E is ~~Unimpaired~~**Impaired**, and the Holder of Class R3E Secured San Antonio Hotel Mortgage Loan Claims is ~~conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holder of Class R3E Secured San Antonio Hotel Mortgage Loan Claims is not~~ entitled to vote to accept or reject the Plan.

**Class R4 – General Unsecured Claims Against the Re~~org~~main~~iz~~ing Debtors**

(a)     *Classification:*  Class R4 consists of all General Unsecured Claims against the Re~~org~~main~~iz~~ing Debtors.

(b)     *Treatment:*  Except to the extent that a Holder of an Allowed Class R4 General Unsecured Claim **against the Remaining Debtors** and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each Allowed General Unsecured Claim **against the Remaining Debtors**, each Holder of an Allowed General Unsecured Claim ~~shall:~~

(i)     ~~to the extent a Hotel Sale Transaction is contemplated and consummated with respect to the Debtor that the Holder has an Allowed General Unsecured Claim against, receive the Holder's entitled Pro Rata distribution of the Hotel~~**against a particular Remaining Debtor shall receive (i) the Chatham Hotel Sale**

**Transaction** Purchase Consideration received by such ~~Debtor, which distribution shall be made in accordance with the Distribution Waterfall as it applies to such Debtor;~~

~~(ii)      to the extent the Garden Grove Sale Transaction is contemplated and consummated and such Holder has an Allowed General Unsecured Claim against the Garden Grove Hotel Lessee, receive the Holder's entitled Pro Rata distribution of the Garden Grove Hotel Lessee Unencumbered Assets, if any, which distribution shall be made in accordance with~~ **Remaining Debtor through** the Distribution Waterfall ~~as it applies to the Garden Grove Hotel Lessee; or~~

~~(iii)      to the extent the San Diego Sale Transaction is contemplated and consummated and such Holder has an Allowed General Unsecured Claim against the San Diego Hotel Lessee, receive the Holder's entitled Pro Rata distribution of the San Diego Hotel Lessee Unencumbered Assets, if any, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the San Diego Hotel Lessee; or~~

~~(iv)      to the extent the Washington DC Sale Transaction, Tysons Corner Sale Transaction, and San Antonio Sale Transaction are contemplated and consummated and such Holder has an Allowed General Unsecured Claim against the General Hotel Lessee, receive the Holder's entitled Pro Rata distribution of the General Hotel Lessee Unencumbered Assets, if any, which distribution shall be made in accordance with the Distribution Waterfall as it applies to the General Hotel Lessee,~~

~~(v)      to the extent the Holder of an Allowed General Unsecured Claim against one of the Reorganizing Debtors' treatment is not set forth in sections (b)(i) (iv) above, at the sole option of the Reorganizing Debtors, (i) have its Claim rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code, or (ii) receive a Cash distribution on the Effective Date or as soon thereafter as is practicable.~~ **and (ii) other assets, if any, of such Remaining Debtor that are not subject to a Secured Claim of any Entity and are available for distribution to the Holders of Claims against such Remaining Debtor, which distribution shall be made in accordance with the Distribution Waterfall as it applies to such Remaining Debtor.**

(c)      *Voting:* Class R4 is ~~potentially~~ Impaired ~~by the Plan,~~ and **the** Holders of Allowed Class R4 General Unsecured Claims **against the Remaining Debtors** are entitled to vote to accept or reject the Plan ~~on a provisional basis. To the extent that Holders of Allowed Class R4 General Unsecured Claims receive a distribution pursuant to (b)(i) (iv) above equal to the amount of their Allowed Claim or receive the treatment set forth in (b)(v) above, such Holders are Unimpaired by the Plan and their votes shall be disregarded. To the extent that Holders of Allowed Class R4 General Unsecured Claims receive a different treatment and receive less than the amount of their Allowed Claim, such Holders shall be Impaired by the Plan and their votes shall be considered for purposes of Confirmation of the Plan~~.

51

**Class R5 - Intercompany Claims Against the Re~~org~~**mai**~~niz~~ing Debtors**

(a)     *Classification*:  Class R5 consists of all Intercompany Claims against the Re~~org~~**ma**i**~~niz~~ing Debtors.

(b)     *Treatment*:  Holders of Allowed Class R5 Intercompany Claims shall not receive any distribution on account of such Intercompany Claims, and Allowed Intercompany Claims shall be canceled, released, and extinguished as of the Effective Date.

(c)     *Voting*:  Class R5 is Impaired ~~by the Plan~~, and Holders of Intercompany Claims against the Re~~org~~**ma**i**~~niz~~ing Debtors are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Intercompany Claims against the Re~~org~~**ma**i**~~niz~~ing Debtors are not entitled to vote to accept or reject the Plan.

**Class R6 - Intercompany Interests in the Re~~org~~**mai**~~niz~~ing Debtors**

(a)     *Classification*:  Class R6 consists of all Intercompany Interests in the Re~~org~~**ma**i**~~niz~~ing Debtors.

(b)     *Treatment*:  Holders of Allowed Class R6 Intercompany Interests in the Re~~org~~**ma**i**~~niz~~ing Debtors shall have their Interests reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

(c)     *Voting*:  Class R6 is Unimpaired, and Holders of Intercompany Interests in the Re~~org~~**ma**i**~~niz~~ing Debtors are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Intercompany Interests in the Re~~org~~**ma**i**~~niz~~ing Debtors are not entitled to vote to accept or reject the Plan.

**Class R7 - Innkeepers USA LP Preferred D Interests**

(a)     *Classification*:  Class R7 consists of all Innkeepers USA LP Preferred D Interests.

(b)     *Treatment*:  Holders of Allowed Innkeepers USA LP Preferred D Interests~~, at the election of the Reorganizing Debtors in their sole discretion, shall~~:  **shall not receive any distribution on account of such Allowed Innkeepers USA LP Preferred D Interests, and Allowed Innkeepers USA LP Preferred D Interests shall be canceled, released, and extinguished as of the Effective Date.**

~~(i)     to the extent that all of the Hotel Sale Transactions are contemplated and consummated by the Debtors, receive the Holder's entitled Pro Rata distribution of the Hotel Sale Transaction Consideration and assets of Innkeepers USA Limited Partnership (including any Cash in the LP Bank Account that is available for distribution after, among other things, satisfaction of costs of administration of the Chapter 11 Cases), which distribution shall be made in accordance with the Distribution Waterfall as it applies to Innkeepers USA Limited Partnership; or~~

~~(ii)     to the extent that the Holder's treatment is not provided pursuant to (b)(i), have their Innkeepers USA LP Preferred D Interests reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code, which treatment shall include (A) for the avoidance of doubt, no distribution on the Effective Date on account of such Innkeepers USA LP Preferred D Interests, (B) the cooperation of the Post-Effective Date Reorganizing Debtors' lenders with the Post-Effective Date Reorganizing Debtors in an effort to provide the Holders of the Innkeepers USA LP Preferred D Interests guarantys in substantially similar form to the guarantys with respect to the Debtors' mortgage loans that the Holders~~

52

of Innkeepers USA LP Preferred D Interests were party to as of the Petition Date, and (C) for the avoidance of doubt, the maintenance of all distribution, redemption, and other rights provided to the Holders of Innkeepers USA LP Preferred D Interests under the partnership agreement for Innkeepers USA Limited Partnership.

(c)     *Voting*:  Class R7 is potentially Impaired by the Plan, and Holders of Allowed Class R7 Innkeepers USA LP Preferred D Interests are **conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Innkeepers USA LP Preferred D Interests are not** entitled to vote to accept or reject the Plan on a provisional basis.  To the extent that Holders of Allowed Class R7 Innkeepers USA LP Preferred D Interests receive a treatment pursuant to (b)(i) above, such Holders shall be Impaired by the Plan and their votes shall be considered for purposes of Confirmation of the Plan.  To the extent that Holders of Allowed Class R7 Innkeepers USA LP Preferred D Interests receive a treatment pursuant to (b)(ii) above, such Holders are Unimpaired by the Plan and their votes shall be disregarded.

**Class R8 - Innkeepers USA Trust Preferred C Interests**

(a)     *Classification:*  Class R8 consists of all Innkeepers USA Trust Preferred C Interests.

(b)     *Treatment:* Holders of Allowed Innkeepers USA Trust Preferred C Interests, at the election of the Reorganizing Debtors in their sole discretion, shall:

(i)     to the extent that all of the Hotel Sale Transactions are contemplated and consummated by the Debtors,  **shall** receive the Holder's entitled Pro Rata distribution of the **Chatham** Hotel Sale Transaction **Purchase** Consideration and assets**, if any,** of Innkeepers USA Limited Partnership, Innkeepers Financial Corporation, and Innkeepers USA Trust (including any Cash in the LP Bank Account that is available for distribution after, among other things, satisfaction of costs of administration of the Chapter 11 Cases), which distribution shall be made in accordance with the Distribution Waterfall as it applies to Innkeepers USA Trust; or

(ii)     to the extent that the Holder's treatment is not provided pursuant to (b)(i), have their Interest be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.  **.**

(c)     *Voting:*  Class R8 is potentially Impaired by the Plan, and Holders of Allowed Class R8 Innkeepers USA Trust Preferred C Interests are entitled to vote to accept or reject the Plan on a provisional basis.  To the extent that Holders of Allowed Class R8 Innkeepers USA Trust Preferred C Interests receive a treatment pursuant to (b)(i) above, such Holders shall be Impaired by the Plan and their votes shall be considered for purposes of Confirmation of the Plan.  To the extent that Holders of Allowed Class R8 Innkeepers USA Trust Preferred C Interests receive a treatment pursuant to (b)(ii) above, such Holders are Unimpaired by the Plan and their votes shall be disregarded.

**Class R9 - Innkeepers USA Trust Preferred A Interests**

(a)     *Classification:*  Class R9 consists of all Innkeepers USA Trust Preferred A Interests.

(b)     *Treatment: Holders of Allowed Innkeepers USA Trust Preferred A Interests*, at the election of the Reorganizing Debtors in their sole discretion, shall:

**(b)** ~~(i) to the extent that all of the Hotel Sale Transactions are contemplated and consummated by the Debtors,~~ *Treatment: Holders of Allowed Innkeepers USA Trust Preferred A Interests* **shall** receive the Holder's entitled Pro Rata distribution of the **Chatham** Hotel Sale Transaction **Purchase** Consideration and assets**, if any,** of Innkeepers USA Limited Partnership, Innkeepers Financial Corporation, and Innkeepers USA Trust (including any Cash in the LP Bank Account that is available for distribution after, among other things, satisfaction of costs of administration of the Chapter 11 Cases), which distribution shall be made in accordance with the Distribution Waterfall as it applies to Innkeepers USA Trust~~;~~**.** ~~or~~

~~(ii) to the extent that the Holder's treatment is not provided pursuant to (b)(i), have their Interest be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.~~

(c) *Voting:* Class R9 is ~~potentially~~ Impaired ~~by the Plan~~**,** and Holders of Allowed Class R9 Innkeepers USA Trust Preferred A Interests are entitled to vote to accept or reject the Plan ~~on a provisional basis. To the extent that Holders of Allowed Class R9 Innkeepers USA Trust Preferred A Interests receive a treatment pursuant to (b)(i) above, such Holders shall be Impaired by the Plan and their votes shall be considered for purposes of Confirmation of the Plan. To the extent that Holders of Allowed Class R9 Innkeepers USA Trust Preferred A Interests receive a treatment pursuant to (b)(ii) above, such Holders are Unimpaired by the Plan and their votes shall be disregarded.~~

## Class R10 - Innkeepers USA Trust Common Interests

(a) *Classification:* Class R10 consists of all Innkeepers USA Trust Common Interests.

(b) *Treatment:* Holders of Allowed Innkeepers USA Trust Common Interests~~, at the election of the Reorganizing Debtors in their sole discretion, shall~~**: shall not receive any distribution on account of such Allowed Innkeepers USA Trust Common Interests, and Allowed Innkeepers USA Trust Common Interests shall be canceled, released, and extinguished as of the Effective Date.**

~~(i) to the extent that all of the Hotel Sale Transactions are contemplated and consummated by the Debtors, receive the Holder's entitled Pro Rata distribution of the Hotel Sale Transaction Consideration and assets of Innkeepers USA Limited Partnership, Innkeepers Financial Corporation, and Innkeepers USA Trust (including any Cash in the LP Bank Account that is available for distribution after, among other things, satisfaction of costs of administration of the Chapter 11 Cases), which distribution shall be made in accordance with the Distribution Waterfall as it applies to Innkeepers USA Trust; or~~

~~(ii) to the extent that the Holder's treatment is not provided pursuant to (b)(i), have their Interest be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.~~

(c) *Voting:* Class R10 is ~~potentially~~ Impaired ~~by the Plan~~**,** and Holders of Allowed Class R10 Innkeepers USA Trust Common Interests are *~~entitled to vote to accept or reject the Plan~~* ~~on a provisional basis. To the extent that Holders of Allowed Class R10~~**conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed** Innkeepers USA Trust Common Interests ~~receive a treatment pursuant to (b)(i) above, such Holders shall be Impaired by the Plan and their votes shall be considered for purposes of Confirmation of the Plan. To the extent that Holders of Allowed Class R10 Innkeepers USA Trust Common Interests receive a~~

treatment pursuant to (b)(ii) above, such Holders are Unimpaired by the Plan and their votes shall be disregarded **are not** *entitled to vote to accept or reject the Plan*.

## Class R11 - Grand Prix Holdings Interests

**(a)** (d) *Classification:*  Class R11 consists of all Grand Prix Holdings Interests.

(e) *Treatment: Holders of Allowed Grand Prix Holdings Interests, at the election of the Reorganizing Debtors in their sole discretion, shall:*

**(b)** (i) to the extent that all of the Hotel Sale Transactions are contemplated and consummated by the Debtors, *Treatment: Holders of Allowed Grand Prix Holdings Interests* **shall** receive the Holder's entitled Pro Rata distribution of the **Chatham** Hotel Sale Transaction **Purchase** Consideration and assets**, if any,** of the Parent Companies (including any Cash in the LP Bank Account that is available for distribution after, among other things, satisfaction of costs of administration of the Chapter 11 Cases), which distribution shall be made in accordance with the Distribution Waterfall as it applies to Grand Prix Holdings; or **.**

(ii)      to the extent that the Holder's treatment is not provided pursuant to (b)(i), have their Interest be reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

**(c)** (f) *Voting*:  Class R11 is potentially Impaired by the Plan**,** and Holders of Allowed Class R11 Grand Prix Holdings Interests are entitled to vote to accept or reject the Plan on a provisional basis.  To the extent that Holders of Allowed Class R11 Grand Prix Holdings Interests receive a treatment pursuant to (b)(i) above, such Holders shall be Impaired by the Plan and their votes shall be considered for purposes of Confirmation of the Plan.  To the extent that Holders of Allowed Class R11 Grand Prix Holdings Interests receive a treatment pursuant to (b)(ii) above, such Holders are Unimpaired by the Plan and their votes shall be disregarded.

## Class R12 - Section 510(b) Claims Against the Reorg**main**izing Debtors

(a) *Classification*:    Class R12 consists of all Section 510(b) Claims against the Reorg**ma**in izing Debtors.

(b) *Treatment*:    Holders of Allowed Class R12 Section 510(b) Claims against the Reorganizing Debtors shall be paid in full in Cash as of the Effective Date.**Except to the extent that a Holder of an Allowed Class R12 Section 510(b) Claims against the Remaining Debtors and the Debtors agree to less favorable treatment to such Holder, in exchange for full and final satisfaction, settlement, release, discharge, and compromise of each Section 510(b) Claims against the Remaining Debtors, each Holder of an Allowed Section 510(b) Claims against a particular Remaining Debtor shall receive (a) the Chatham Hotel Sale Transaction Purchase Consideration received by such Remaining Debtor through the Distribution Waterfall and (b) other assets, if any, of such Remaining Debtor that are not subject to a Secured Claim of any Entity and are available for distribution to the Holders of Claims against such Remaining Debtor, which distribution shall be made in accordance with the Distribution Waterfall as it applies to such Remaining Debtor.**

(c) *Voting*:  Class R11 is Unimpaired and Holders of Section 510(b) Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of**12 is Impaired, and Holders of Allowed Class R12** Section 510(b)

Claims against the Reorg**maj**inizing Debtors are ~~not~~ entitled to vote to accept or reject the Plan.

**_B._**     ~~C.~~ _Special Provision Governing Unimpaired Claims_

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors or the Post-Effective Date Debtors, as applicable, in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

**_C._**     ~~D.~~ _Elimination of Vacant Classes_

Any Class of Claims or Interests that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes pursuant to the Disclosure Statement and Solicitation Procedures Order shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

**_D._**     ~~E.~~ _Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code_

The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

_A._     _Substantive Consolidation_

The Plan does not contemplate substantive consolidation of any of the Debtors.

_B._     _Restructuring Transactions and Sources of Consideration for Plan Distributions_

The Confirmation Order shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan. With respect to the Fixed/Floating Plan, all amounts of Cash and securities necessary for the Fixed/Floating Debtors or the Post-Effective Date Fixed/Floating Debtors, as applicable, to make payments or distributions pursuant hereto shall be obtained from (a) Cash **on hand** from operations in accordance with the Commitment Letter and, as applicable, **and permitted by** the Cash Collateral Orders~~, and~~ (b) the Investment~~, and (c) the New HoldCo Interests issued by New HoldCo pursuant to the Fixed/Floating Plan~~.  With respect to the Anaheim Plan, the Ontario Plan, and the Reorg**maj**inizing Debtor**s** Plan, all amounts of Cash and securities necessary for the Debtors that are not the Fixed/Floating Debtors or the Post-Effective Date Debtors that are not the Post-Effective Date Fixed/Floating Debtors, as applicable, to make payments or distributions pursuant hereto shall be obtained from (a) Cash from operations, (b) the ~~Hotel Sale Transactions and the Anaheim~~**Chatham** Hotel Sale Transaction ~~(to the extent contemplated by the Debtors), and (c) to the extent contemplated by the Post-Effective Date Reorganizing Debtors, a rights offering or new mezzanine financing~~.

_C._     _General Settlement of Claims_

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan.

56

D.  *Fixed/Floating Investment*

On the Effective Date of the Fixed/Floating Plan, and subject to the terms of the Fixed/Floating Successful Bid, ~~the Investor~~**New HoldCo** shall purchase**, directly or indirectly,** the ~~New HoldCo~~ Interests ~~from New HoldCo as set forth in the~~**of the Post-Effective Date** Fixed/Floating ~~Successful Bid~~**Debtors** in return for the Investment. ~~If the Fixed/Floating Successful Bid is the bid of the Investor and Lehman on the terms set forth in the Commitment Letter, the New HoldCo Interests that Investor shall receive on the Effective Date as a result of the Investment will comprise 50% of the total issued and outstanding New HoldCo Interests as of the Effective Date, subject to New HoldCo Interests distributed on account of the Third Party Investment, if any. If the Fixed/Floating Successful Bid is not the bid of the Investor and Lehman on the terms set forth in the Commitment Letter, unless otherwise set forth in the Fixed/Floating Successful Bid, the New HoldCo Interests that Investor shall receive on the Effective Date as a result of the Investment will comprise 100% of the total issued and outstanding New HoldCo Interests as of the Effective Date, subject to New HoldCo Interests distributed on account of the Third Party Investment, if any.~~

If the Fixed/Floating Plan Sponsors determine in their sole and absolute discretion that New HoldCo and the Post-Effective Date Fixed/Floating Debtors shall have an alternate corporate or organizational structure, form or identity **(including, without limitation, as a result of the rejection of the Fixed/Floating Plan by Class FF4)**, the structure of the Investment contemplated in this Article IV.D shall be changed to the extent necessary to effectuate any such alternate structure, form**,** or identity.

E.  ~~*Anaheim*~~**Chatham** *Hotel Sale Transaction* ~~*and Hotel Sale Transactions*~~

On the Effective Date as applicable to the ~~Anaheim Hotel Debtors or Reorganizing Debtors, as applicable, and in connection with the Hotel Sale Transaction Documents, to the extent contemplated by the~~**Remaining** Debtors, the Debtors will consummate the ~~Anaheim~~**Chatham** Hotel Sale Transaction ~~and/or the Hotel Sale Transactions~~ in accordance with the **Chatham** Hotel Sale Transaction Documents. ~~To the extent any of the Hotel Sale Transactions are not contemplated and consummated by the Debtors, Holders of secured mortgage loan Claims against the Reorganizing Debtors shall have their Claims reinstated and rendered Unimpaired.~~

F.  *New Fixed Rate Pool Mortgage Loan Limited Guarantys*

~~To the extent the Midland Financing is contemplated by the Fixed/Floating Successful Bid, on~~**On** the Effective Date of the Fixed/Floating Plan and in connection with the New Fixed Rate Pool Mortgage Loan**,** the New Fixed Rate Pool Mortgage Loan Limited Guarantys shall be entered into by the parties contemplated in the ~~Fixed/Floating Successful Bid~~**New HoldCo/Midland Commitment** and the New Fixed Rate Pool Mortgage Loan Limited Guarantys shall otherwise be consistent with the terms of the ~~Fixed/Floating Successful Bid~~**New HoldCo/Midland Commitment**.

~~G.      *Rights Offering or New Mezzanine Financing*~~

~~To raise capital for the Post-Effective Date Reorganizing Debtors, the Debtors may offer constituents an opportunity to purchase rights in the Reorganizing Debtors or seek to raise debt financing from a third-party financing source.~~

**G.**  ~~H.~~ *Special Servicer Payment and Special Servicer Release Payment*

Contemporaneously with the occurrence of the Effective Date of the Fixed/Floating Plan, and as a condition thereto, the Fixed/Floating Plan Sponsors shall direct New HoldCo to make the Special Servicer Payment and the Special Servicer Release Payment.

**H.**  ~~I.~~ *Issuance of* ~~*New HoldCo*~~ *Interests* **in Post-Effective Date Fixed/Floating Debtors**

The issuance of the ~~New HoldCo~~ Interests by ~~New HoldCo~~**each of the Post-Effective Date Fixed/Floating Debtors** is authorized without the need for any further action and without any further action by the Holders of Claims

or Interests or any further notice to or action, order, or approval of the Bankruptcy Court. ~~The organizational documents of New HoldCo shall authorize [___] New HoldCo Interests.~~

On the Effective Date of the Fixed/Floating Plan, or as soon as reasonably practicable thereafter, the ~~New HoldCo~~ Interests **in the Post-Effective Date Fixed/Floating Debtors (or such of them as may be designated by New HoldCo)** shall be distributed to ~~the Fixed/Floating Plan Sponsors and the Third Party Investors, if applicable,~~ **New HoldCo** in accordance with the Fixed/Floating Plan without any further notice to or action, order, or approval of the Bankruptcy Court.

All of the ~~shares of New HoldCo~~ Interests **in the Post-Effective Date Fixed/Floating Debtors** issued pursuant to the Fixed/Floating Plan shall be duly authorized, validly issued, fully paid, and non-assessable. Each distribution and issuance referred to in Article VI shall be governed by the terms and conditions set forth in the Fixed/Floating Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

*I.* ~~J. Management Incentive Program~~***Management Compensation***

~~Unless otherwise approved during the Chapter 11 Cases, on the Effective Date of the Fixed/Floating Plan, the Management Incentive Program (as described in Article IV.G of the Disclosure Statement and as set forth in the Plan Supplement) shall be deemed approved in its entirety without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity and the Debtors will be authorized to make all payments due under the Management Incentive Program on the Effective Date.~~

~~K.       Securities Act Exemptions~~

~~Except as set forth in the immediately succeeding sentence, pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the New HoldCo Interests shall be exempt from, among other things, the registration and prospectus delivery requirements of Section 5 of the Securities Act and any other applicable law requiring registration and/or delivery of a prospectus prior to the offering, issuance, distribution, or sale of securities. In addition, in the case of New HoldCo Interests issued pursuant to Section 1145 of the Bankruptcy Code, any securities contemplated by the Plan and any and all agreements incorporated herein, including the New HoldCo Interests, shall be subject to: (1) the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in section 2(a)(11) of the Securities Act; (2) compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; (3) the restrictions, if any, on the transferability of such securities and instruments; and (4) applicable regulatory approval, if any.~~

**As part of their bid, the Fixed/Floating Plan Sponsors agreed to fund certain employee-related emergence costs related to the Fixed/Floating Plan in an amount equal to $3.5 million, which amount shall be distributed on the Effective Date of the Fixed/Floating Plan to certain members of the Debtors' management and employees at the direction of, and in the sole and absolute discretion of, the current board of Innkeepers USA Trust.**

**In addition, the Debtors also may implement a compensation program for certain members of the Debtors' management and employees related to the sale of the assets of the Remaining Debtors, which program will be in an amount of approximately $500,000. To the extent implemented, the appropriate details regarding this program will be set forth in the Plan Supplement.**

*J.* ~~L.~~ *Listing of New HoldCo Interests; Reporting Obligations*

None of the New HoldCo Interests will be listed on a national securities exchange as of the Effective Date of the Fixed/Floating Plan. New HoldCo, Post-Effective Date Innkeepers USA Limited Partnership, and Post-Effective Date Innkeepers USA Trust will not be reporting companies under the Securities Exchange Act, and New HoldCo, Post-Effective Date Innkeepers USA Limited Partnership, and Post-Effective Date Innkeepers USA Trust shall not be

required to file reports with the Securities and Exchange Commission or any other entity or party and shall not be required to file monthly operating reports, or any other type of report, with the Bankruptcy Court after the Effective Date.

### K. ~~M.~~ Release of Liens

Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised and all rights, titles, and interests of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall revert to the Post-Effective Date Debtors and their successors and assigns.

### L. ~~N.~~ Vesting of Assets in the Post-Effective Date Debtors

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate of the Debtors, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in the applicable Post-Effective Date Debtors free and clear of all Liens, Claims, charges, or other encumbrances. The Intercompany Interests of Innkeepers USA Limited Partnership in non-Debtor KPA Raleigh, LLC shall vest in Post-Effective Date Innkeepers USA Limited Partnership. The Intercompany Interests of KPA Leaseco Holding, Inc. in non-Debtor KPA Raleigh Leaseco, LLC shall vest in Post-Effective Date KPA Leaseco Holding, Inc. On and after the Effective Date, except as otherwise provided in the Plan, the Post-Effective Date Debtors may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### M. Rights and Obligations Under Troy Settlement Agreement

All of the Debtors' rights and obligations under that certain Settlement Agreement and Release Relating to the Detroit/Troy Central Residence Inn by Marriott, dated August 24, 2010, by and between certain of the Debtors and Marriott International, Inc., as approved by the Bankruptcy Court pursuant to the So-Ordered Stipulation Between Innkeepers USA Trust and Marriott International, Inc. and Order Approving Settlement of Marriott's Motion for Limited Modification of the Automatic Stay and Debtors' Motion to Assume the Troy Central Franchise Agreement, entered by the Bankruptcy Court on August 31, 2010 [Docket No. 357], shall be assumed and assigned to New HoldCo.

### N. ~~O.~~ Cancellation of Securities and Agreements

On the Effective Date, except to the extent otherwise provided, all notes, instruments, Certificates, and other documents evidencing Claims or Interests shall be canceled and the obligations of the Debtors or the Post-Effective Date Debtors and the non-Debtor affiliates thereunder or in any way related thereto shall be discharged.

### O. ~~P.~~ Corporate Action

Upon the Effective Date, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including: (1) selection of the directors, members, trustees, officers, and managers for New HoldCo, including the appointment of the Post-Effective Date Board; (2) the issuance and distribution of the ~~New HoldCo~~ Interests~~;~~ **in the Post-Effective Date Fixed/Floating Debtors.** (3) the execution and approval for ~~New HoldCo and~~ the Post-Effective Date Fixed/Floating Debtors of the New Fixed/Floating By-Laws and New Fixed/Floating Organizational Documents consistent with the terms of the Fixed/Floating Successful Bid~~; (4) to the extent the Fixed/Floating Successful Bid contemplated the Midland Financing~~**, (4)** the execution and delivery of the New Fixed Rate Pool Mortgage Loan, the New Fixed Rate Pool Mortgage Notes, and the New Fixed Rate Pool Mortgage Loan Limited Guarantys consistent with the terms of the ~~Fixed/Floating Successful Bid~~**New HoldCo/Midland Commitment**; and (5) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective

Date).  All matters provided for in the Plan involving the corporate structure of the Debtors or the Post-Effective Date Debtors, and any corporate action required by the Debtors or the Post-Effective Date Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the Security holders, directors, members, trustees, officers, or managers of the Debtors or the Post-Effective Date Debtors or any further notice to or action, order, or approval of the Bankruptcy Court.  On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtors or the Post-Effective Date Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Post-Effective Date Debtors, including any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.~~P~~**O** shall be effective notwithstanding any requirements under non-bankruptcy law.

**P.**     ~~Q.~~ *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Post-Effective Date Debtors and their directors, members, trustees, officers, and managers are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Post-Effective Date Debtors, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

**Q.**     ~~R.~~ *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property or any Interests pursuant to the Plan, including the ~~issuance of the New HoldCo Interests,~~ recording of any mortgages or liens or amendments thereto, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.

**R.**     ~~S.~~ *D&O Liability Insurance Policies*

Notwithstanding anything herein to the contrary, on the Effective Date of the Re~~org~~**ma**~~niz~~ing Debtor Plan, the Re~~org~~**ma**~~niz~~ing Debtors shall assume all of the D&O Liability Insurance Policies pursuant to section 365 of the Bankruptcy Code or otherwise, subject to the Debtors rights to seek amendment to such D&O Liability Insurance Policies.  On the Effective Date of the Fixed/Floating Plan, New HoldCo will purchase new director & officer liability insurance policies as the Fixed/Floating Plan Sponsors determine is necessary.  Entry of the Confirmation Order for the Re~~org~~**ma**~~niz~~ing Debtor Plan shall constitute the Bankruptcy Court's approval of the Re~~org~~**ma**~~niz~~ing Debtors' foregoing assumption of each of the D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an Executory Contract that has been assumed by the Re~~org~~**ma**~~niz~~ing Debtors under the Re~~org~~**ma**~~niz~~ing Debtor Plan as to which no Proof of Claim need be Filed.

**S.**     ~~T.~~ *D&O Tail Insurance Policies*

To the extent not already purchased, on the Confirmation Date of the Fixed/Floating Plan, the Debtors are authorized to purchase tail coverage under a directors and officers' liability insurance policy with a term of six years for the current and former officers, directors, trustees, and members containing the same coverage that exists under the Debtors' current D&O Liability Insurance Policies (*i.e.*, a "tail policy").  After the Effective Date, none of the Post-Effective Date Debtors shall terminate or otherwise reduce the coverage under any directors' and officers' insurance policies (including the "tail policy") in effect on the Effective Date, with respect to conduct occurring prior thereto, and all officers, directors, trustees, and members of the Debtors who served in such capacity at any time prior to

60

the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy regardless of whether such officers, directors, trustees, and/or members remain in such positions after the Effective Date.

**_T._** ~~U.~~ _New Fixed/Floating Organizational Documents and New Fixed/Floating By-Laws_

On or immediately prior to the Effective Date, New HoldCo and the Post-Effective Date Fixed/Floating Debtors will file the New Fixed/Floating Organizational Documents, which shall include provisions in accordance with the Fixed/Floating Successful Bid, with the applicable Secretaries of State and/or other applicable authorities in their respective states of organization **as required by and** in accordance with applicable laws.  In addition, the provisions of the New Fixed/Floating By-Laws shall include provisions in accordance with the Fixed/Floating Successful Bid.  ~~To the extent that New HoldCo is a corporation, pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Fixed/Floating Organizational Documents will prohibit the issuance of non-voting equity securities.~~ After the Effective Date, New HoldCo and the Post-Effective Date Fixed/Floating Debtors may amend and restate the New Fixed/Floating Organizational Documents and New Fixed/Floating By-Laws and other constituent documents as permitted by the laws of applicable states of organization and the New Fixed/Floating Organizational Documents and New Fixed/Floating By-Laws.

**_U._** ~~V.~~ _Board Representation_

1. Fixed/Floating Debtors

New HoldCo shall be managed by the **managing member of** New HoldCo ~~Board which will consist of seven directors, members, or trustees, which will consist of four directors, members, or trustees nominated by the Fixed/Floating Plan Sponsors~~ in accordance with the terms ~~of the Fixed/Floating Successful Bid, and three independent directors, members, or trustees to be nominated by the Fixed/Floating Plan Sponsors and/or by the Third Party Investors in accordance with the terms of the Fixed/Floating Successful Bid.  To the extent known and to~~**and conditions set forth in the New HoldCo limited liability company agreement.  To** the extent required by section 1129(a)(5) of the Bankruptcy Code, the Plan Supplement will ~~list~~**identify** the ~~members~~**managing member** of ~~the~~ New HoldCo ~~Board~~ and the members of the board of directors, members, and trustees of the New HoldCo subsidiaries identified as of the date of the filing thereof.

2. Other Debtors

Post-Effective Date Innkeepers USA Trust **and Post-Effective Date Grand Prix Holdings, LLC** shall be managed by the Post-Effective Date Board.  To the extent known and to the extent required by section 1129(a)(5) of the Bankruptcy Code, the Plan Supplement will list the members of the Post-Effective Date Board and the members of the board of directors, members, and trustees of the subsidiaries of Post-Effective Date Innkeepers USA Trust identified as of the date of the filing thereof.

**_V._** ~~W.~~ _Indemnification Provisions_

Notwithstanding anything herein to the contrary, pursuant to section 365 of the Bankruptcy Code or otherwise, and as of the Effective Date, the Debtors shall assume and assign to the Post-Effective Date Debtors all of the Indemnifications Provisions in place on or before the Effective Date for Claims related to or in connection with any actions, omissions, or transactions occurring before the Effective Date.  Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption and assignment of each of the Indemnification Provisions.  Notwithstanding anything to the contrary contained herein, (i) Confirmation of the Plan shall not discharge, impair, or otherwise modify any obligations assumed and assigned by the foregoing assumption and assignment of the Indemnification Provisions, (ii) each such obligation shall be deemed and treated as an Executory Contract that has been assumed and assigned by the Debtors under the Plan as to which no Proof of Claim need be Filed, and (iii) as of the Effective Date, the Indemnifications Provisions shall be binding and enforceable against the Post-Effective Date Debtors.

K&E 18934861.12

**W.** **Wind Down**

**On and after the Effective Date, Post-Effective Date Innkeepers USA Trust will oversee the Wind Down, and will fund the Wind Down using, among other things, the Chatham Hotel Sale Transaction Purchase Consideration, and shall have the power and authority to take any action necessary to wind down and dissolve the Post-Effective Date Debtors in accordance with the Plan.**

*X.* *Preservation of Rights of Action*

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released (including, for the avoidance of doubt, pursuant to Article **III.B with respect to Class FF5, Article** VIII.C, Article VIII.D, Article VIII.E, **Article VIII.F, Article VIII.G,** and Article VIII.~~F~~**H**), each of the Post-~~=~~Effective Date Debtors, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Post-Effective Date Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Post-Effective Date Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Post-Effective Date Debtors. No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or the Post-Effective Date Debtors, as applicable, will not pursue any and all available Causes of Action against them. Except with respect to Causes of Action as to which the Debtors or the Post-Effective Date Debtors have released any Entity on or prior to the Effective Date (pursuant to any of the release provisions set forth in Article VIII**, Article III.B with respect to Class FF5,** or otherwise), the Debtors or the Post-Effective Date Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Post-Effective Date Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.** **Assumption of Franchise Agreements**

**On the Fixed/Floating Plan Effective Date, the Fixed/Floating Debtors will assume the franchise agreements set forth in the Plan Supplement with respect to the assets of the Fixed/Floating Debtors. On the Remaining Debtor Plan Effective Date, the Debtors that are party to the Chatham APA will assume and assign to Chatham the franchise agreements set forth in the Plan Supplement with respect to the assets of the Debtors that are party to the Chatham APA.**

**B.** ~~A.~~ *Rejection of Executory Contracts and Unexpired Leases*

Except as otherwise provided in the Plan, the Executory Contracts or Unexpired Leases of a Debtor that are not assumed or rejected pursuant to an Order prior to the Effective Date applicable to such Debtor shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts or Unexpired Leases: (1) identified on the list of assumed and assigned Executory Contracts and Unexpired Leases in the Plan Supplement; (2) that are the subject of a motion to assume and assign or reject pending on the Effective Date applicable to such Debtor (in which case such assumption and assignment or rejection and the effective date thereof shall remain subject to a Final Order); or (3) that are subject to a motion to reject with a requested effective date of rejection after the Effective Date applicable to such Debtor. Entry of the Confirmation Order shall constitute an approval of the assumptions and assignment or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan, including the assumption and assignment of the Executory Contracts and Unexpired Leases identified on the list of assumed and assigned Executory Contracts and Unexpired Leases in the Plan Supplement and the rejection of the Executory Contracts and Unexpired Leases identified on the list of rejected Executory Contracts

62

and Unexpired Leases in the Plan Supplement, all pursuant to sections 365 and 1123 of the Bankruptcy Code. Unless otherwise indicated, all assumptions and assignments or rejections of a Debtor's Executory Contracts and Unexpired Leases in the Plan are effective as of the Effective Date applicable to such Debtor. Notwithstanding anything to the contrary in the Plan, the Post-Effective Date Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the lists of Executory Contracts or Unexpired Leases applicable to the Post-Effective Date Debtors identified in this Article V and in the Plan Supplement at any time through and including the later of 30 days after the Effective Date **(or such later date as provided in Article V.C in the event of any objection by a counterparty to an Executory Contract or Unexpired Lease to the amount of any Cure Obligation or other matter relating to the proposed assumption and assignment)**.

**C.** ~~B.~~ *Cure of Defaults for Assumed and Assigned Executory Contracts and Unexpired Leases*

Any Executory Contracts or Unexpired Leases to be **assumed or** assumed and assigned pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by the satisfaction of the Cure Obligations or by an agreed-upon waiver of the Cure Obligations on the Effective Date or as soon as reasonably practicable thereafter or on such other terms as the Post-Effective Date Debtors and the counterparties to each such Executory Contract or Unexpired Lease may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption and assignment or related Cure Obligations must be Filed, served, and actually received by the Debtors by 30 days after the Effective Date of the Joint Plan applicable to the Debtor that is the counterparty to the Executory Contract or Unexpired Lease. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption and assignment of such Executory Contract or Unexpired Lease or such Cure Obligations will be deemed to have assented to such matters and shall be forever barred, estopped, and enjoined from asserting such objection against the Debtors.

In the event of a dispute regarding: (1) the Cure Obligations; (2) the ability of the Post-Effective Date Debtors to provide "adequate assurance of future performance" within the meaning of section 365(b) of the Bankruptcy Code, if applicable, under the Executory Contract or the Unexpired Lease to be assumed and assigned; or (3) any other matter pertaining to assumption and/or assignment, then the applicable Cure Obligations shall be satisfied following the entry of a Final Order resolving the dispute and approving the assumption and assignment of such Executory Contracts or Unexpired Leases or as may be agreed upon the Debtors or the Post-Effective Date Debtors, as applicable, and the counterparty to such Executory Contract or Unexpired Lease; provided that prior to the Effective Date, the Debtors, or the Post-Effective Date Debtors, as applicable, may settle any dispute regarding Cure Obligations without any further notice to any party or any action, order, or approval of the Bankruptcy Court. The Debtors or the Post-Effective Date Debtors, as applicable, reserve the right to reject, or nullify the assumption and assignment of, any Executory Contract or Unexpired Lease no later than 30 days after a Final Order determining the Cure Obligations, any request for adequate assurance of future performance required to assume and assign such Executory Contract or Unexpired Lease, and any other matter pertaining to assumption and/or assignment.

Assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Obligations, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption and/or assignment. Anything in the Schedules and any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**D.** ~~C.~~ *Claims Based on Rejection of Executory Contracts and Unexpired Leases*

Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases pursuant to the Plan or otherwise, must be Filed with the Notice and Claims Agent no later than the later of (a) 30 days after the effective date of rejection of such Executory

Contract or Unexpired Lease and (b) 30 days after the Effective Date of the Joint Plan applicable to the Debtor whom the Claim is against.

Any Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed as set forth in the paragraph above shall not (a) be treated as a creditor with respect to such Claim, (b) be permitted to vote to accept or reject the Plan, or (c) participate in any distribution in the Chapter 11 Cases on account of such Claim, and such Claim shall be deemed fully satisfied, released, settled and compromised, and be subject to the permanent injunction set forth in Article VIII.J, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.

**E.** ~~D.~~ *Pre-existing Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection or repudiation of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of pre-existing obligations owed to the Debtors under such contracts or leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Post-Effective Date Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased, or services previously received, by the contracting Debtors or the Post-Effective Date Debtors, as applicable, from counterparties to rejected or repudiated Executory Contracts or Unexpired Leases.

**F.** ~~E.~~ *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each assumed and assigned Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**G.** ~~F.~~ *Reservation of Rights*

Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Post-Effective Date Debtors have any liability thereunder. In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption and assignment or rejection, the Debtors or the Post-Effective Date Debtors, as applicable, shall have 90 days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided herein.

**ARTICLE VI.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

*A.      Timing and Calculation of Amounts to Be Distributed*

Except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim or Interest is not an Allowed Claim or Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class from the Disbursing Agent. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business

64

Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII. Except as otherwise provided herein, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for herein, regardless of whether such distributions are delivered on or at any time after the Effective Date. Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim or Allowed Interest shall, on account of such Allowed Claim or Allowed Interest, receive a distribution in excess of the Allowed amount of such Claim or Interest plus any postpetition interest on such Claim or Interest payable in accordance with the Plan.

B.      *Distributions Generally; Disbursing Agent*

All distributions under the Plan that are to be made on the Effective Date shall be made by the Debtors as Disbursing Agent. All other distributions under the Plan shall be made after the Effective Date by the Post-Effective Date Debtors as Disbursing Agent or such other Entity designated by the ~~Post-Effective Date Debtors as a~~ Disbursing Agent. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

C.      *Rights and Powers of Disbursing Agent*

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to, as applicable: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated under the Plan; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash ~~by the Post-Effective Date Debtors~~**using, among other things, the Chatham Hotel Sale Transaction Purchase Consideration,** without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be deemed to have been made on the Effective Date.

2.      Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Debtors or the Post-Effective Date Debtors, as applicable, on the one hand, and the Holder of a Disputed Claim, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until all Disputed Claims held by the Holder of such Disputed Claim have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

*E.*    *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.    Delivery of Distributions in General

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; provided that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; and provided further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.  If a Holder holds more than one Claim in any one Class, all Claims of the Holder will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

The Five Mile DIP Agent shall be deemed to be the Holder of all Five Mile DIP Claims for purposes of distributions to be made hereunder, and the Disbursing Agent shall make all distributions on account of such Five Mile DIP Claims to or on behalf of the Five Mile DIP Agent. The Five Mile DIP Agent shall hold or direct such distributions for the benefit of the Holders of Allowed Five Mile DIP Claims.  The Five Mile DIP Agent shall arrange to deliver such distributions to or on behalf of such Holders of Allowed Five Mile DIP Claims; provided that the Five Mile DIP Agent shall retain all rights as administrative agent under the Five Mile DIP Agreement in connection with delivery of distributions to Five Mile DIP Lenders; provided further that the Debtors' obligations to make distributions in accordance with Article II.C shall be deemed satisfied upon delivery of distributions to the Five Mile DIP Agent.

The Lehman DIP Lender shall be deemed to be the Holder of all Lehman DIP Claims for purposes of distributions to be made hereunder, if any, and the Disbursing Agent shall make all distributions on account of such Lehman DIP Claims to or on behalf of the Lehman DIP Lender. The Lehman DIP Lender shall hold or direct such distributions for the benefit of the Holders of Allowed Lehman DIP Claims.  The Lehman DIP Lender shall arrange to deliver such distributions to or on behalf of such Holders of Allowed Lehman DIP Claims; provided that the Lehman DIP Lender shall retain all rights as administrative agent under the Lehman DIP Agreement in connection with delivery of distributions to Lehman DIP Lender; provided further that the Debtors' obligations to make distributions in accordance with Article II.D shall be deemed satisfied upon delivery of distributions to the Lehman DIP Lender.

Midland shall be deemed to be the Holder of all Fixed Rate Pool Mortgage Loan Claims for purposes of distributions to be made hereunder, if any, and the Disbursing Agent shall make all distributions on account of such Fixed Rate Pool Mortgage Loan Claims to or on behalf of the Special Servicer.  Midland shall hold or direct such distributions for the benefit of the Holders of Allowed Fixed Rate Pool Mortgage Loan Claims.  Midland shall arrange to deliver such distributions to or on behalf of such Holders of Allowed Fixed Rate Pool Mortgage Loan Claims; provided that that the Debtors' obligations to make such distributions in accordance with Article III.B shall be deemed satisfied upon delivery of such distributions to Midland.

2.    Minimum; De Minimis Distributions

No Cash payment of less than $50.00, in the reasonable discretion of the Disbursing Agent, shall be made to a Holder of an Allowed Claim or Allowed Interest on account of such Allowed Claim or Allowed Interest.

3.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the applicable Post-Effective Date Debtor (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

K&E 18934861.12

4.  <u>Manner of Payment Pursuant to the Plan</u>

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Disbursing Agent by check or by wire transfer.

F.  *Compliance with Tax Requirements/Allocations*

In connection with the Plan, to the extent applicable, the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

G.  *Claims Paid or Payable by Third Parties*

1.  <u>Claims Paid by Third Parties</u>

The Debtors on or prior to the Effective Date or the Post-Effective Date Debtors after the Effective Date, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Post-Effective Date Debtors on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Post-Effective Date Debtors, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the Allowed amount of such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Post-Effective Date Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.  <u>Claims Payable by Third Parties</u>

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.  <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors, the Post-Effective Date Debtors, or any other Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

K&E 18934861.12

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.      *Resolution of Disputed Claims*

1.      Allowance of Claims

On or after the Effective Date, ~~each of the Post-Effective Date Debtors~~**the Disbursing Agent** shall have and shall retain any and all rights and defenses that the applicable Debtor had with respect to any Claim, except with respect to any Claim deemed Allowed as of the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim.

2.      Prosecution of Objections to Claims

The ~~Debtors or the Post-Effective Date Debtors, as applicable,~~**Disbursing Agent** shall have the exclusive authority to File objections to Claims, settle, compromise, withdraw or litigate to judgment objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise.  From and after the Effective Date, the ~~Post-Effective Date Debtors~~**Disbursing Agent** may settle or compromise any Disputed Claim without any further notice to or action, order, or approval of the Bankruptcy Court.  From and after the Effective Date, the ~~Post-Effective Date Debtors~~**Disbursing Agent** shall have the sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Time to File Objections to Claims

Any objections to Claims shall be filed on or before the Claims Objection Bar Date.

4.      Claims Estimation

The ~~Debtors and the Post-Effective Date Debtors, as applicable,~~**Disbursing Agent** may, at any time, and shall have the exclusive authority to, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including section 502(c) of the Bankruptcy Code, regardless of whether the Debtors or the Post-Effective Date Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register but that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of distributions, and the ~~Debtors or the Post-Effective Date Debtors, as applicable,~~**Disbursing Agent** may elect to pursue additional objections to the ultimate distribution on such Claim.  If the estimated amount constitutes a maximum limitation on such Claim, the ~~Debtors or the Post-Effective Date Debtors, as applicable,~~**Disbursing Agent** may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims

68

may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

     5.    Expungement or Adjustment to Claims Without Objection

Any Claim that has been paid, satisfied, or superseded may be expunged on the Claims Register by the Notice and Claims Agent at the direction of the Debtors or the Post-Effective Date Debtors, as applicable, and any Claim that has been amended may be adjusted thereon by the Debtors or the Post-Effective Date Debtors, in all cases without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

*B.    Disallowance of Claims*

All Claims or Interests of any Entity from which property is sought by the Debtors or the Post-Effective Date Debtors under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtors or the Post-Effective Date Debtors allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the ~~Debtors or the Post-Effective Date Debtors, as applicable,~~ **Disbursing Agent** on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (2) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS PROVIDED FOR UNDER THE PLAN OR OTHERWISE AGREED TO BY THE ~~DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, AS APPLICABLE,~~DISBURSING AGENT ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE (THAT DO NOT AMEND TIMELY FILED CLAIMS) SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE OF THE JOINT PLAN OF THE DEBTOR AGAINST WHOM SUCH CLAIM IS ASSERTED WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.**

*C.    Amendments to Claims*

On or after the Effective Date, except as provided in Article II.A, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or the ~~Post-Effective Date Debtors~~**Disbursing Agent**, and any such new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

**ARTICLE VIII.**
**SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

*A.    Compromise and Settlement of Claims, Interests, and Controversies*

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases, and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Interests, and controversies resolved pursuant to the Plan or relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Allowed Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims and Interests and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Post-Effective Date Debtors may compromise and settle Claims

69

against the Debtors and their Estates and Causes of Action against other Entities**; provided that, with respect to the C6 and C7 Trusts and the holders of certificates in the C6 and C7 Trusts, the Plan does not compromise or settle the Claims, interests, and controversies of the C6 and C7 Trusts or the holders of certificates in the C6 and C7 Trusts against Midland, the C6 and C7 Trusts, and Five Mile, whether arising under the applicable pooling and servicing agreement or co-lender agreement**.

### B. Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors or the Post-Effective Date Debtors, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto. Notwithstanding anything herein to the contrary, and as provided in Article III.B of the Plan, no Holder of a Section 510(b) Claim shall receive any distribution on account of such Section 510(b) Claim, and all Section 510(b) Claims shall be extinguished.

### C. Midland Release

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE OF THE PLAN AS APPLICABLE TO THE FIXED/FLOATING DEBTORS AND EFFECTIVE AS OF THE EFFECTIVE DATE OF THE PLAN AS APPLICABLE TO THE FIXED/FLOATING DEBTORS (TO THE EXTENT SET FORTH HEREIN), FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY APOLLO, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, MIDLAND, ON BEHALF OF THE C6 AND C7 TRUSTS, (I) DISCHARGES AND RELEASES AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO APOLLO (AND APOLLO SHALL BE DEEMED FULLY RELEASED AND DISCHARGED BY MIDLAND) AND ITS RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES WHATSOEVER WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF THE EFFECTIVE DATE IN LAW, EQUITY OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE APOLLO GUARANTY; AND (II) IF AN ACTION REMAINS PENDING IN THE STATE COURTS OF NEW YORK OR ELSEWHERE, MIDLAND SHALL DISMISS ITS CLAIMS AGAINST APOLLO WITH PREJUDICE; PROVIDED THAT THE FOREGOING "**MIDLAND RELEASE**" IS CONDITIONED ON THE OCCURRENCE OF THE EFFECTIVE DATE OF THE PLAN AS APPLICABLE TO THE FIXED/FLOATING DEBTORS AND THE RECEIPT BY MIDLAND OF THE SPECIAL SERVICER RELEASE PAYMENT, THE EMBODIMENT OF THE FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE (AS DESCRIBED IN ARTICLE VIII.E) IN THE CONFIRMATION ORDER ENTERED BY THE BANKRUPTCY COURT THAT HAS BECOME A FINAL ORDER; PROVIDED FURTHER THAT THE MIDLAND RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF MIDLAND: (1) ARISING UNDER ANY AGREEMENTS ENTERED INTO PURSUANT TO THE PLAN; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS.

ENTRY OF THE CONFIRMATION ORDER SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE MIDLAND RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN AND FURTHER SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE MIDLAND RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY APOLLO; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS AND CAUSES OF ACTION RELEASED BY THE MIDLAND RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS IN THE DEBTORS; (4) FAIR, EQUITABLE,

K&E 18934861.12

AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO MIDLAND ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE MIDLAND RELEASE.

D.     *Apollo Release*

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE OF THE PLAN AS APPLICABLE TO THE FIXED/FLOATING DEBTORS AND EFFECTIVE AS OF SUCH EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED TO APOLLO, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, APOLLO, ON ACCOUNT OF ITS HOLDINGS OF COMMON SHARES OR OTHER EQUITY IN THE DEBTORS OR OTHERWISE DISCHARGES AND RELEASES AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO THE FIXED/FLOATING RELEASING PARTIES (AND THE FIXED/FLOATING RELEASING PARTIES SHALL BE DEEMED FULLY RELEASED AND DISCHARGED BY APOLLO) AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES WHATSOEVER WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF SUCH EFFECTIVE DATE IN LAW, EQUITY OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE; <u>PROVIDED</u> <u>THAT</u> THE FOREGOING "**APOLLO RELEASE**" SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF THE RELEASING PARTIES: (1) ARISING UNDER ANY AGREEMENTS ENTERED INTO PURSUANT TO THE PLAN; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS.

ENTRY OF THE CONFIRMATION ORDER <u>FOR THE FIXED/FLOATING PLAN</u> SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE APOLLO RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN <u>AND FURTHER</u> SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE APOLLO RELEASE IS:  (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED TO APOLLO; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS AND CAUSES OF ACTION RELEASED BY THE APOLLO RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AND INTERESTS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO APOLLO ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE APOLLO RELEASE.

E.     *Fixed/Floating Debtors' Plan General Release*

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE OF THE PLAN AS APPLICABLE TO THE FIXED/FLOATING DEBTORS AND EFFECTIVE AS OF SUCH EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE FIXED/FLOATING RELEASING PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE FIXED/FLOATING RELEASING PARTIES, TO THE MAXIMUM EXTENT OF APPLICABLE LAW, DISCHARGE AND RELEASE AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH OF THE OTHER FIXED/FLOATING RELEASING PARTIES (AND EACH OF THE OTHER FIXED/FLOATING RELEASING PARTIES SHALL BE DEEMED FULLY RELEASED AND DISCHARGED BY THE FIXED/FLOATING RELEASING PARTIES) AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, LIABILITIES, AND ALL PREFERENCES UNDER SECTION 547 OF THE BANKRUPTCY CODE AND, TO THE EXTENT RELATED THERETO, SECTION 550 OF THE BANKRUPTCY CODE WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS) WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF SUCH EFFECTIVE DATE IN LAW, EQUITY OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL

K&E 18934861.12

OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE TRANSACTIONS CONTEMPLATED BY THE PLAN, THE CHAPTER 11 CASES, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE FIXED/FLOATING DEBTORS OR THE POST-EFFECTIVE DATE FIXED/FLOATING DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY OF THE DEBTORS AND ANY OF THE OTHER FIXED/FLOATING RELEASING PARTIES, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, THE COMMITMENT LETTER, THE ~~FIVE MILE/LEHMAN COMMITMENT, THE FIVE MILE~~**NEW HOLDCO**/MIDLAND COMMITMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATED TO THE CHAPTER 11 CASES, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE SUCH EFFECTIVE DATE, INCLUDING THOSE THAT ANY OF THE FIXED/FLOATING RELEASING PARTIES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE FIXED/FLOATING RELEASING PARTIES; PROVIDED THAT IN CONNECTION WITH THE FOREGOING FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE, THE VALIDITY, ENFORCEABILITY, AND PERFECTION, IN ALL RESPECTS, OF THE LIENS, CLAIMS, INTERESTS, MORTGAGES, AND ENCUMBRANCES OF THE FIXED RATE POOL MORTGAGE LOAN AGREEMENT AND THE C6 AND C7 TRUSTS ARE HEREBY CONFIRMED AND ADJUDICATED BY THE BANKRUPTCY COURT; PROVIDED FURTHER THAT ~~ISLAND HOSPITALITY MANAGEMENT, INC. SHALL NOT BE ENTITLED TO THE BENEFITS OF~~ *THE FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE* ~~UNLESS IT REASONABLY COOPERATES WITH THE FIXED/FLOATING PLAN SPONSORS, THE FIXED/FLOATING DEBTORS, NEW HOLDCO, AND ANY NEW MANAGER OF THE FIXED/FLOATING DEBTORS' PROPERTIES; PROVIDED FURTHER THAT~~ THE FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF THE FIXED/FLOATING RELEASING PARTIES: (1) ARISING UNDER ANY AGREEMENTS ENTERED INTO PURSUANT TO THE PLAN; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS; PROVIDED FURTHER THAT (1) THE RELEASES OF APOLLO SET FORTH IN THE MIDLAND RELEASE AND THE FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE AND THE STIPULATION OF DISCONTINUANCE OF THE LITIGATION RELATED TO THE APOLLO GUARANTY SET FORTH IN THE MIDLAND RELEASE AND (2) THE WAIVERS AND RELEASES TO BE GIVEN BY APOLLO SET FORTH IN THE APOLLO RELEASE AND THE FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE SHALL NOT BE EFFECTIVE UNTIL MIDLAND HAS RECEIVED THE SPECIAL SERVICER RELEASE PAYMENT AND THE OCCURRENCE OF SUCH EFFECTIVE DATE; PROVIDED FURTHER THAT THE EFFECTIVENESS OF THIS FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE IS CONDITIONED ON THE CONFIRMATION AND CONSUMMATION OF THE FIXED/FLOATING PLAN; PROVIDED FURTHER THAT ANY CLAIMS THAT THE FIXED/FLOATING RELEASING PARTIES MAY HAVE WITH RESPECT TO THE FUNDS IN THE LP BANK ACCOUNT ARE NOT SUBJECT TO THE FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE**; PROVIDED FURTHER THAT, NEITHER** *THE FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE* **OR ANYTHING ELSE SET FORTH IN THE PLAN OR IN THE PLAN SUPPLEMENT SHALL RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION AND LIABILITIES OF THE C6 AND C7 TRUSTS, THE HOLDERS OF CERTIFICATES IN THE C6 AND C7 TRUSTS, OR LNR PARTNERS, LLC, WHETHER ARISING UNDER THE APPLICABLE POOLING AND SERVICING AGREEMENT OR CO-LENDER AGREEMENT AGAINST THE C6 AND C7 TRUSTS, MIDLAND, FIVE MILE, CRES, OR PRESIDIO OR ANY OF THE FOREGOING ENTITIES' RESPECTIVE PREDECESSORS, SUCCESSORS AND ASSIGNS, SHAREHOLDERS, AFFILIATES, SUBSIDIARIES, PRINCIPALS, EMPLOYEES, AGENTS, OFFICERS, DIRECTORS, TRUSTEES, MEMBERS, OR PROFESSIONALS**.

ENTRY OF THE CONFIRMATION ORDER **FOR THE FIXED/FLOATING PLAN** SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF

THE FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN AND FURTHER SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE FIXED/FLOATING RELEASING PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS AND CAUSES OF ACTION RELEASED BY THE FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE FIXED/FLOATING DEBTORS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO THE FIXED/FLOATING RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE FIXED/FLOATING DEBTORS' PLAN GENERAL RELEASE.

F.      *Anaheim Hotel Debtors' Plan General Release*

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE OF THE PLAN AS APPLICABLE TO THE ANAHEIM HOTEL DEBTORS AND EFFECTIVE AS OF SUCH EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE ANAHEIM HOTEL RELEASING PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE ANAHEIM HOTEL RELEASING PARTIES, TO THE MAXIMUM EXTENT OF APPLICABLE LAW, DISCHARGE AND RELEASE AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH OF THE OTHER ANAHEIM HOTEL RELEASING PARTIES (AND EACH OF THE OTHER ANAHEIM HOTEL RELEASING PARTIES SHALL BE DEEMED FULLY RELEASED AND DISCHARGED BY THE ANAHEIM HOTEL RELEASING PARTIES) AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, LIABILITIES, AND ALL PREFERENCES UNDER SECTION 547 OF THE BANKRUPTCY CODE AND, TO THE EXTENT RELATED THERETO, SECTION 550 OF THE BANKRUPTCY CODE WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS) WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF SUCH EFFECTIVE DATE IN LAW, EQUITY OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE TRANSACTIONS CONTEMPLATED BY THE PLAN, THE CHAPTER 11 CASES, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE ANAHEIM HOTEL DEBTORS OR THE POST-EFFECTIVE DATE ANAHEIM HOTEL DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY OF THE DEBTORS AND ANY OF THE OTHER ANAHEIM HOTEL RELEASING PARTIES, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, INSTRUMENTS, OR OTHER DOCUMENTS RELATED TO THE CHAPTER 11 CASES, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE SUCH EFFECTIVE DATE, INCLUDING THOSE THAT ANY OF THE ANAHEIM HOTEL RELEASING PARTIES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE ANAHEIM HOTEL RELEASING PARTIES; PROVIDED THAT THE ANAHEIM HOTEL GENERAL RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF THE ANAHEIM HOTEL RELEASING PARTIES: (1) ARISING UNDER ANY AGREEMENTS ENTERED INTO PURSUANT TO THE PLAN; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS; PROVIDED FURTHER THAT THE EFFECTIVENESS OF THIS ANAHEIM HOTEL GENERAL RELEASE IS NOT CONDITIONED ON THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS IT APPLIES TO THE DEBTORS OTHER THAN THE ANAHEIM HOTEL DEBTORS; PROVIDED FURTHER THAT ANY CLAIMS THAT THE ANAHEIM HOTEL RELEASING PARTIES MAY HAVE WITH RESPECT TO THE FUNDS IN THE

K&E 18934861.12

LP BANK ACCOUNT ARE NOT SUBJECT TO THE ANAHEIM HOTEL DEBTORS' PLAN GENERAL RELEASE.

ENTRY OF THE CONFIRMATION ORDER FOR THE ANAHEIM PLAN SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE ANAHEIM HOTEL GENERAL RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN AND FURTHER SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE ANAHEIM HOTEL GENERAL RELEASE IS: (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE ANAHEIM HOTEL RELEASING PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS AND CAUSES OF ACTION RELEASED BY THE ANAHEIM HOTEL GENERAL RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE ANAHEIM HOTEL DEBTORS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO THE ANAHEIM HOTEL RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE ANAHEIM HOTEL GENERAL RELEASE.

G.      *Ontario Hotel Debtors' Plan General Release*

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE OF THE PLAN AS APPLICABLE TO THE ONTARIO HOTEL DEBTORS AND EFFECTIVE AS OF SUCH EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE ONTARIO HOTEL RELEASING PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE ONTARIO HOTEL RELEASING PARTIES, TO THE MAXIMUM EXTENT OF APPLICABLE LAW, DISCHARGE AND RELEASE AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH OF THE OTHER ONTARIO HOTEL RELEASING PARTIES (AND EACH OF THE OTHER ONTARIO HOTEL RELEASING PARTIES SHALL BE DEEMED FULLY RELEASED AND DISCHARGED BY THE ONTARIO HOTEL RELEASING PARTIES) AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, LIABILITIES, AND ALL PREFERENCES UNDER SECTION 547 OF THE BANKRUPTCY CODE AND, TO THE EXTENT RELATED THERETO, SECTION 550 OF THE BANKRUPTCY CODE WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS) WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF SUCH EFFECTIVE DATE IN LAW, EQUITY OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE TRANSACTIONS CONTEMPLATED BY THE PLAN, THE CHAPTER 11 CASES, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE ONTARIO HOTEL DEBTORS OR THE POST-EFFECTIVE DATE ONTARIO HOTEL DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY OF THE DEBTORS AND ANY OF THE OTHER ONTARIO HOTEL RELEASING PARTIES, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, INSTRUMENTS, OR OTHER DOCUMENTS RELATED TO THE CHAPTER 11 CASES, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE SUCH EFFECTIVE DATE, INCLUDING THOSE THAT ANY OF THE ONTARIO HOTEL RELEASING PARTIES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE ONTARIO HOTEL RELEASING PARTIES; PROVIDED THAT THE ONTARIO HOTEL GENERAL RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF THE ONTARIO HOTEL RELEASING PARTIES: (1) ARISING UNDER ANY AGREEMENTS ENTERED INTO PURSUANT TO THE PLAN; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS; PROVIDED

K&E 18934861.12

FURTHER <u>THAT</u> THE EFFECTIVENESS OF THIS ONTARIO HOTEL GENERAL RELEASE IS NOT CONDITIONED ON THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS IT APPLIES TO THE DEBTORS OTHER THAN THE ONTARIO HOTEL DEBTORS; <u>PROVIDED</u> <u>FURTHER</u> <u>THAT</u> ANY CLAIMS THAT THE ONTARIO HOTEL RELEASING PARTIES MAY HAVE WITH RESPECT TO THE FUNDS IN THE LP BANK ACCOUNT ARE NOT SUBJECT TO THE ONTARIO HOTEL DEBTORS' PLAN GENERAL RELEASE.

ENTRY OF THE CONFIRMATION ORDER SHALL <u>**FOR THE ONTARIO PLAN**</u> CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE ONTARIO HOTEL GENERAL RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN <u>AND</u> <u>FURTHER</u> SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE ONTARIO HOTEL GENERAL RELEASE IS:  (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE ONTARIO HOTEL RELEASING PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS AND CAUSES OF ACTION RELEASED BY THE ONTARIO HOTEL GENERAL RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE ONTARIO HOTEL DEBTORS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO THE ONTARIO HOTEL RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE ONTARIO HOTEL GENERAL RELEASE.

H.      *Re~~org~~**ma**i~~niz~~ing Debtors' Plan General Release*

NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, ON THE EFFECTIVE DATE OF THE PLAN AS APPLICABLE TO THE RE~~ORG~~**MA**I~~NIZ~~ING DEBTORS AND EFFECTIVE AS OF SUCH EFFECTIVE DATE, FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE ~~REORGANIZING~~**REMAINING DEBTOR** RELEASING PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE ~~REORGANIZING~~**REMAINING DEBTOR** RELEASING PARTIES, TO THE MAXIMUM EXTENT OF APPLICABLE LAW, DISCHARGE AND RELEASE AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH OF THE OTHER ~~REORGANIZING~~**REMAINING DEBTOR** RELEASING PARTIES (AND EACH OF THE OTHER ~~REORGANIZING~~**REMAINING DEBTOR** RELEASING PARTIES SHALL BE DEEMED FULLY RELEASED AND DISCHARGED BY THE ~~REORGANIZING~~**REMAINING DEBTOR** RELEASING PARTIES) AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, LIABILITIES, AND ALL PREFERENCES UNDER SECTION 547 OF THE BANKRUPTCY CODE AND, TO THE EXTENT RELATED THERETO, SECTION 550 OF THE BANKRUPTCY CODE WHATSOEVER (INCLUDING ANY DERIVATIVE CLAIMS ASSERTED ON BEHALF OF THE DEBTORS) WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF SUCH EFFECTIVE DATE IN LAW, EQUITY OR OTHERWISE, WHETHER FOR TORT, FRAUD, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTORS OR THE POST-EFFECTIVE DATE DEBTORS, THE TRANSACTIONS CONTEMPLATED BY THE PLAN, THE CHAPTER 11 CASES, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE RE~~ORG~~**MA**I~~NIZ~~ING DEBTORS OR THE POST-EFFECTIVE DATE RE~~ORG~~**MA**I~~NIZ~~ING DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY OF THE DEBTORS AND ANY OF THE OTHER ~~REORGANIZING~~**REMAINING DEBTOR** RELEASING PARTIES, THE RESTRUCTURING OF CLAIMS AND INTERESTS PRIOR TO OR IN THE CHAPTER 11 CASES, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, THE PLAN SUPPLEMENT, INSTRUMENTS, OR OTHER DOCUMENTS RELATED TO THE CHAPTER 11 CASES, UPON ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE SUCH EFFECTIVE DATE, INCLUDING THOSE THAT ANY OF THE ~~REORGANIZING~~**REMAINING DEBTOR** RELEASING PARTIES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY

75

ENTITLED TO ASSERT ON BEHALF OF ANY OF THE ~~REORGANIZING~~**REMAINING DEBTOR** RELEASING PARTIES; <u>PROVIDED</u> <u>THAT</u> THE ~~REORGANIZING~~**REMAINING DEBTORS' PLAN** GENERAL RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE ANY CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, AND LIABILITIES OF THE ~~REORGANIZING~~**REMAINING DEBTOR** RELEASING PARTIES:  (1) ARISING UNDER ANY AGREEMENTS ENTERED INTO PURSUANT TO THE PLAN; OR (2) EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN, THE PLAN SUPPLEMENT, OR RELATED DOCUMENTS; <u>PROVIDED FURTHER</u> <u>THAT</u> THE EFFECTIVENESS OF THIS ~~REORGANIZING~~**REMAINING DEBTORS' PLAN** GENERAL RELEASE IS NOT CONDITIONED ON THE CONFIRMATION AND CONSUMMATION OF THE PLAN AS IT APPLIES TO THE DEBTORS OTHER THAN THE RE~~ORG~~**MA**I~~NIZ~~ING DEBTORS; <u>PROVIDED FURTHER</u> <u>THAT</u> ANY CLAIMS THAT THE ~~REORGANIZING~~**REMAINING DEBTOR** RELEASING PARTIES MAY HAVE WITH RESPECT TO THE FUNDS IN THE LP BANK ACCOUNT ARE NOT SUBJECT TO THE RE~~ORG~~**MA**I~~NIZ~~ING DEBTORS' PLAN GENERAL RELEASE**; PROVIDED FURTHER THAT THE HOLDER OF GARDEN GROVE HOTEL MORTGAGE LOAN CLAIMS, SAN ANTONIO HOTEL MORTGAGE LOAN CLAIMS, SAN DIEGO HOTEL MORTGAGE LOAN CLAIMS, TYSONS CORNER HOTEL MORTGAGE LOAN CLAIMS, AND WASHINGTON DC HOTEL MORTGAGE LOAN CLAIMS WAIVE ALL RIGHTS THEY MAY HAVE TO THE FUNDS IN THE LP BANK ACCOUNT**.

ENTRY OF THE CONFIRMATION ORDER<u> FOR THE REMAINING DEBTOR PLAN</u> SHALL CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL, PURSUANT TO BANKRUPTCY RULE 9019, OF THE ~~REORGANIZING~~**REMAINING DEBTORS' PLAN** GENERAL RELEASE, WHICH INCLUDES BY REFERENCE EACH OF THE RELATED PROVISIONS AND DEFINITIONS CONTAINED HEREIN <u>AND FURTHER</u> SHALL CONSTITUTE THE BANKRUPTCY COURT'S FINDING THAT THE ~~REORGANIZING~~**REMAINING DEBTORS' PLAN** GENERAL RELEASE IS:  (1) IN EXCHANGE FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE ~~REORGANIZING~~**REMAINING DEBTOR** RELEASING PARTIES; (2) A GOOD FAITH SETTLEMENT AND COMPROMISE OF THE CLAIMS AND CAUSES OF ACTION RELEASED BY THE ~~REORGANIZING~~**REMAINING DEBTORS' PLAN** GENERAL RELEASE; (3) IN THE BEST INTERESTS OF THE DEBTORS AND ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE RE~~ORG~~**MA**I~~NIZ~~ING DEBTORS; (4) FAIR, EQUITABLE, AND REASONABLE; (5) GIVEN AND MADE AFTER DUE NOTICE AND OPPORTUNITY FOR HEARING; AND (6) A BAR TO THE ~~REORGANIZING~~**REMAINING DEBTOR** RELEASING PARTIES ASSERTING ANY CLAIM OR CAUSE OF ACTION RELEASED PURSUANT TO THE ~~REORGANIZING~~**REMAINING DEBTORS' PLAN** GENERAL RELEASE.

*I.*     *Exculpation*

The Exculpated Parties shall neither have, nor incur, any liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, implementing, administering, confirming, or effecting the Consummation of the Plan, the Commitment Letter, the Disclosure Statement, the issuance, distribution, and/or sale of any of the New HoldCo Interests or any other Security, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors; <u>provided</u> <u>that</u> the foregoing "Exculpation" shall have no effect on the liability of any of the Exculpated Parties that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; <u>provided</u>, <u>further</u>, <u>that</u> each ~~Global Releasing~~**Exculpated** Party shall be entitled to rely upon the advice of counsel concerning his, her, or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement**; provided, further, that  this provision shall not exculpate Midland or Five Mile for or from any liability to the C6 and C7 Trusts or any holders of certificates in the C6 or C7 Trusts; provided, further, that this provision shall not operate to expand the scope of the Floating/Fixed Debtors' Plan General Release**.

*J.*     *Injunction*

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, CAUSES OF ACTION, OR

K&E 18934861.12

LIABILITIES THAT: (1) ARE SUBJECT TO COMPROMISE AND SETTLEMENT PURSUANT TO THE TERMS OF THE PLAN; (2) HAVE BEEN RELEASED PURSUANT TO ARTICLE VIII.C, ARTICLE VIII.D, ARTICLE VIII.E, ARTICLE VIII.F, ARTICLE VIII.G, OR ARTICLE VIII.H (5) ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE VIII.I; OR (6) ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, CAUSES OF ACTIONS, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF ANY ENTITY, DIRECTLY OR INDIRECTLY, SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES UNLESS SUCH HOLDER HAS FILED A MOTION REQUESTING THE RIGHT TO PERFORM SUCH SETOFF, SUBROGATION, OR RECOUPMENT ON OR BEFORE THE CONFIRMATION DATE, AND NOTWITHSTANDING ANY INDICATION IN A PROOF OF CLAIM OR INTEREST OR OTHERWISE THAT SUCH HOLDER ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF PURSUANT TO SECTION 553 OF THE BANKRUPTCY CODE OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED (OR THE PROPERTY OR ESTATE OF THE DEBTORS, THE POST-EFFECTIVE DATE DEBTORS, OR ANY ENTITY SO RELEASED OR EXCULPATED) ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, COMPROMISED, OR EXCULPATED CLAIMS, INTERESTS, CAUSES OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN; PROVIDED THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE AN ENTITY FROM OBTAINING BENEFITS DIRECTLY AND EXPRESSLY PROVIDED TO SUCH ENTITY PURSUANT TO THE TERMS OF THE PLAN; PROVIDED FURTHER THAT NOTHING CONTAINED HEREIN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.

K.     *Setoffs*

Except as otherwise provided herein, the Debtors or the Post-Effective Date Debtors, as applicable, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Allowed Interest and the distributions to be made pursuant to the Plan on account of such Allowed Claim or Allowed Interest (before any distribution is made on account of such Allowed Claim or Allowed Interest), any Claims, rights, and Causes of Action of any nature that such Debtor or the Post-Effective Date Debtors, as applicable, may hold against the Holder of such

K&E 18934861.12

Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim or Interest pursuant to the Plan shall constitute a waiver or release by the Post-Effective Date Debtors of any such Claims, rights, and Causes of Action that the Post-Effective Date Debtors may possess against such Holder.

## ARTICLE IX.
## SEVERABILITY OF PLAN AND CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

A.      *Severability of the Plan*

The Plan contemplates four separate joint plans of reorganization that together provide for the resolution of all Claims against and Interests in each of the 92 Debtors in the Chapter 11 Cases:  (a) the Fixed/Floating Plan; (b) the Anaheim Plan; (c) the Ontario Plan; and (d) the Reorgmainizing Debtor Plan.  The Fixed/Floating Plan, the Anaheim Plan, the Ontario Plan, and the Reorgmainizing Debtor Plan are severable from each other and the Confirmation and Consummation of any one of the four joint plans are not conditioned on the Confirmation and Consummation of any of the other three joint plans.

B.      *Condition Precedent to Confirmation of the Fixed/Floating Plan*

It shall be a condition to Confirmation of the Fixed/Floating Plan that the Confirmation Order, the Fixed/Floating Plan, and the Plan Supplement, along with any amendments, modifications, or supplements to any of the foregoing, shall be acceptable in all respects to the Fixed/Floating Plan Sponsors and Midland in each of their reasonable discretion in accordance with the Fixed/Floating Successful Bid.

C.      *Conditions Precedent to the Effective Date of Each of the Joint Plans*

It shall be a condition to Consummation of each of the Joints Plans that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.D:

1.      Conditions Applicable to AllEach of the Joint Plans

(a)      The Bankruptcy Court shall have entered the Confirmation Order and it shall have become a Final Order; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

(b)      All documents and agreements necessary to implement the Joint Plan (including, without limitation, the Commitment Letter and the New HoldCo/Midland Commitment Letter for the Fixed/Floating Plan) shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

(c)      All governmental and material third party approvals and consents, including Bankruptcy Court approval, necessary in connection with the transactions contemplated by the Joint Plan shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on such transactions;

(d)      The Professional Fee Escrow Account shall have been funded with Cash in the amount of the aggregate Professional Fee Reserve Amount for all Professionals; and

78

(e) The "tail policy" for current and former trustees, directors, and officers referenced in Article IV.~~T~~S shall have been purchased.

2. Additional Conditions Applicable Only to the Fixed/Floating Plan

(a) The **"Outside Date" under the Commitment Letter shall not have occurred.**

**(b)** ~~The~~ Special Servicer Payment~~, and~~ the Special Service Release Payment~~, and the *Apollo Unsecured Claim Fund Payment shall have been made*~~ **shall have been made**.

**(c)** ~~The~~ *Apollo Unsecured Claim Fund Payment shall have been made*

**(d)** ~~(b)~~ The ~~Fixed/Floating Successful Bid~~**Commitment Letter** has not been terminated.

**(e)** ~~(c) The Plan as applicable to~~**The Confirmation Order,** the Fixed/Floating ~~Debtors~~**Plan,** and the Plan Supplement~~as applicable to the Fixed/Floating Debtors, including~~**, along with** any amendments, modifications, or supplements to any of the foregoing shall be~~in form and substance reasonably~~ acceptable **in all respects** to the ~~Debtors, the~~**Fixed/Floating** Plan Sponsors~~,~~ and Midland ~~to the extent required by the terms of the Fixed/Floating Successful Bid~~**in each of their reasonable discretion**.

### D. *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article IX may be waived only by consent of the Debtors; provided that with respect to the consummation of the Fixed/Floating Plan, the conditions precedent to the Effective Date may be waived **only** by the consent of the Fixed/Floating Plan Sponsors ~~or~~**and** Midland, ~~as applicable,~~ in accordance with the terms of the Fixed/Floating Successful Bid**; provided further that, notwithstanding anything to the contrary in this Article IX.D, consent shall not be required to waive a condition described in Article IX.C from any Entity whose actions (or failure to act) were the proximate cause of the failure of such condition to be satisfied**.

### E. *Effective Date*

For each Debtor, the Effective Date shall be the date that is a Business Day selected by the Debtors after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect**; provided that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry**; and (b) all conditions precedent applicable to such Debtor specified in Article IX.C have been satisfied or waived (in accordance with Article IX.D).

### F. *Effect of Non-Occurrence of the Effective Date Regarding Fixed/Floating Debtors*

~~To~~**Unless and only to** the extent ~~that the bid set forth in the Commitment Letter is the Fixed/Floating Successful Bid, unless~~ otherwise agreed ~~by~~**among** the Debtors, the Fixed/Floating Plan Sponsors, and Midland, if the Effective Date as to the Fixed/Floating Debtors does not occur on or before September 15, 2011 (*i.e.*, the "Outside Date" under the Commitment Letter), the Confirmation Order shall be automatically revoked and the Plan as applicable to the Fixed/Floating Debtors and the Commitment Letter shall be null and void in all respects and nothing contained in the Plan, the Disclosure Statement, or the Commitment Letter shall: (1) constitute a waiver or release of any claims by or claims Claims against or Interests in the Fixed/Floating Debtors; (2) prejudice in any manner the rights of the Fixed/Floating Debtors, the Fixed/Floating Plan Sponsors, any Holders of Claims against or Interests in the Fixed/Floating Debtors, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Fixed/Floating Debtors, the Fixed/Floating Plan Sponsors, any Holders of Claims against or Interests, or any other Entity in any respect.

K&E 18934861.12

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

*A.      Modification and Amendments*

Subject to the limitations contained herein **and the consent rights available to the Fixed/Floating Plan Sponsors and Midland (as described in Article IX)**, the Debtors reserve the right to modify the Plan as to material terms and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their rights to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.

*B.      Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and prior to the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.      Revocation or Withdrawal of the Plan*

The Debtors reserve the right to revoke or withdraw the Plan with respect to one or more of the Debtors prior to the Confirmation Date or the Effective Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan with respect to any Debtor, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption and assignment or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.  Nothing contained in this Article X shall impair the rights and obligations existing under the Commitment Letter.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain such jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to:  (a) the assumption, assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the

rejection of an Executory Contract or Unexpired Lease, Cure Obligations pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Post-Effective Date Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.G.1;

13.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     Determine any other matters that may arise in connection with or relate to the Plan, the Commitment Letter, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

16.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

17.     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

18.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

19.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     Hear and determine matters concerning section 1145 of the Bankruptcy Code;

21.     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

22.     Enforce all orders previously entered by the Bankruptcy Court;

23.     To resolve any disputes arising under the Commitment Letter and **the Chatham** Hotel Sale Transaction Documents;

~~24.     Adjudicate matters relating to LNR Partners, LLC v. CRES Investment No. II, LP, Adv. Pro. No. 10-04237 (Bankr. S.D.N.Y. 2010).~~

**24.**     ~~25.~~ Hear any other matter not inconsistent with the Bankruptcy Code;

**25.**     ~~26.~~ Enter an order concluding or closing the Chapter 11 Cases; and

**26.**     ~~27.~~ Enforce the injunction, release, and exculpation provisions set forth in Article VIII.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

*A.     Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date with respect to any of the Joint Plans, the terms of such plan, the corresponding Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the relevant Debtors, the relevant Post-Effective Date Debtors, and any and all Holders of Claims or Interests against or in the relevant Debtors (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in such plan, each Entity acquiring property under such plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the relevant Debtors.  All Claims and debts shall be as fixed, adjusted or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

*B.     Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Post-Effective Date Debtors, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

K&E 18934861.12

C.        *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code shall be paid by the Debtors (prior to or on the Effective Date) or the Post-Effective Date Debtors (after the Effective Date) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.        *Dissolution of Committees*

Without considering any of the Chapter 11 Cases that have been converted, dismissed or closed, on the date that is the latest Confirmation Date of a chapter 11 plan applicable to any of the Chapter 11 Cases, the Committees, if any, shall dissolve and all members, employees or agents thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases; provided that that the Committee shall continue in existence following the Confirmation Date for the sole purpose of prosecuting its applications for fees and expenses.

E.        *Reservation of Rights*

Except as expressly set forth in the Plan, each of the Joint Plans shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order with respect to such Joint Plan.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.        *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.        *Dissolution of Entities*

To the extent there are no remaining Claims against a Debtor and such Debtor has no assets and no liabilities, such Debtor shall be deemed dissolved under state law without further action by the Post-Effective Date Debtors and without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

H.        *Service of Documents*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors or the Post-Effective Date Debtors shall be served on:

1.                if to the Debtors or the Post-Effective Date Debtors, to:

Innkeepers USA Trust
340 Royal Poinciana Way, Suite 306
Palm Beach, Florida 33480
Attention:  Marc A. Beilinson

with copies to:

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022-4611
Facsimile:  (212) 446-4900
Attention:  Paul M. Basta, Stephen E. Hessler, and Brian S. Lennon
E-mail addresses:  paul.basta@kirkland.com, stephen.hessler@kirkland.com, and
            brian.lennon@kirkland.com

and

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654-3406
Facsimile:  (312) 862-2200
Attention:  Anup Sathy, P.C. ~~and Marc J. Carmel~~
E-mail address~~es~~:  anup.sathy@kirkland.com ~~and marc.carmel@kirkland.com~~

*I.        Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

*J.        Entire Agreement*

Except as otherwise indicated, the Plan, the Confirmation Order, and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

*K.        Nonseverability of Plan Provisions*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (3) nonseverable and mutually dependent.

K&E 18934861.12

Respectfully submitted, as of the date first set forth above,

Innkeepers USA Trust (for itself and all Debtors)

By: _____

Name: Marc ~~C~~**A**. Beilinson

Title: Chief Restructuring Officer

K&E 18934861.12