UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Chapter 11 |
| INNKEEPERS USA TRUST, *et al.*,[1] | ) ) ) | Case No. 10-13800 (SCC) |
| Debtors. | ) ) | Jointly Administered |

**ORDER APPROVING (A) ADEQUACY OF THE DISCLOSURE STATEMENT; (B) CERTAIN DATES RELATED TO CONFIRMATION OF THE PLAN; (C) CERTAIN VOTING PROCEDURES AND THE FORM OF CERTAIN DOCUMENTS TO BE DISTRIBUTED IN CONNECTION WITH SOLICITATION OF THE PLAN; AND (D) PROPOSED VOTING AND GENERAL TABULATION PROCEDURES**

Upon the motion (the "**Motion**")[1] of the Debtors, as debtors and debtors in possession, for the entry of an order (this "**Order**") (a) approving the adequacy of the *Disclosure Statement for the Debtors' Plans of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Disclosure Statement**"); (b) approving certain dates related to confirmation of the *Debtors' Plans of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Plan**"); (c) approving certain voting procedures and the form of certain documents to be distributed in connection with the solicitation of the Plan; (d) approving proposed voting and general tabulation procedures; and (e) granting such other relief as is just and proper, all as more fully described in the Motion; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors, and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion, the Disclosure Statement or the Plan, as applicable, attached hereto as **Exhibit 1** and Exhibit A to **Exhibit 1**, respectively.

28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, it is hereby found and determined that:

A. **Bidding Procedures Order; Solicitation of Qualified Bids.** On March 11, 2011, the Court entered the Bidding Procedures Order. Thereafter, the Debtors conducted a full, robust and fair marketing process to solicit higher or otherwise better proposals for the sponsorship and funding of the Debtors' chapter 11 plans of reorganization. In connection therewith, the Debtors received various expressions of interest and provided prospective bidders with "Level One," and if appropriate "Level Two," due diligence in accordance with the Bidding Procedures Order. Prior to the Bid Deadline (as defined in the Bidding Procedures Order), the Debtors (in consultation with Midland as to the Fixed/Floating Debtors) determined that they received two Qualified Bids (as defined in the Bidding Procedures Order) (inclusive of the Five Mile/Lehman stalking horse bid) with respect to the Fixed/Floating Debtors, one bid for the 45 hotels that serve as collateral for the Debtors' fixed rate mortgage loan and six of the seven hotels commonly referred to as the "Seven Sisters", two bids for the LNR Properties, six bids on multiple assets and six bids on individual assets.

B. **Conduct of the Fixed/Floating Auction.** In accordance with the terms of the Bidding Procedures Order, the Debtors conducted the Fixed/Floating Auction (as defined in the Bidding Procedures Order) on May 2 and 3, 2011. All Qualified Bidders were provided with a full and fair opportunity to submit bids at the Fixed/Floating Auction, and were afforded a reasonable period of time to consider and develop their bids.

2

C.  **Conduct of the LNR Properties' Auction.**  The Debtors conducted an auction for the LNR Properties (the "**LNR Auction**") on May 3, 2011. All bidders for the LNR Properties were provided with a full and fair opportunity to submit bids at the LNR Auction, and were afforded a reasonable period of time to consider and develop their bids.

D.  **Successful Bids.**  The bid submitted by Cerberus Series Four Holdings LLC and Chatham Lodging Trust (the "**Fixed/Floating Plan Sponsors**") and New HoldCo, as evidenced by the Commitment Letter, was the last and final bid submitted at the Fixed/Floating Auction. The Debtors, after consultation with the Creditors' Committee and Midland, concluded that the bid submitted by the Fixed/Floating Plan Sponsors and New HoldCo, as evidenced by the Commitment Letter, constituted the highest and best offer for the Fixed/Floating Debtors. After providing all Qualified Bidders with an opportunity to submit other or further bids, and none having been submitted, the Debtors declared the bid submitted by the Fixed/Floating Plan Sponsors and New HoldCo, as evidenced by the Commitment Letter, to be the Successful Bid (as defined in the Bidding Procedures Order) for the Fixed/Floating Debtors, and closed the Fixed/Floating Auction with respect to the Fixed/Floating Debtors. As of the date of this Order, having solicited higher or better offers for the Fixed/Floating Debtors, and having conducted the Fixed/Floating Auction, each in accordance with the Bidding Procedures Order, the Debtors have fulfilled their fiduciary obligation to obtain the highest and best offer to sponsor a plan for the Fixed/Floating Plan Debtors.

The bid submitted by Chatham L.P. for the LNR Properties (the "**Chatham Bid**"), as evidenced by the Chatham APA, was the last and final bid submitted at the LNR Auction. The Chatham Bid, as evidenced by the Chatham APA, was one of the many factors that facilitated the successful negotiation of the Stipulation resolving a number of issues among the Debtors, LNR

3

and the Ad Hoc Committee and the Debtors, following such negotiation, concluded that the Chatham Bid constituted the highest and best offer for the LNR Properties.  After providing all bidders for some or all of the LNR Properties with an opportunity to submit other or further bids, and none having been submitted, the Debtors declared the bid submitted by Chatham L.P., as evidenced by the Chatham APA, to be the successful bid for the LNR Properties, and closed the LNR Auction.  As of the date of this Order, having solicited higher or better offers for the LNR Properties, and having conducted the LNR Auction, the Debtors have fulfilled their fiduciary obligation to obtain the highest and best recovery for the creditors of the Debtors that own the LNR Properties.

E. **Commitment Letter and Chatham APA.**  Entry into the Commitment Letter and all other documents related thereto (including the New HoldCo/Midland Commitment Letter) reflecting the terms of the Fixed/Floating Successful Bid is a sound exercise of the Debtors' business judgment and is in the best interests of the Fixed/Floating Debtors' estates and their creditors. Entry into the Chatham APA, including the obligations of the Debtors with respect to the "Chatham Bid Protections" referred to in a separate motion made to the Bankruptcy Court in these Chapter 11 Cases by the Debtors [Docket No. 1205], and all other documents related thereto reflecting the terms of the Chatham Bid is a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors' estates and their creditors.

**THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Motion is granted.

K&E 18977430

A.  **Approval of the Disclosure Statement and the Notice of the Disclosure Statement Hearing**

2. The Debtors have provided adequate notice of the time fixed for filing objections and the hearing to consider approval of the Disclosure Statement in accordance with Bankruptcy Rules 2002 and 3017 and Local Bankruptcy Rules 2002-1 and 3017-1(a).

3. Any objections to the approval of the Disclosure Statement that were not withdrawn or resolved at or prior to the Disclosure Statement Hearing are overruled.

4. The Disclosure Statement attached hereto as **Exhibit 1** complies with all aspects of section 1125 of the Bankruptcy Code and is hereby approved as containing adequate information (as defined by section 1125(a) of the Bankruptcy Code).

B.  **Fixing the Voting Record Date, Confirmation Objection Deadline, and Voting Deadline**

5. **May 13, 2011**, the date of the Disclosure Statement Hearing, shall be the Voting Record Date for determining: (a) the Holders of Claims and Interests that are entitled to receive the Solicitation Package pursuant to the Solicitation Procedures; (b) the Holders of Claims and Interests entitled to vote to accept or reject the Plan; and (c) whether Claims have been properly transferred or assigned to an assignee, including the requirements that: (i) the transfer or assignment has been fully effectuated pursuant to the procedures dictated by Bankruptcy Rule 3001(e); and (ii) for Claims, such transfer is reflected on the Claims Register on or before the Voting Record Date.

6. The Confirmation Objection Deadline shall be **June 17, 2011 at 4:00 p.m prevailing Eastern Time**.

7. The Voting Deadline shall be **June 17, 2011, at 5:00 p.m. prevailing Eastern Time**.

C.  **Approval of the Solicitation Procedures and the Solicitation Package and the Procedures for Distribution Thereof**

8.  The Disclosure Statement, the Plan, and the customized ballots and master ballots for Holders of Claims and Interests to tabulate acceptances and rejections of the Plan (collectively, the "**Ballots**") (as applicable) provide Holders of Claims and Interests and other parties in interest with sufficient notice regarding the release, exculpation, and injunction provisions contained in the Plan in compliance with Bankruptcy Rule 3016(c).

9.  The Solicitation Procedures attached hereto as **Exhibit 2** and incorporated by reference herein, are hereby approved in their entirety, provided that the Debtors reserve the right to amend or supplement the Solicitation Procedures to better facilitate the solicitation process.

10. The procedures for distribution of the Solicitation Packages set forth in the Motion and the Solicitation Procedures satisfy the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and the Debtors shall distribute or cause to be distributed Solicitation Packages to all entities entitled to vote to accept or reject the Plan.

11. The Debtors are authorized, but not directed or required, to distribute the Plan, the Disclosure Statement and this Order to Holders of Claims and Interests in CD-ROM format. The Ballots and the Confirmation Hearing Notice will only be provided in paper form.

12. Any party who receives a CD-ROM, but who would prefer paper format, may contact the Notice and Claims Agent at (866) 967-0675 and request paper copies of the corresponding materials previously received in CD-ROM format, which will then be provided at the Debtors' expense.

K&E 18977430

13. The Proposed Form of the Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit 3**, complies with the requirements of Bankruptcy Rules 2002(b), 2002(d), and 3017(d) and is hereby approved.

14. The Debtors shall publish the Confirmation Hearing Notice (in a format modified for publication) in *USA Today* on a date no fewer than 15 calendar days prior to the Voting Deadline.

15. The Proposed Forms of Ballot, substantially in the forms attached hereto as **Exhibit 4**, are hereby approved.

16. The form of the voting instructions, substantially in the form attached to the Ballots, is hereby approved.

17. All votes to accept or reject the Plan must be cast by using the appropriate Ballot.

18. All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions by: (a) first class mail, in the return envelope provided with each Ballot; (b) overnight courier; or (c) personal delivery, so that the Ballots are actually received by the Notice and Claims Agent, no later than the Voting Deadline at the return address set forth in the applicable Ballot.

19. The Proposed Form of Non-Voting Status Notice—Claims Not Classified substantially in the form attached hereto as **Exhibit 5**, is hereby approved.

20. The Proposed Form of Non-Voting Status Notice—Deemed to Reject substantially in the form attached hereto as **Exhibit 6**, is hereby approved.

21. Ballots and copies of the Plan and Disclosure Statement need not be provided to the Holders of Claims and Interests who are fully impaired or who are unclassified under the Plan.

7
K&E 18977430

13. The Proposed Form of the Confirmation Hearing Notice, substantially in the form attached hereto as **Exhibit 3**, complies with the requirements of Bankruptcy Rules 2002(b), 2002(d), and 3017(d) and is hereby approved.

14. The Debtors shall publish the Confirmation Hearing Notice (in a format modified for publication) in *USA Today* on a date no fewer than 15 calendar days prior to the Voting Deadline.

15. The Proposed Forms of Ballot, substantially in the forms attached hereto as **Exhibit 4**, are hereby approved.

16. The form of the voting instructions, substantially in the form attached to the Ballots, is hereby approved.

17. All votes to accept or reject the Plan must be cast by using the appropriate Ballot.

18. All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions by: (a) first class mail, in the return envelope provided with each Ballot; (b) overnight courier; or (c) personal delivery, so that the Ballots are actually received by the Notice and Claims Agent, no later than the Voting Deadline at the return address set forth in the applicable Ballot.

19. The Proposed Form of Non-Voting Status Notice—Claims Not Classified substantially in the form attached hereto as **Exhibit 5**, is hereby approved.

20. The Proposed Form of Non-Voting Status Notice—Deemed to Reject substantially in the form attached hereto as **Exhibit 6**, is hereby approved.

21. Ballots and copies of the Plan and Disclosure Statement need not be provided to the Holders of Claims and Interests who are fully impaired or who are unclassified under the Plan.

22. The form of the Notice to Counterparties to Assumed Executory Contracts and Unexpired Leases, substantially in the form attached hereto as **Exhibit 7** is hereby approved.

23. The Proposed Form of Notice to Counterparties to Rejected Executory Contracts and Unexpired Leases, substantially in the form attached hereto as **Exhibit 8** is hereby approved.

24. The Proposed Form of Disputed Claims Notice, substantially in the form attached hereto as **Exhibit 9**, is hereby approved.

25. The form of the Disclosure Statement Hearing Notice, substantially in the form attached hereto as **Exhibit 10**, is hereby approved.

26. The letter dated May 15, 2011 from the Ad Hoc Committee, pursuant to the agreement of the Debtors and the Ad Hoc Committee set forth in the Remaining Debtor Plan, attached hereto as **Exhibit 11**, is hereby approved.

27. The Debtors shall be excused from mailing Solicitation Packages to those entities to whom the Debtors mailed a notice regarding the Disclosure Statement Hearing and received a notice from the United States Postal Service or other carrier that such notice was undeliverable unless such entity provides the Debtors, through the Notice and Claims Agent, an accurate address not less than ten business days prior to the Solicitation Date. If an entity has changed its mailing address after the Petition Date, the burden is on such entity, not the Debtors, to advise the Debtors and the Notice and Claims Agent of the new address.

28. Any objections to the Plan must be filed by the Confirmation Objection Deadline and must: (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Bankruptcy Rules; (c) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such entity; (d) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such

8

objection; and (e) be filed, contemporaneously with a proof of service, with the Court and served so that it is actually received by the notice parties identified in the Confirmation Hearing Notice no later than the Confirmation Objection Deadline.

### D. Fixing the Date of the Confirmation Hearing

29. The Confirmation Hearing shall commence on **June 23, 2011 at 10:00 a.m. prevailing Eastern Time**, which hearing may be continued from time to time without further notice other than a notice of adjournment filed with the Court and served on: (a) the entities on the Master Service List (as such term is defined in the *Notice, Case Management, and Administrative Procedures* [Docket No. 68]) and (b) those parties who have filed objections to the Plan, without further notice to other parties in interest.

### E. Approval of Entry into the Plan Related Documents

30. The bid submitted by the Fixed/Floating Plan Sponsors and New HoldCo, as evidenced by the Commitment Letter, is hereby determined to be the Fixed/Floating Successful Bid (as defined in the Bidding Procedures Order) for the Fixed/Floating Debtors. The Debtors are hereby authorized to enter into the Commitment Letter and all other documents related thereto (including the New HoldCo/Midland Commitment Letter) reflecting the terms of the Fixed/Floating Successful Bid, and to take all actions necessary to perform their obligations thereunder and consummate the transactions contemplated thereby (subject to confirmation of the Fixed/Floating Plan and the satisfaction or waiver of all conditions to the occurrence of the Effective Date). The Chatham Bid, as evidenced by the Chatham APA, is hereby determined to be the successful bid for the LNR Properties. The Debtors are hereby authorized to enter into the Chatham APA and all other documents related thereto reflecting the terms of the successful bid for the LNR Properties and to take all actions necessary to perform their obligations thereunder and consummate the transactions contemplated thereby (subject to confirmation of the

K&E 18977430

Remaining Debtors Plan and the satisfaction or waiver of all conditions to the occurrence of the Closing Date (as defined in the Chatham APA).

31. Having conducted a full, robust, and fair marketing process to solicit higher or better proposals for the Fixed/Floating Debtors, and having conducted the Fixed/Floating Auction, each in accordance with the Bidding Procedures Order, the Debtors shall not be required to conduct any other or further marketing or solicitation with respect to the Fixed/Floating Debtors. Further, the Fixed/Floating Auction having been properly conducted and closed, and the Fixed/Floating Plan Sponsors and New HoldCo having relied on the process set forth in the Bidding Procedures Order for the solicitation of Qualified Bids in submitting the Fixed/Floating Successful Bid and participating in the Fixed/Floating Auction, the Debtors shall not be required to respond to, or otherwise entertain or consider, any other or further offers for all or any portion of the Fixed/Floating Debtors. Upon receipt of a proposal for any alternative restructuring transaction involving the Fixed/Floating Debtors, the Debtors shall advise the Fixed/Floating Plan Sponsors, the Creditors' Committee, Midland, and Lehman of the existence of, and provide copies of (or, if the proposal is provided orally, a written summary of), such proposal.

32. Having conducted a full, robust, and fair marketing process to solicit higher or better proposals for the Fixed/Floating Debtors, and having conducted the LNR Auction, the Debtors shall not be required to conduct any additional marketing or solicitation with respect to the LNR Properties. Further, the LNR Auction having been properly conducted and closed, and Chatham L.P. having participated in the LNR Auction and having submitting the Chatham Bid, the Debtors shall not be required to respond to, or otherwise entertain or consider, any other or further offers for all or any portion of the LNR Properties. Upon receipt of a proposal for any

alternative restructuring transaction involving the LNR Properties, the Debtors shall advise Chatham L.P., the Creditors' Committee, the Ad Hoc Committee, counsel to Apollo, LNR, Midland, and Lehman of the existence of, and provide copies of (or, if the proposal is provided orally, a written summary of), such proposal.

### F. Approval of Limited Fixed/Floating Termination Fee & Expense Reimbursement

33. In the event the Board of Trustees of Innkeepers USA Trust (the "**Board**") authorizes the Debtors to exercise their "fiduciary out" as provided in the Commitment Letter to execute definitive documentation with respect to an alternative restructuring transaction for the Fixed/Floating Debtors (an "**Alternative Restructuring Transaction**") with a party other than the Fixed/Floating Plan Sponsors and, provided that the Fixed/Floating Plan Sponsors are not then in material breach (after giving effect to any applicable cure period) of their obligations under the Commitment Letter, the Fixed/Floating Plan Sponsors shall be entitled to (a) payment of a $12 million cash termination fee (the "**Termination Fee**"), which Termination Fee shall be payable to the Fixed/Floating Plan Sponsors upon the consummation of such Alternative Restructuring Transaction and solely from the proceeds of such Alternative Restructuring Transaction; and (b) reimbursement of up to $3 million on account of reasonable and documented expenses incurred by the Fixed/Floating Plan Sponsors (the "**Fixed/Floating Expense Reimbursement**"), which Fixed/Floating Expense Reimbursement shall be payable to the Fixed/Floating Plan Sponsors solely from a non-refundable deposit to be provided to the Debtors from the proponent of the Alternative Restructuring Transaction concurrently with the Debtors' execution of definitive documentation for the Alternative Restructuring Transaction. The Debtors' obligations under this paragraph, if applicable, shall constitute allowed administrative expenses of the Debtors' estates pursuant to sections 503(b)(1) and 507(a)(2) of

the Bankruptcy Code; provided, however, that, payment shall only be from the sources identified in clauses (a) and (b) above and no other source.

34. The Debtors agree that an Alternative Restructuring Transaction must: (a) have an implied enterprise value that is $30 million or more than the Fixed/Floating Successful Bid; (b) include sufficient cash to pay the Termination Fee, the Fixed/Floating Expense Reimbursement, the Midland Payment (as defined below), and the Lehman Payment (as defined below); and (c) provide for the proponent thereof to make a non-refundable deposit to the Fixed/Floating Debtors of which at least a portion of such deposit shall be available to the Fixed/Floating Debtors solely for the purpose of paying the Fixed/Floating Expense Reimbursement. In evaluating whether to pursue an Alternative Restructuring Transaction, the Debtors, in consultation with the Creditors' Committee, will consider (x) the effect the Alternative Restructuring Transaction would have on the recoveries and the form of consideration that the holders of the Fixed Rate Mortgage Loan Claims, Floating Rate Mortgage Loan Claims, and General Unsecured Claims, respectively, would receive under the Fixed/Floating Plan; (y) the recoveries that such holders, respectively, would receive under the Fixed/Floating Plan as filed on the date hereof; and (z) that each of such holders has consented to the treatment that the other would receive under the Fixed/Floating Plan as filed on the date hereof. The term "Alternative Restructuring Transaction" shall not include the Backup Bid for the Fixed/Floating Debtors (as defined in the Bidding Procedures Order). For the avoidance of doubt, Midland shall have no obligation and shall not be committed to provide any financing with regards to any Alternative Restructuring Transaction.

**G.     Approval of Midland Payment**

35. In the event the Board authorizes the Debtors to exercise their "fiduciary out" as provided in the Commitment Letter to execute definitive documentation with respect to an

Alternative Restructuring Transaction and, provided that Midland is not in breach of any of its contractual obligations in connection with these Chapter 11 Cases, Midland shall be entitled to a $2 million payment (the "**Midland Payment**") on account of the fees and expenses of the C6 and C7 Trusts, which shall be payable to Midland (to the extent such fees and expenses are payable under the Co-Lender Agreement or the respective Pooling and Servicing Agreements, with any excess being paid to the C6 and C7 Trusts) solely from the proceeds of such transaction that would otherwise be allocable to the recovery of the Allowed Fixed Rate Mortgage Loan Claim. The Debtors' obligations under this paragraph, if applicable, shall constitute allowed administrative expenses of the Debtors' estates pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; provided, however, that, payment shall only be from the proceeds of any consummated Alternative Restructuring Transaction.

**H.     Approval of Lehman Payment**

36.     In the event the Board authorizes the Debtors to exercise their "fiduciary out" as provided in the Commitment Letter to execute definitive documentation with respect to an Alternative Restructuring Transaction and, provided that Lehman is not in breach of any of its contractual obligations in connection with these Chapter 11 Cases, Lehman shall be entitled to $651,077.85 (the "**Lehman Payment**"), which shall be payable to Lehman solely from the proceeds of such transaction. The Debtors' obligations under this paragraph, if applicable, shall constitute allowed administrative expenses of the Debtors' estates pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code; provided, however, that, payment shall only be from the proceeds of any consummated Alternative Restructuring Transaction.

**I.     Miscellaneous Provisions**

37.     Other than as agreed to in the Ad Hoc Committee Agreement and in the Stipulation, the rights and remedies of all parties in interest in the Debtors' chapter 11 cases are

expressly preserved with respect to the terms of the Plan, confirmation of the Plan, and consummation of the Plan, including, without limitation: (a) any entity's right to assert that any entity has waived or not waived any rights it may have to a Claim, including Mortgage Loan Deficiency Claims; or (b) any entity's right to object to or respond to any objection to any guaranty claims that may be asserted against Grand Prix Holdings LLC, including, without limitation, guaranty claims on account of the Fixed Rate Mortgage Loan Claims, the Floating Rate Mortgage Loan Claims, the Floating Rate Mezzanine Loan Claims, Anaheim Hotel Mortgage Claims, and Anaheim Hotel Mezzanine Claims, on any grounds, including (i) that the holders of such alleged Claims waived or did not waive their rights to any recovery from Grand Prix Holdings LLC on account of any Mortgage Loan Deficiency Claims, guaranty Claims or otherwise in connection with the Five Mile/Lehman Commitment Letter, and (ii) the timeliness of any proofs of claim asserting such Claims. For avoidance of doubt, nothing contained in the Fixed/Floating Plan shall be deemed to constitute an admission of any entity as to the validity, allowance, invalidity, or disallowance of any such alleged guaranty claim.

38. In the event the Ad Hoc Committee Agreement is not approved, the findings of fact and conclusions of law set forth in paragraphs C, the second paragraph of paragraph D, and 32 shall not be binding upon or used against the Holders of Innkeepers USA Trust Preferred C Interests.

39. The terms of this Order shall be binding upon the Debtors, all Holders of Claims and Interests, and any trustees appointed under chapter 7 or chapter 11 of the Bankruptcy Code relating to the Debtors and all other parties in interest.

40. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

41. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

42. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

43. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York
Dated: May 19, 2011

*/s/ Shelley C. Chapman*
United States Bankruptcy Judge

15
K&E 18977430