**EXHIBIT C**

**Liquidation Analysis**

# INNKEEPERS USA TRUST, et al

# LIQUIDATION ANALYSIS

Pursuant to section 1129(a)(7) of the Bankruptcy Code (often referred to as the "**Best Interests Test**"), each holder of an impaired Claim or Equity Interest must either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Plan's Effective Date, that is not less than the value such non-accepting holder would receive or retain if the Debtors' assets were to be liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date. In determining whether the Best Interests Test has been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtors' assets in Chapter 7 as of the Effective Date. Such amount then would be reduced by the costs and expenses of the liquidation. Prior to determining whether the Best Interests Test has been met, further reductions would be required to eliminate cash and asset liquidation proceeds that would be applied to secured claims and amounts necessary to satisfy Administrative, Tax, and other Priority Claims that are senior to General Unsecured Claims, including any incremental Administrative Claims that may result from the termination of the Debtors' business and the liquidation of their assets. Any remaining cash would be available for distribution to general unsecured creditors and shareholders in accordance with the distribution hierarchy established by section 726 of the Bankruptcy Code.

The Liquidation Analysis below reflects the estimated cash proceeds, net of liquidation related costs, which would be available to the Debtors' creditors and interest holders if they were to be liquidated in Chapter 7 cases. Underlying the Liquidation Analysis are a number of estimates and assumptions regarding liquidation proceeds that, although developed and considered reasonable by Debtors' management and their professionals, are inherently subject to significant business, economic, and competitive uncertainties and contingencies beyond the control of the Debtors and their management.

ACCORDINGLY, THERE CAN BE NO ASSURANCE THAT THE VALUES REFLECTED IN THE LIQUIDATION ANALYSIS WOULD BE REALIZED IF THE DEBTORS WERE, IN FACT, TO UNDERGO SUCH A LIQUIDATION, AND ACTUAL RESULTS COULD VARY MATERIALLY FROM THOSE SHOWN HERE.

The Liquidation Analysis was prepared by the Debtors' management with the assistance of their professionals, and assumes each of the Debtors' Chapter 11 cases would convert to Chapter 7 as of July 31, 2011 (the assumed Effective Date of the Plan). It is also assumed that the liquidation of the Debtors would commence under the direction of a Court-appointed Chapter 7 trustee and would continue for a period of six months, during which time all of the Debtors' major assets would either be sold or conveyed to the respective lien holders. The cash proceeds from the liquidation, net of liquidation-related costs, would then be distributed to creditors and interest holders. There can be no assurances that all assets would be completely liquidated during this period.

The Liquidation Analysis was prepared based on a review of the Debtors' assets and estimates of hypothetical liquidation values were determined primarily by assessing classes of assets as opposed to appraising specific assets. For the preparation of this analysis, the Debtors did not retain third party experts to value individual assets.

The Liquidation Analysis is presented as if the Reorganized Debtors and Fixed/Floating Debtors were substantively consolidated, respectively for presentation purposes only. A liquidation analysis was prepared for each of the legal entities in the Reorganizing Debtors and for the consolidated Fixed Debtors and Floating Debtors, respectively. The Ontario Debtors and Anaheim Debtors are not included in the Liquidation Analysis. The Ontario property is being given back to the lender and the Anaheim secured creditors are getting paid in full with the mezzanine lenders getting paid with the collateral, which is better than they would have received under Chapter 7 liquidation.

The Liquidation Analysis necessarily contains an estimate of the amount of claims that will ultimately become allowed claims. Estimates for various classes of claims are based solely upon the Debtors' continuing review of the claims filed in these Chapter 11 cases and the Company's books and records. No

order or finding has been entered by the Court estimating or otherwise fixing the amount of Claims at the projected levels set forth in this Liquidation Analysis.

Liquidation would likely prompt certain other events to occur, including the rejection of remaining executory contracts and unexpired leases not assumed by the purchaser of the going-concern business. Such events would likely create a larger number of unsecured creditors and would subject the Chapter 7 estates to additional damage claims for the rejection of those contracts under the Bankruptcy Code. Such claims would also increase the aggregate amount of unsecured claims against the Debtors, perhaps materially, and would dilute any potential recoveries to holders of the unsecured claims. No attempt has been made to estimate additional unsecured claims that may result from such events.

The Liquidation Analysis assumes that there are no recoveries from the pursuit of any potential preferences, fraudulent conveyances, or other causes of action and does not include the estimated costs of pursuing those actions.

**Innkeepers USA**
**Reorganizing Debtors**
**Hypothetical Liquidation Analysis**

**(in Millions)**

| | Notes | Estimated Claims | Estimated Recovery High | Estimated Recovery Low |
|---|---|---|---|---|
| **Proceeds Available for Distribution** | A | | | |
|    Hotel Portfolio | | | $ 165.8 | $ 136.5 |
|    Cash | | | 11.6 | 11.6 |
|    Estimated Cash Generation During Sale Process | | | 4.4 | 4.4 |
| **Total Proceeds Available for Distribution** | | | $ 181.8 | $ 152.5 |
| Less Chapter 7 Fees: | B | | | |
|    Trustee Fees | | | $ 4.1 | $ 3.1 |
|    Transaction Fees | C | | 3.3 | 2.7 |
|    Other Professional Fees | | | 0.6 | 0.4 |
|    Accrued Chapter 11 Professional Fees | | | 0.6 | 0.6 |
|    Estimated Wind-Down Costs | | | 0.5 | 0.4 |
| **Net Proceeds Available for Distribution** | | | $ 172.6 | $ 145.2 |
| Debtor-in-Possession Financing | D | $ 6.5 | $ 6.5 | $ 6.5 |
|    *Recovery %* | | | *100.0%* | *100.0%* |
| **Proceeds Available to Mortgage Claims** | | | $ 166.1 | $ 138.7 |
| Mortgage Claims | E | $ 156.1 | $ 150.4 | $ 130.5 |
|    *Recovery %* | | | *96.3%* | *83.6%* |
| **Proceeds Available to Administrative and Priority Claims** | | | $ 15.7 | $ 8.2 |
| Administrative and Priority Claims | F | $ 8.0 | $ 6.6 | $ 6.3 |
|    *Recovery %* | | | *82.9%* | *78.7%* |
| **Proceeds Available for Unsecured Claims** | | | $ 9.1 | $ 2.0 |
| Grand Prix Holdings LLC - Deficiency Claims | I | $ 230.4 | $ 2.8 | $ - |
| Unsecured Claims | H | 2.1 | 2.1 | 2.0 |
|    Total Unsecured Claims | | $ 232.5 | $ 4.9 | $ 2.0 |
|    *Recovery %* | | | *2.1%* | *0.8%* |
| **Proceeds Available for Preferred Stock** | | | $ 4.2 | $ - |
| Preferred Stock | | $ 220.0 | $ 4.2 | $ - |
|    *Recovery %* | | | *1.9%* | *0.0%* |
| **Proceeds Available to Equity Interests** | | | $ - | $ - |

# Innkeepers USA
## Fixed/Floating Debtors
### Hypothetical Liquidation Analysis

**(in Millions)**

| | Notes | Estimated Claims | Estimated Recovery High | Estimated Recovery Low |
|---|---|---|---|---|
| **Proceeds Available for Distribution** | A | | | |
|   Hotel Portfolio | | | $ 951.7 | $ 783.8 |
|   Cash | | | 20.5 | 20.5 |
|   Estimated Cash Generation During Sale Process | | | 11.8 | 11.8 |
| **Total Proceeds Available for Distribution** | | | $ 984.1 | $ 816.1 |
| Less Chapter 7 Fees: | B | | | |
|   Trustee Fees | | | $ 19.7 | $ 16.3 |
|   Transaction Fees | C | | 19.0 | 15.7 |
|   Other Professional Fees | | | 3.3 | 2.6 |
|   Accrued Chapter 11 Professional Fees | | | 4.7 | 4.7 |
|   Estimated Wind-Down Costs | | | 3.7 | 2.8 |
| **Net Proceeds Available for Distribution** | | | $ 933.6 | $ 774.1 |
| Debtor-in-Possession Financing | D | $ 44.8 | $ 44.8 | $ 44.8 |
|   *Recovery %* | | | *100.0%* | *100.0%* |
| **Proceeds Available to Mortgage Claims** | | | **$ 888.8** | **$ 729.2** |
| Mortgage Claims | E | $ 1,023.7 | $ 888.8 | $ 729.2 |
|   *Recovery %* | | | *86.8%* | *71.2%* |
| **Proceeds Available to Administrative and Priority Claims** | | | $ - | $ - |
| Administrative and Priority Claims | F | $ 7.0 | $ - | $ - |
|   *Recovery %* | | | *0.0%* | *0.0%* |
| **Proceeds Available to Mezzanine Financing Claims** | | | $ - | $ - |
| Proceeds Available for Mezzanine Financing Claims | G | $ 132.4 | $ - | $ - |
|   *Recovery %* | | | *0.0%* | *0.0%* |
| **Proceeds Available for Unsecured Claims** | | | $ - | $ - |
| Deficiency Claims | | $ 214.7 | $ - | $ - |
| Unsecured Claims | H | 7.0 | - | - |
|   Total Unsecured Claims | | $ 221.7 | $ - | $ - |
|   *Recovery %* | | | *0.0%* | *0.0%* |
| **Proceeds Available to Equity Interests** | | | $ - | $ - |

**FOOTNOTES TO LIQUIDATION ANALYSIS**

*Note A – Proceeds for Distribution*

To maximize total liquidation value, the Liquidation Analysis assumes that the Debtors' hotel properties are sold as a going concern that would be effectuated through a distressed sale of the entire portfolio of hotels or through a series of sales of clusters of hotels, and that all post-petition liabilities of the various hotels existing at the time are assumed by the respective purchasers. Given that the hotels would be sold pursuant to a forced liquidation sale for cash, the Debtors believe that an appropriate range of value for the Fixed/Floating Debtors' hotels would be between $783.8 and $951.7 million and between $136.5 and $165.8 million for the Reorganizing Debtors' hotels, implying a 15% and 30% discount, respectively to the purchase price of the hotels included in the Plan.

The Debtors are estimated to have cash on hand of $32.1 million as of July 31, 2011, including $7.4 million of unencumbered cash at Innkeepers USA Limited Partnership. Additionally, the Debtors are estimated to be able to generate approximately $16.3 million of cash during the sale process from operations.

For purpose of this Liquidation Analysis, it is assumed that the purchaser(s) of the various hotel properties will honor all prepetition contracts. Rejection of these contracts could create a much larger number of unsecured creditors and could subject the Chapter 7 estate to additional claims for damages for beaches of those contracts. Such claims could also materially increase the amount of Administrative, Priority, or General Unsecured Claims against the Debtors.

*Note B – Trustee Fees, Other Professional Fees, and Wind-Down Costs of Chapter 7 Estates*

Compensation for the Chapter 7 trustee will be limited to fee guidelines in section 326(a) of the Bankruptcy Code. The Debtors' principal assets—their hotel properties—will be sold as a going concern subject to a transaction fee for the purpose of this Liquidation Analysis, and it is assumed that the trustee fees will be 2.0% of gross proceeds available for creditors. It is also assumed that the buyer(s) will assume post-petition liabilities of the hotel properties existing at the time of the transaction.

Once the sale is complete, certain corporate and administrative functions would be required to oversee the distribution of proceeds, and to maintain and close the accounting records for the estates. These wind-down costs are estimated to be between $3.2 and $4.3 million, which is based on a reduced run rate of corporate general and administrative expenses.

Chapter 7 professional fees include legal, financial, and accounting fees expected to be incurred during the liquidation period and are estimated to be between $3.0 and $3.9 million.

In addition, the recovery available to creditors will be reduced by $5.5 million for accrued Chapter 11 professional fees and other expenses, the maximum amount allowable under the carve-out for such items in the Debtors' "Final Order authorizing the Debtors to (i) use the Adequate Protection Parties' Cash Collateral and (ii) Provide Adequate Protection to the Adequate Protection Parties Pursuant to 11 USC Sec. 361, 362 and 363."

*Note C – Transaction Fees*

Transaction fees associated with the distressed sales of the Debtors' assets are assumed to be 2.0% of the gross proceeds from the sale of the hotel properties, or approximately $18.4 million and $22.3 million, in the low and high recovery scenarios, respectively.

*Note D – Debtors-in-Possession Financing ("DIP Financing")*

The DIP Financing included in the Liquidation Analysis of $51.3 million is based on an estimate of the amount that will be utilized through July 31, 2011.

*Note E – Secured Claims*

Secured claims of the Fixed/Floating Debtors consist of the Fixed Rate Mortgage Loan in the amount of $805.3 million and the Floating Rate Pool Mortgage Loan in the amount of $218.4 million.

Secured claims of the Reorganizing Debtors consist of the following mortgage debt:

| Debtor | Amount |
|---|---|
| KPA RIGG, LLC | $36.9 |
| KPA RIMV, LLC | 46.3 |
| KPA San Antonio, LLC | 23.5 |
| KPA Tyson's Corner RI, LLC | 24.6 |
| KPA Washington DC, LLC | 24.8 |
| | $156.1 |

The Secured claims have been reduced by approximately $24.9 million, as the actual and expected adequate protection payments made during the course of the Chapter 11 cases through July 31, 2011 are assumed to be re-characterized as principal payments upon conversion to Chapter 7, which will reduce the claim amount.

*Note F – Administrative and Priority Claims*

These claims include Chapter 11 professional fees in excess of the carve out, unpaid prepetition real estate taxes, and other priority claims.

*Note G – Mezzanine Facility Claim*

The Mezzanine Facility Claim of the Debtors is attributable to the Floating rate Pool Mezzanine Loan facility in the amount of $132.4 million.

*Note H – Unsecured Claims*

These claims reflect the estimated amounts of prepetition liabilities based on filed claims as of the date of this report and the financial records of the Debtors.

*Note I – Grand Prix Holdings LLC – Deficiency Claims*

The Liquidation Analysis necessarily includes an estimate of the potential Mortgage Loan Deficiency claims from the Fixed/Floating Debtors and the Reorganizing Debtors against Grand Prix Holdings LLC. The estimate was solely developed for the Liquidation Analysis and should not be used for any other purpose. The assumed recovery is equal to the estimated recovery from its ownership of the 12% Series A Cumulative Preferred Shares in Innkeepers USA Trust.