MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Lorenzo Marinuzzi
Jordan A. Wishnew
Stacy L. Molison

*Attorneys for the Official Committee of
Unsecured Creditors of Innkeepers USA Trust, et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| Innkeepers USA Trust, *et al.*, | 10-13800 (SCC) |
| Debtors. | Jointly Administered |

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN
SUPPORT OF CONFIRMATION OF DEBTORS' PLANS OF REORGANIZATION
PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

The Official Committee of Unsecured Creditors (the "Committee") of Innkeepers USA Trust, *et al.* (the "Debtors") hereby submits the following statement in support of confirmation of the Debtors' Plans Of Reorganization Pursuant To Chapter 11 Of The Bankruptcy Code (collectively, the "Plan"):[1]

1. On July 19, 2010 (the "Petition Date"), the Debtors filed ninety-two voluntary petitions under Chapter 11 of the Bankruptcy Code, together with a motion (the "PSA Motion") seeking authority to enter into a plan support agreement (the "PSA") with Lehman ALI Inc. ("Lehman"), but not its other creditor constituencies. The PSA was intended to deleverage the

---

[1] *See* Docket No. 1094. All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Plan.

Debtors' balance sheet and allow the Debtors to maintain their hotel franchise agreements and their existing portfolio of hotel properties. Most notably, the PSA contemplated, among other things, the following:

    (i)    Lehman receiving full satisfaction of its approximately $238 million secured claim with respect to the Floating Rate Mortgage Loan Agreement;

    (ii)    The remaining secured lenders under the Debtors' prepetition credit facilities receiving new secured mortgage notes with a value that was to be no less than the value of the collateral securing their respective prepetition debt;

    (iii)    All of the Debtors' general unsecured creditors sharing a pool of $500,000, thus providing the general unsecured creditors with minimal distributions on their allowed claims; and

    (iv)    Holders of interests in the Debtors, including common and preferred stock, receiving no distributions and such interests being cancelled.

The Committee reserved its rights with respect to any plan that would be proposed based on the PSA.

    2.    After a lengthy and spirited hearing, on September 1, 2010, the Court denied the PSA Motion. In rendering its decision, the Court noted that debtors, as well as their boards of directors, owe a fiduciary duty to creditors to maximize the value of the debtors' estates. *See* Transcript of Hearing at 425, In re Innkeepers USA Trust, No. 10-13800 (Bankr. S.D.N.Y. Sept. 1, 2010), [Docket No. 412]. The Court further noted its belief that certain provisions of the PSA prevented the Debtors from fully exercising such duty. *See Id.* at 427. Accordingly, the Court

concluded that by denying the PSA Motion, the Debtors would "have wide birth to fulfill their fiduciary duties to conduct a plan process which maximizes value for all of the estates and treats the various tranches of debt with greater neutrality." *Id.* at 428.

3. In the months that followed, the Debtors heeded the Court's guidance and worked with each of their constituencies, including the Committee, to devise a process that would build consensus and maximize the value of the Debtors' assets to be distributed to their creditors.

4. The Debtors' extensive efforts ultimately were memorialized in the Plan and accompanying Disclosure Statement for Debtors' Plans of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code [Docket No. 1093] filed with the Court on April 8, 2011. The initial Plan set forth in Five Mile Capital II Pooling REIT LLC/Lehman's stalking horse bid provided that holders of general unsecured claims against the Fixed/Floating Debtors[2] would receive the lesser of their pro rata share of a $3.75 million cash pool or 65% of the face amount of each holder's claim—a significant improvement from the $500,000 "pot" contemplated by the PSA Motion.

5. However, on May 2 and 3, 2011, the Debtors conducted auctions for the sale of the assets of the Fixed/Floating Debtors and the Remaining Debtors, in consultation with the Committee, and the unsecured creditors' recoveries further improved.[3] Following the auction of the assets of the Fixed/Floating Debtors, and after extensive negotiations among the Debtors'

---

[2] "Fixed/Floating Debtors" means (i) the Fixed Rate Pool Hotel Debtors, (ii) the Fixed Rate Pool Lessee, (iii) the Floating Rate Pool Hotel Debtors, (iv) the Floating Rate Pool Lessee, (v) GP AC Sublessee LLC, (vi) Grand Prix Mezz Borrower Fixed, LLC, (vii) Grand Prix Mezz Borrower Floating, LLC, and (viii) Grand Prix Mezz Borrower Floating 2, LLC.

[3] "Remaining Debtors" means the Debtors that are not Fixed/Floating Debtors, Anaheim Hotel Debtors, or Ontario Hotel Debtors: (i) Grand Prix General Lessee LLC; (ii) Grand Prix Holdings LLC; (iii) Grand Prix IHM, Inc.; (iv) Grand Prix RIGG Lessee LLC; (v) Grand Prix RIMV Lessee, LLC; (vi) Grand Prix Term Lessee LLC; (vii) Innkeepers Financial Corporation; (viii) Innkeepers USA Limited Partnership; (ix) Innkeepers USA Trust; (x) KPA Leaseco Holding, Inc.; (xi) KPA Leaseco, Inc.; (xii) KPA RIGG, LLC; (xiii) KPA RIMV, LLC; (xiv) KPA San Antonio, LLC; (xv) KPA Tysons Corner RI, LLC; and (xvi) KPA Washington DC, LLC.

various constituencies, the recoveries for the holders of general unsecured claims against the Fixed/Floating Debtors was further augmented to provide these claimants with a pro rata share of a $4.75 million cash pool. Moreover, the successful bidder agreed to eliminate the cap on maximum percentage recoveries, thus enabling unsecured creditors to potentially recover (based on the Debtors' current estimates) well in excess of sixty-five cents on the dollar for their allowed claims.

6. Additionally, the majority of the general unsecured claims against Debtors other than the Fixed/Floating Debtors are expected to receive full payment of their allowed claims.[4]

7. The Plan before the Court represents a significant and material improvement over the prospects for creditors at the outset of these Chapter 11 cases. The Debtors' willingness to work with its diverse constituencies and allow for its asset pool to be sold off in components has created significant value for all creditors (secured, unsecured and preferred equity) and fostered agreement on most significant issues. Notwithstanding the division of ownership of the Debtors' properties, the market test of the Debtors' assets has provided substantially-improved recoveries for nearly all creditor groups in these cases. In particular, under the terms of the PSA considered by the Court in September 2010, general unsecured creditors would have received a recovery of 5% - 8%, and now, on an enterprise-wide basis, general unsecured creditors are estimated to receive a recovery of approximately 70% - 92%. For the Committee, the exponential increase in recoveries for general unsecured creditors over the past ten months is the end product of such efforts.

---

[4] The exception relates to holders of allowed general unsecured claims against the Ontario Hotel Debtors, who will receive pro rata shares of a $30,000 cash pool, giving them an approximate recovery of between 6.06% and 9.18%. In light of the fact that the purported value of the Ontario hotel property is significantly less than the existing mortgage debt on the property, the Committee believes that this distribution is reasonable and appropriate.

8. Moreover, the Committee believes that the releases provided for in Article VIII of the Plan are reasonable and appropriate. General unsecured creditors will receive their respective distributions knowing that they will not be asked to return the funds they received before the Petition Date through post-confirmation avoidance actions. In exchange for such valuable consideration, general unsecured creditors will provide certain third-party releases. These releases are a component of the overall compromise encompassed in the Plan, and in light of the circumstances of these Chapter 11 cases and the substantial consideration provided to general unsecured creditors under the Plan, such releases are appropriate. *See Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141-42 (2d Cir. 2005).

9. The Committee believes that the Plan provides for distributions to general unsecured creditors that are as much as could reasonably be expected under the circumstances. Accordingly, the Committee asserts that the Plan is in the best interests of the Debtors' general unsecured creditors.

**[concluded on the following page]**

10. For the foregoing reasons, the Committee supports confirmation of the Plan and respectfully requests that this Court enter an order approving the Plan and grant such other and further relief as the Court deems just and proper.

Dated: June 17, 2011
      New York, New York

/s/ Lorenzo Marinuzzi
Lorenzo Marinuzzi
Jordan A. Wishnew
Stacy L. Molison
MORRISON & FOERSTER LLP
1290 Avenue of the Americas
New York, New York 10104
Telephone: (212) 468-8000
Facsimile: (212) 468-7900

*Attorneys for the Official Committee of Unsecured Creditors of Innkeepers USA Trust, et al.*